**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: <br><br> HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] <br><br> Debtor. | ) <br> ) Chapter 11 <br> ) <br> ) Case No. 19-12239 (CSS) <br> ) <br> ) **Hearing Date: TBD** <br> ) **Objection Deadline: TBD** |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR AN ORDER TRANSFERRING VENUE OF THIS CASE TO THE UNITED
STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS**

The official committee of unsecured creditors (the "Committee") of Highland Capital Management, L.P. (the "Debtor"), hereby submits this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to 28 U.S.C. §§ 1408 and 1412 and Rule 1014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), transferring the venue of the above-captioned chapter 11 case to the United States Bankruptcy Court for the Northern District of Texas.

**PRELIMINARY STATEMENT**

1.     Although a debtor's choice of venue generally warrants deference, this case presents unique facts that make a change in venue appropriate. The Debtor has only one location in the United States—its Dallas, Texas headquarters, which houses the Debtor's management and key personnel. In fact, the Debtor's headquarters sit less than two miles from the United States Bankruptcy Court for the Northern District of Texas (the "Dallas Bankruptcy Court"), making the venue clearly more convenient for the Debtor and its management than Delaware. Additionally,

---

[1]     The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

although the Debtor's creditors span the nation, a substantial number of the Debtor's creditors (including several of the top twenty unsecured creditors and Committee members) are concentrated in Texas, or the Midwest more broadly.  Likewise, nearly all of the professionals active in this case are concentrated in Texas, Chicago, or Los Angeles.  The Dallas Bankruptcy Court is more centrally located and easily accessible to the key parties in this case, along with their advisors.  Transferring venue from Wilmington, Delaware to Dallas, Texas would result in greater efficiencies and significant cost savings for the Debtor's estate.

2. Moreover, the Dallas Bankruptcy Court is already intimately familiar with the Debtor's principals and complex organizational structure—the involuntary chapter 11 cases of the Debtor's former affiliates and current Committee members, Acis Capital Management, L.P. and Acis Capital Management GP, L.P. (collectively, "Acis") are pending in the Dallas Bankruptcy Court.  Specifically, the Dallas Bankruptcy Court has (a) heard multiple days' worth of material testimony from the Debtor's principal owner (James Dondero), the Debtor's minority owner (Mark Okada), the Debtor's general counsel, at least two assistant general counsels, and numerous other employees of the Debtor and other witnesses; and (b) issued at least six published opinions to date, many of which have been affirmed on appeal to the United States District Court for the Northern District of Texas (the "Dallas District Court") in subsequent published opinions.  The Dallas Bankruptcy Court is still presiding over an adversary proceeding commenced by the Debtor and its affiliates, and the Debtor's appeal of Acis's confirmed chapter 11 plan is still pending before the Fifth Circuit.  As evidenced by the published opinions, the Dallas Bankruptcy Court and the Dallas District Court are intimately familiar with the Debtor's business, principal owner, and key executives.  For these reasons, the Dallas Bankruptcy Court is uniquely positioned to oversee this chapter 11 case.

2

3.	The Committee respectfully submits that, for the reasons set forth above and discussed more fully below, based on the unique facts of this case, both the interests of justice and convenience of the parties justify an exception to the general deference granted to a debtor's choice of venue and warrant the transfer of venue to the Dallas Bankruptcy Court.

## JURISDICTION

4.	The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Committee confirms its consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.	The statutory and other bases for the relief requested herein are 28 U.S.C. §§ 1408 and 1412, Bankruptcy Rule 1014, and Local Rule 1014-1.

## BACKGROUND

6.	On October 16, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Committee was appointed by the United States Trustee on October 29, 2019 [Docket No. 65].

**I.	The Debtor's Connections to Dallas.**

7.	As noted in the Voluntary Petition [Docket No. 1], the Debtor's principal place of business is 300 Crescent Court, Suite 700, Dallas, Texas 75201, which also serves as the Debtor's

3

international headquarters, and, in fact, its only office in the United States. *See Declaration of Frank Waterhouse in Support of First Day Motions* [Docket No. 9] (the "First Day Declaration"), ¶ 7. Although it is unclear how many of the Debtor's 76 employees are based in the Debtor's international offices, presumably those employees based in the U.S. live in or around the Debtor's headquarters in Dallas, Texas. Furthermore, all but one of the Debtor's equity holders are also located in Dallas, Texas. *See* Voluntary Petition [Docket No. 1], at pg. 14. In sum, Dallas, Texas is the epicenter of the Debtor's operations.

**II.     The Dallas Bankruptcy Court's Familiarity with the Debtor.**

8.     Prior to the commencement of this chapter 11 case, the Debtor was (and currently remains) actively involved in the involuntary chapter 11 case of Acis, its then-affiliate and current Committee member, captioned *In re Acis Capital Mgmt., L.P.*, Case No. 18-30264 (SGJ) (the "Acis Bankruptcy"). Until 2019, Acis was the "structured credit arm of Highland." *In re Acis Capital Mgmt., L.P.*, Nos. 18-30264 (SGJ), 2019 Bankr. LEXIS 292, at *17 n. 21 (Bankr. N.D. Tex. Jan. 31, 2019) (the "Acis Confirmation Opinion"), *aff'd*, 604 B.R. 484 (N.D. Tex. 2019).[2] Acis did not have any of its own employees and, instead, contracted with the Debtor to perform all day-to-day functions, meaning that all Acis corporate representatives and witnesses in the Acis Bankruptcy were employees of the Debtor. *Id.* at *9. Moreover, there was complete overlap between Acis and the Debtor at the executive level, with the Debtor's CEO James Dondero serving as President of Acis and the Debtor's CFO, and first day declarant, Frank Waterhouse serving as Treasurer.

9.     The Acis Bankruptcy commenced on January 30, 2018, when Joshua N. Terry filed involuntary petitions against Acis to commence chapter 7 cases in the Dallas Bankruptcy Court.

---

[2] The Acis Confirmation Opinion is attached hereto as **Exhibit B**.

4

In connection with a hotly-contested trial on the involuntary petitions, the Dallas Bankruptcy Court heard seven days of testimony and argument, entered orders for relief and issued a written opinion, which is attached hereto as **Exhibit C** (the "Acis Involuntary Opinion"). Testimony included that of the Debtor's co-founder and CEO, James Dondero, the Debtor's co-founder and then-Chief Investment Officer, Mark Okada, the Debtor's General Counsel, Scott Ellington, the Debtor's Controller, David Klos, and the Debtor's Assistant General Counsel, Isaac Leventon.

10. In May 2018, the Acis bankruptcy cases were converted from Chapter 7 to Chapter 11, and a Chapter 11 Trustee was appointed "due to what the bankruptcy court perceived to be massive conflicts of interest with regard to the Debtors' management." *See* Acis Confirmation Op. at *15.

11. The Debtor and its affiliates were, and remain, exceptionally active throughout the Acis Bankruptcy, objecting to virtually every action proposed by the Chapter 11 Trustee throughout the case. *See In re Acis Capital Mgmt., L.P.*, 603 B.R. 300, 302 (Bankr. N.D. Tex. 2019). As a result, the Dallas Bankruptcy Court was forced to conduct many evidentiary hearings, during which the Debtor's executives and employees were often called to testify. Overall, between the Acis Bankruptcy and related adversary proceedings, the Dallas Bankruptcy Court has to date reviewed approximately 700 exhibits, heard more than thirty days of testimony and oral argument, and issued six opinions. The Dallas District Court has also ruled on three appeals related to the Acis Bankruptcy, all of which were filed by the Debtor and/or its affiliates. The Debtor's appeal of the Acis confirmation order is now pending before the Fifth Circuit.[3]

12. The Dallas Bankruptcy Court is also currently adjudicating a number of fraudulent transfer causes of action that Acis has brought against the Debtor and certain of its non-debtor

---

[3] *See generally Debtor's Application for an Order Authorizing the Retention and Employment of Foley Gardere, Foley & Lardner LLP as Special Texas Counsel* Nunc Pro Tunc *to the Petition Date* [Docket No. 69] and

5

affiliates in a consolidated adversary case (the "Acis Adversary Proceeding"). Distilled to its essence, the Acis Adversary Proceeding concerns actions taken by the Debtor and its affiliates to denude the Acis debtors' estates of their value and frustrate an imminent, substantial judgment against Acis. *See Acis Capital Mgmt., GP, LLC v. Highland Capital Mgmt., L.P. (In re Acis Capital Mgmt., L.P.)*, 600 B.R. 541, 549 (Bankr. N.D. Tex. 2019) (the "Acis Arbitration Opinion").[4]

13. In sum, the Dallas Bankruptcy Court and the Dallas District Court are already intimately familiar with the Debtor's complex structure, its management, and key personnel, and are well-versed in the contentious relationship between the Debtor and several of its largest creditors, including members of the Committee. Accordingly, the Dallas Bankruptcy Court is uniquely situated to oversee this chapter 11 case.

## RELIEF REQUESTED

14. By this Motion, the Committee requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, transferring the venue of this chapter 11 case to the Dallas Bankruptcy Court.

## BASIS FOR RELIEF

### III. The Dallas Bankruptcy Court is an Appropriate Venue Under 28 U.S.C. § 1408.

15. Section 1408 of title 28 of the United States Code provides that bankruptcy cases may be commenced in the district court for the district "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States" of the debtor is

---

*Debtor's Application for an Order Authorizing the Retention and Employment of Lynn Pinker Cox & Hurst LLP as Special Texas Litigation Counsel* Nunc Pro Tunc *to the Petition Date* [Docket No. 70] (describing the Debtor's ongoing litigation and involvement with the Acis Bankruptcy).

[4] A copy of the Acis Arbitration Opinion is attached hereto as **Exhibit D**.

6

located or the district "in which there is a pending case under title 11 concerning such person's affiliate."

16. The Debtor's headquarters, and indeed its only office in the United States, is located in Dallas, Texas. Moreover, had this chapter 11 case commenced mere months ago, the Acis Bankruptcy would be a "pending case under title 11 concerning" the Debtor's affiliate.[5] The Dallas Bankruptcy Court easily satisfies the statutory venue requirements under 28 U.S.C. § 1408.

## IV. The Court Should Exercise its Discretion to Transfer Venue to the Dallas Bankruptcy Court.

17. It is within a court's discretion to transfer a case to another venue if it is "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Courts have interpreted this statutory provision to create two distinct bases upon which transfer of venue may be granted: interest of justice *or* convenience of the parties. *See In re Qualtec Inc.*, No. 11-12572 (KJC), 2012 WL 527669, at *6 (Bankr. D. Del. Feb. 16, 2012). Movants for transfer of venue have the burden of showing that a transfer is warranted based on the preponderance of the evidence.[6] *Id.* at *5.

### A. Transferring Venue to the Dallas Bankruptcy Court Would Serve the Convenience of the Parties.

18. In determining whether a venue transfer would serve the convenience of the parties, courts generally examine the following six factors: "(a) proximity of the creditors of every kind to the court; (b) proximity of the debtor; (c) proximity of the witnesses who are necessary to the administration of the estate; (d) the location of the debtor's assets; (e) the economic administration of the estate; and (f) the necessity for ancillary administration in the event of liquidation." *In re*

---

[5] The Debtor ceased to be an affiliate of Acis following confirmation of the Acis plan of reorganization in January 2019, when equity in reorganized Acis was distributed to Mr. Terry in exchange for a reduction of his allowed claim.

[6] To meet its burden herein, the Committee is relying on the record of this case, including the First Day Declaration, and the established record of the Acis Bankruptcy. The Committee therefore does not anticipate there being any need to hold an evidentiary hearing on this Motion.

*Rests. Acquisition I, LLC*, No. 15-12406 (KG), 2016 WL 855089, at *2 (Bankr. D. Del. Mar. 4, 2016) (*quoting Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.)*, 596 F.2d 1239, 1247 (5th Cir. 1979)). Under this analysis, the factor given the most weight is the economic and efficient administration of the estate. *Id.*

### 1.  Proximity of Creditors of Every Kind to the Court.

19.  Of the Debtor's twenty largest unsecured creditors, at least seven[7] are listed as having Texas addresses: Acis, Joshua and Jennifer Terry, McKool Smith, P.C., Foley Gardere, DLA Piper LLP (US), Lackey Hershman LLP, and Andrews Kurth LLP. *See* Voluntary Petition [Docket No. 1]. Additionally, of the total known claims at this juncture, it appears that a significant number of the Debtor's creditors are located in Texas, and the rest of the creditors appear to be scattered across the United States. No known creditors appear to be based in Delaware. *See id.*

20.  Courts may also focus on the location of the debtor's and creditors' professionals in deciding whether to transfer venue. *See In re Caesars Entm't Operating Co., Inc.*, No. 15-10047 (KG), 2015 WL 492529, at *6 (Bankr. D. Del. Feb. 2, 2015). The Committee's proposed counsel is primarily located in Chicago, Illinois, but also maintains an office in Dallas, Texas (where its litigation team for this case is based). If this case were to proceed before this Court, the Committee would have to retain Delaware co-counsel.[8] Additionally, several of the Debtor's largest creditors are separately represented by counsel based in the Midwest: the Acis is represented by the Rogge Dunne Group and Winstead PC in Dallas [Docket No. 81], the Redeemer Committee of the Highland Crusader Fund is represented by Jenner & Block LLP primarily out of its Chicago office

---

[7] Additionally, although listed with a North Carolina address, CLO Holdco, Ltd. is an affiliate of and controlled by the Debtor, whose principal place of business is in the Northern District of Texas. The Debtor also lists Reid Collins & Tsai's New York office, despite the fact that the firm is a Texas limited liability partnership based in Texas.

[8] Under Local Rule 9010-1(d), the Committee has until November 27, 2019, to obtain Delaware co-counsel, if necessary.

[Docket Nos. 1, 36], and USB Securities LLC and UBS AG London Branch is represented by Latham & Watkins LLP, which has an office in Houston [Docket No. 85].

21. Considering the proximity of both the Debtor's creditors and their professionals to the Dallas Bankruptcy Court, this factor should weigh in favor of transfer. *See In re Rehoboth Hosp., LP*, No. 11-12798 (KG), 2011 WL 5024267, at *3 (Bankr. D. Del. Oct. 19, 2011) (concluding that, on balance, this factor favored transfer to Texas when the overwhelming majority of creditors were located in Texas).

### 2. Proximity of the Debtor to the Court.

22. Courts have noted that this inquiry should focus primarily on the parties that must appear in court. *See Caesars Entm't Operating Co., Inc.*, 2015 WL 495259, at *6. The Debtor's headquarters, and only office located in the United States, is in Dallas, Texas. *See* First Day Decl., at ¶ 7. As a result, it is likely that any of the Debtor's personnel who would have to appear in court are located in Dallas, Texas. The Debtor has no connection to Delaware other than the fact that it was formed there.

23. The Committee concedes that Debtor's counsel maintains an office in Delaware but does not have an office in Dallas. That said, Debtor's counsel represents itself as having a "national presence," including in the Fifth Circuit,[9] and its lead lawyers on this matter are based in Los Angeles. The Debtor's proposed financial advisor team is also predominantly based in Los Angeles with several members located in Chicago. No proposed advisor from Development Specialists, Inc. is located on the East Coast, let alone in Delaware. *See Motion of the Debtor Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, Additional Personnel, and Financial Advisory and*

---

[9] *See* http://www.pszjlaw.com/about-presence.html#circuit5.

*Restructuring-Related Services,* Nunc Pro Tunc *as of the Petition Date* [Docket No. 75], Ex. A. Accordingly, the Committee respectfully submits that this factor weighs in favor of transferring venue to the Dallas Bankruptcy Court.

### 3. Proximity of the Witnesses Necessary to the Administration of the Estate.

24. The Committee anticipates that the witnesses likely to be necessary in this chapter 11 case are the Debtor's management, who are all located in Dallas, Texas, or the Debtor's financial advisors, who are all located in either Chicago, Illinois, or Los Angeles, California. Dallas, Texas, is significantly closer to any potential witness than Wilmington, Delaware. Thus, the Committee respectfully submits that this factor also weighs in favor of transferring venue to the Dallas Bankruptcy Court.

### 4. Location of the Assets.

25. The location of the Debtor's assets is not as important as other factors where "the ultimate goal is rehabilitation rather than liquidation." *See In re Caesars Entm't Operating Co., Inc.*, 2015 WL 495259, at *6 (quoting *In re Enron Corp.*, 274 B.R. 327, 347 (Bankr. S.D.N.Y. 2002)). Although the Committee believes that the Debtor's U.S. assets would be located at the Debtor's headquarters in Dallas, Texas, the Committee does not believe this factor important to the Court's decision.

### 5. Economic Administration of the Estate.

26. As noted above, the most important factor is the economic and efficient administration of the Debtor's estate. *Id.* The Committee does not dispute the ability of this Court to administer this chapter 11 case in a just and efficient manner. That said, there are many factors that make the Dallas Bankruptcy Court the more economical venue. As discussed in more detail below as part of the "interests of justice" analysis: (1) there is a higher concentration of creditors

10

and creditors' counsel in Texas and the Midwest than elsewhere in the country; (2) the Debtor and all of its U.S. personnel are in Dallas, Texas; (3) Dallas, Texas is more centrally located in the United States than Wilmington, Delaware and arguably easier and cheaper for parties to travel to; (4) most creditors would need to obtain Delaware co-counsel if venue remains before this Court; and (5) the Dallas Bankruptcy Court and the Dallas District Court has already expended great time and effort familiarizing itself with the Debtor, the Debtor's operations, and the disputes between the Debtor and some of its largest creditors. For these reasons and the reasons set forth below in Section II.B, this factor weighs heavily in favor of transferring venue to the Dallas Bankruptcy Court. *See In re Qualteq, Inc.* 2012 WL 527669, at *6 (noting that same considerations for this factor arise in applying the "interest of justice" prong).

### 6. Necessity for Ancillary Administration if Liquidation Should Result.

27. "Most cases do not consider liquidation because it is illogical to focus on liquidation contingencies when the goal of the bankruptcy is reorganization." *In re Dunmore Homes, Inc.*, 380 B.R. 663, 672 (Bankr. S.D.N.Y. 2008). However, should this case be converted to a liquidation, the Debtor's personal property would be predominantly located in Dallas, Texas. As a result, this factor also weighs in favor of transfer.

### B. Interests of Justice.

28. When determining whether a transfer would serve the interests of justice, courts consider whether such transfer "would promote the efficient administration of the estate, judicial economy, timeliness, and fairness." *Caesars Entm't Operating Co., Inc.*, 2015 WL 495259, at *7 (quotations omitted). The interests of justice standard is a "broad and flexible standard which must be applied on a case-by-case basis." *In re Safety-Kleen Corp.*, Adv. Proc. No. 00-1984, 2001 Bankr. LEXIS 1296, at *6 (Bankr. D. Del. Aug. 27, 2001) (citing *Gulf States Expl. Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990)).

      **1.**      **Judicial Economy.**

    29.    Judicial economy would be served by transferring this case to the Dallas Bankruptcy Court. At the time of this filing, this Court has only held one hearing, granting interim relief for a handful of routine "first day" motions. In contrast, the Dallas Bankruptcy Court has heard at least 30 days of testimony, including that of the Debtor's executives, and conducted countless hearings in the Acis Bankruptcy. With the exception of the Debtor's proposed chief restructuring officer and Mr. Waterhouse, the Dallas Bankruptcy Court is familiar with nearly all of the Debtor's senior management. As summarized above, the Dallas Bankruptcy Court and Dallas District Court have already devoted multiple days of court time to the Debtor.

    30.    Additionally, Acis's claim against the Debtor (which is listed on the list of twenty largest unsecured creditors) and the Debtor's proof of claim and administrative claim against Acis (which is technically an asset of the Debtor's estate) are currently pending in the Dallas Bankruptcy Court. Judicial economy would best be served by utilizing the time and resources already extended by the Dallas Bankruptcy Court in connection with these claims. This factor weighs overwhelmingly in favor of transfer. Indeed, it is hard to imagine a case where judicial economy would be better served by a transfer of venue under 28 U.S.C. § 1412.

    31.    Courts in this district have historically placed a particular emphasis "on the "learning curve" that typically militates against a transfer. *See In re Rests. Acquisition I, LLC*, No. 15-12406 (KG), 2016 WL 855089, at \*5 (Bankr. D. Del. Mar. 4, 2016). This case is unique in that the "learning curve" that typically militates against a transfer in the interests-of-justice basis is actually *inverted*. That is, it is not the proposed transferee court that will have a "learning curve," but rather it is this Court that would. Given that this Court has only considered first day relief, and on an interim basis, while the Dallas Bankruptcy Court and Dallas District Court both have

ACTIVE 250501748

intimate familiarity with the parties and their businesses, transferring the venue would be in furtherance of judicial economy.

### 2. Economic and Efficient Administration of the Bankruptcy Estate.

32. As previously noted, there are economic efficiencies available in Dallas, Texas that are not available in Wilmington, Delaware. Venue in Dallas would allow the Debtor's employees to easily attend hearings in this case and thus eliminate the need for air travel for most witnesses. The Debtor's headquarters are located in The Crescent in Dallas, Texas, approximately 1.2 miles from the Dallas Bankruptcy Court. By contrast, this Court is located approximately 1,437 miles from the Debtor's headquarters. Travel to this Court from the Debtor's headquarters requires, at a minimum, a 30-minute car ride to Dallas/Fort Worth International Airport, approximately three hours flying time to Philadelphia International Airport, and then a 30-minute car ride to Wilmington, Delaware. The foregoing does not take into account recommended early arrival times at airports for check-in, flight delays, traffic, or the need for overnight stays in Wilmington. If this case remains in Delaware, critical management personnel will be required to spend extended periods away from their offices when they should be focused on maximizing value for all creditors.

33. Additionally, as the Debtor's professionals and proposed CRO are primarily located in Los Angeles, venue in Dallas would eliminate hours of travel time and the administrative expense associated with the same. Dallas-Fort Worth International Airport, consistently the third-busiest airport in the country (behind Chicago O'Hare and Atlanta Hartsfield-Jackson), offers nearly 1,800 flights per day. American Airlines alone offers approximately 14 non-stop flights per day from LAX to DFW. According to FlightSphere.com, there are approximately 20 total flights per day from LAX to DFW and 7 flights per day from DAL to LAX. By contrast, according to FlightSphere.com, there are approximately 10 flights per day from DFW to Philadelphia and approximately 8 flights per day from DAL to Philadelphia. The flight from LAX to DFW is

13

approximately 3 hours, whereas the flight from LAX to Philadelphia is approximately 6 hours. *See In re Rehoboth Hosp., LP,* No. 11-1279 (KG), 2011 Bankr. LEXIS 3992, at *15 (Bankr. D. Del. October 19, 2011) (transferring venue of a single asset real estate case from Delaware to Texas because "the estate may incur significant travel costs to obtain the testimony of witnesses that are located in Texas").

34. Additionally, Rule 45 of the Federal Rules of Civil Procedure, incorporated by Bankruptcy Rule 9016, mandates that contested non-party discovery disputes (potentially like those related to the Debtor's approximately 2,000 non-debtor affiliates) be heard in the place of compliance, which would most likely be in the Northern District of Texas. The Committee is already aware of the Debtor's history of contesting discovery. *See, e.g., Hamilton Partners, L.P. v. Highland Capital Mgmt., L.P.*, CV 6547-VCN, 2016 WL 61223, at *1 (Del. Ch. Feb. 2, 2016). It is therefore likely that the Dallas District Court and Dallas Bankruptcy Court will need to hear and resolve multiple discovery disputes. In light of that inevitability, it would be sensible to transfer this case so that related disputes aren't being heard in multiple venues.

35. There is no doubt that transferring venue to Dallas would promote the economic and efficient administration of this chapter 11 case. This factor weighs in favor of transfer.

### 3. Timeliness.

36. As of the date of this Motion, this case has only been pending for 16 days. The Committee is also seeking to have this Motion heard on an expedited basis, as set forth in the motion to shorten notice filed concurrently herewith. *Cf. In re Jones*, 39 B.R. 1019, 1020 (Bankr. S.D.N.Y. 1984) ("[t]he debtor's motion to change venue is untimely given the fact that this case was commenced over one and one-half years ago"). The Court has only considered the Debtor's request for first day relief on an interim basis. The next hearing is not scheduled until November 19, 2019. The Motion is timely and this factor weighs in favor of transfer.

14

**4.     Fairness.**

37.    Transferring this chapter 11 case to a venue where employees, creditors, and numerous other parties-in-interest may more easily participate in the restructuring process would be manifestly fair.  To the extent the Debtor chose this forum in order to distance itself from largely unfavorable findings, fairness dictates that this case should be transferred.

*     *     *     *     *

38.    For the foregoing reasons, it is both in the interest of justice and for the convenience of the parties that this chapter 11 case be transferred to the Dallas Bankruptcy Court.  The majority of the parties and professionals involved in this chapter 11 cases are more centrally located to Dallas, Texas than Wilmington, Delaware, which would create significant costs savings to the Debtor's estate compared to keeping the case in Delaware.  Moreover, the Dallas Bankruptcy Court and Dallas District Court are both well-versed in the facts and issues that will undoubtedly need to be addressed in this chapter 11 case.  As such, the Committee respectfully requests that this Court transfer venue of this case to the Dallas Bankruptcy Court.

## NOTICE

39.    Notice of this Motion will be provided to (i) the Debtor, (ii) the Office of the United States Trustee for the District of Delaware, and (iii) any party that has requested notice pursuant to Local Rule 2002-1 as of the date of this Motion.  In light of the nature of the relief requested herein, the Committee submits that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Committee respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and any further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: November 1, 2019<br>Wilmington, Delaware | SIDLEY AUSTIN LLP<br><br>*/s/ Bojan Guzina*<br>Bojan Guzina<br>Matthew A. Clemente<br>Alyssa Russell<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone: (312) 853-7000<br>Facsimile: (312) 853-7036<br><br>-and-<br><br>Jessica C. K. Boelter<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone: (212) 839-5300<br>Facsimile: (212) 839-5599<br><br>-and-<br><br>Penny P. Reid<br>Paige Holden Montgomery<br>2021 McKinney Avenue<br>Suite 2000<br>Dallas, Texas 74201<br>Telephone: (214) 981-3300<br>Facsimile: (214) 981-3400<br><br>PROPOSED ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS |

16