# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Case No. 19-12239 (CSS) |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, LP,[1] | § § § | Chapter 11 |
| | § | **Re: Docket No. 86** |
| Debtor. | § § | |

### ACIS'S JOINDER IN MOTION TO TRANSFER VENUE

Creditors Acis Capital Management, L.P. and Acis Capital Management GP, LLC (collectively "Acis") join in the Motion of the Official Committee of Unsecured Creditors For an Order Transferring Venue of this Case to the United States Bankruptcy Court for the Northern District of Texas (the "Motion") [Dkt. No. 86] pursuant to 28 U.S.C. § 1412, and respectfully show the following:[2]

#### SUMMARY OF JOINDER

1. The "astonishingly contentious" Texas bankruptcy proceedings of the former "structured credit arm of Highland" makes this transfer request unique. This Court should not reinvent the wheel in Delaware, a wheel that was ably constructed in Texas by the tireless work of a federal bankruptcy and district court located less than two miles from Highland's international headquarters, a wheel that was constructed through the expenditure of millions and millions of the Debtor's, its affiliates', and its creditors' money. Those precious resources should be preserved and maximized. Congress enacted section 1412 for cases such as this, where the interests of justice compel a transfer. The convenience of the parties is just icing on

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] Unless otherwise defined, Acis incorporates herein the defined terms in the Motion. Acis uses the term "Debtor" and "Highland" interchangeably.

1

the cake. While Highland had the *ability* to file this case in Delaware, its choice of venue squanders the considerable resources expended—by Highland, various creditors and stakeholders, and the judiciary—and foists upon this Court the burden of reinventing the wheel. The Court should, instead, transfer this case to the Northern District of Texas using the broad discretion afforded it by section 1412.

## ARGUMENT & AUTHORITY

**A.    Acis and Highland were affiliates under the Bankruptcy Code.**

2.    Until a short time ago, Acis was an affiliate of Highland under the Bankruptcy Code – that is beyond dispute. *In re Acis Capital Mgmt., L.P. ("Acis III")*, 604 B.R. 484, 499 (N.D. Tex. 2019) ("Highland conducted its CLO business through an entity called Acis …"); *In re Acis Capital Mgmt., L.P. ("Acis II")*, 18-30264-SGJ-11, 2019 WL 417149, at *2 (Bankr. N.D. Tex. Jan. 31, 2019), aff'd, 604 B.R. 484 (N.D. Tex. 2019) ("It is also undisputed that, prior to the appointment of the Chapter 11 Trustee, the Debtors and Highland were affiliated and had a close relationship."); 11 U.S.C. § 101(2)(defining affiliate). Highland's employee, Hunter Covitz, testified that Acis was the "structured credit arm of Highland." *Acis II*, 2019 WL 417149, at *5. Highland controlled Acis "beyond a shadow of a doubt" until a Chapter 11 Trustee was appointed over Acis. *Id*.

3.    Until Acis' bankruptcy, both Acis and Highland were controlled by the same person, James Dondero. *Id*. ("Highland's General Counsel, Scott Ellington, testified that Mr. Dondero controlled them both."). James Dondero remains in control of Highland. Dkt. No. 1. Acis and Highland were affiliates as defined by section 101(2) of the Bankruptcy Code.

4.    As reflected in the extensive writings of Judges Jernigan and Fitzwater, it was impossible to discuss and understand Acis without understanding Highland's business and its

"organizational structure comprised of roughly 2,000 different entities." *Acis III*, 604 B.R. at 499. Acis had no employees of its own, no physical location of its own, no leadership of its own. *Id.*; *In re Acis Capital Mgmt., L.P. ("Acis I")*, 584 B.R. 115, 125-26 (Bankr. N.D. Tex. 2018), appeal dismissed, 604 B.R. 484 (N.D. Tex. 2019). Instead, Acis acted solely through Highland and its ultimate authority, James Dondero. *Id.* Make no mistake, the "structured credit arm of Highland" was a debtor in bankruptcy in Texas until a very short time ago. *Id.*

**B.    In the bankruptcy context, three other federal courts recently expended, or will soon expend, countless hours of judicial resources on Highland.**

5.    The following chart summarizes the recent and extensive work performed, or that will be imminently performed, by three separate federal courts bearing directly upon—and mostly caused by—the Debtor, Highland:[3]

> (i)    **Hon. Stacey G.C. Jernigan** Federal Bankruptcy Judge for the Northern District of Texas, Dallas Division, in Acis's "astonishingly contentious" bankruptcy case[4] and various related adversary proceedings.[5]  *Acis II*, 2019 WL 417149, at *2.
>
> (ii)    **Hon. Sidney A. Fitzwater**  Federal District Judge for the Northern District of Texas, Dallas, Division, in Highland and related parties' serial appeals of Judge Jernigan's rulings;[6] and
>
> (iii)    **United States Court of Appeals for the Fifth Circuit**  Second set of appeals filed by Highland and related parties:[7]

---

[3] This Court can, and should, take judicial notice of the circumstances of these cases, which is available on Pacer. *IOENGINE, LLC v. PayPal Holdings, Inc.*, CV 18-452-WCB, 2019 WL 2121395, at *3 (D. Del. May 15, 2019) (Bryson, J.) (taking judicial notice of circumstances of previous case, such as nature of the claims and outcome of the case); *In re Chicago Newspaper Liquidation Corp.*, 490 B.R. 487, 492 n.8 (Bankr. D. Del. 2013) (Sontchi, J.) (taking judicial notice of docket in prior actions).

[4] Case Nos. 18-30264-SGJ-11 and 18-30265-SGJ-11 (Jointly Administered Under Case No. 18-30264-SGJ-11) (the "Acis Bankruptcy")

[5] Case Nos. 18-03078-sgj, 18-0312-sgj, and 19-03103-sgj (collectively the "Adversaries")

[6] Highland and its related parties filed no less than *five* appeals of Judge Jernigan's rulings: Civil Action Nos. 3:18-CV-1056-D, 3:18-CV-1057-D, 3:18-CV-1073-D, 3:18-CV-1084-D, 3:18-CV-1822-D, 3:19-CV-0291-D (collectively the "District Court Appeals"). To the extent any party disputes that Highland CLO Funding, Ltd. and Nuetra, Ltd. are related to Highland, *see Acis II*, 2019 WL 417149, at *7 ("As with HCLOF Guernsey, the court also concludes that Neutra-Cayman is absolutely, *beyond any reasonable doubt*, controlled by Highland, as explained further below.") (emphasis added).

| **Summary of the Acis Bankruptcy, the Adversaries, the District Court Appeals, and the Fifth Circuit Appeals[8]** | |
|---|---|
| Days from entry of orders for relief to confirmation of plan | 293 |
| Hearings held (Acis Bankruptcy) | 81 |
| Fully-day hearings (Acis Bankruptcy – involuntary trial) | 5 |
| Full-day hearings (Acis Bankruptcy – first confirmation) | 4 |
| Full-day hearings (Acis Bankruptcy – second confirmation) | 5 |
| Witnesses that testified (Acis Bankruptcy)[9] | >18 |
| Oral depositions conducted | 34 |
| Exhibits admitted (Acis Bankruptcy)[10] | >700 |
| Docket entries (Acis Bankruptcy) | 1135 |
| Docket entries (the Adversaries) | 299 |
| Administrative costs (professional fees, break-up fee, and trustees' compensation)[11] | >$8,358,503.35 |
| Attorneys' fees incurred by Highland[12] | >$2,858,396.47 |

---

[7] Case Nos. 19-10846 and 19-10847 (collectively the "Fifth Circuit Appeals")

[8] Unless indicated otherwise, all figures are approximations as of November 11, 2019, based on Acis' review of the dockets and participation in the cases.

[9] This includes only witnesses who testified substantively over matters related to the involuntary trial or confirmation proceedings in the Acis Bankruptcy.

[10] *Acis II*, 2019 WL 417149, at *1

[11] Acis Bankruptcy Dkt. 390, 821, 976, 978, 999. Acis also owes an expense reimbursement to Oaktree which is not yet liquidated. *Id*. at 390. And Highland alleges an additional administrative expense of $3,554,224.29 owed by Acis in the Acis bankruptcy, which is not included in the chart. *Id*. 772.

[12] Dkt. Nos. 69-2 at ¶3 and No. 70-2 at ¶4 in this Case outline amounts incurred by the Debtor with two law firms representing Highland in the Acis Bankruptcy. It is impossible to tell from these filings how much of these fees were incurred by "related parties" but paid by Highland, and how much, if any, is unrelated to the Acis Bankruptcy. *Id*. Since Foley Gardere only worked on the Acis Bankruptcy, Acis includes its entire amount and 50% of the Lynn Pinker amount, since presumably some of those amounts were incurred for the Texas Litigation (as defined in the application).

| **Summary of the Acis Bankruptcy, the Adversaries, the District Court Appeals, and the Fifth Circuit Appeals[8]** | |
|---|---|
| Attorneys fees incurred by Highland CLO Funding, Ltd., a Highland "related entit[]y …"[13] | unknown |
| Number of unpublished opinions (Acis Bankruptcy) | 3 |
| Pages of unpublished opinions (Acis Bankruptcy)[14] | 292[15] |
| Number of published opinions (Acis Bankruptcy) | 4 |
| Pages of published opinions (Acis Bankruptcy)[16] | 120[17] |
| Pages of record (District Court Appeals) | >90,000 |
| Pages of record (Fifth Circuit Appeals) | >115,000 |

C.   **The interest of justice warrants a transfer to the Northern District of Texas.**

6.   The Committee addressed the "convenience of the parties" basis for transfer under section 1412, and Acis hereby incorporates by reference the Committees' arguments thereon.  Acis submits that while a transfer is more than justified on that ground alone, the Court should strongly consider the less-often-argued "interest of justice" basis for transfer under section 1412.  The one-of-a-kind nature of this case vis-à-vis the Acis Bankruptcy, the Adversaries, the District Court Appeals, and the Fifth Circuit Appeals makes a transfer for the interest of justice particularly appropriate in this unique case.

---

[13] *Id*.

[14] Number of pages of such opinion(s) contained on the court's docket.

[15] The Confirmation Order is designated as an "opinion" by the Dallas Bankruptcy Court and available on Westlaw and Lexis.

[16] Number of pages of such opinion(s) contained on the court's docket.

[17] The Dallas Bankruptcy Court entered identical copies of the Acis Involuntary Opinion on the docket for Acis LP's bankruptcy case and Acis GP's bankruptcy case, as the cases were not yet jointly administered.  For purposes of this chart, the Acis Involuntary Opinion is only counted once.

7. Under section 1412, the moving party need only show by a preponderance of the evidence that the transfer of venue is appropriate. *In re Dunmore Homes, Inc.*, 380 B.R. 663, 677 (Bankr. S.D.N.Y. 2008) (finding moving parties met burden of proof to transfer Chapter 11 proceeding).

8. This Court's sister court addressed the section 1412 transfer of a Chapter 11 proceeding in a well-reasoned opinion in *In re Rests. Acquisition I, LLC*, 15-12406 (KG), 2016 WL 855089, at *2 (Bankr. D. Del. Mar. 4, 2016) (Gross, J.); *see also In re Dunmore*, 380 B.R. at 677 (granting § 1412 transfer of a Chapter 11 proceeding). Judge Gross stated that "[w]hen determining whether a transfer would serve the interest of justice, courts consider whether such transfer 'will promote the efficient administration of the estate, judicial economy, timeliness, and fairness.'" *In re Rest. Acquisition I, LLC*, 2016 WL 855089, at *5 (quoting *In re Enron Corp.*, 274 B.R. 327, 343 (Bankr.S.D.N.Y.2002) (quoting *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir.1990)). "This standard is a flexible one that 'must be applied on a case-by-case basis." *Id.* (quoting *Manville,* 896 F.2d. at 1391); *In re Dunmore Homes, Inc.*, 380 B.R. 663, 671 (Bankr. S.D.N.Y. 2008).

      (i)    <u>A transfer will promote the efficient administration of the estate.</u>

9. "The most weight is given to the promotion of the economic and efficient administration of the estate." *In re Dunmore Homes, Inc.*, 380 B.R. 663, 676 (Bankr. S.D.N.Y. 2008). It is more economic to administer this case in the Northern District of Texas. Transferring venue will mean that Debtor and its agents, along with a vast number of creditors, the majority of which are located in Texas over any other state will not have to travel to Delaware for hearings. The Northern District of Texas provides for permissive admission *pro*

*hac vice*. http://www.txnd.uscourts.gov/pro-hac-vice-appearance.  Many of Debtor's counsel have taken advantage of these rules – they have appeared numerous times in the Northern District of Texas.  *E.g. In re Buffet Partners, L.P.*, 14-30699-HDH-11, 2014 WL 3735804 (Bankr. N.D. Tex. July 28, 2014); *Objecting Class 3 Claimholders v. New Mirant Entities*, 4:06-CV-744-A, 2006 WL 3780884 (N.D. Tex. Dec. 26, 2006); *In re Reddy Ice Holdings, Inc.*, 12-32349-SGJ-11, 2017 WL 2347551 (Bankr. N.D. Tex. May 30, 2017).

10. Courts in this district have historically placed a particular emphasis "on the "learning curve" that typically militates against a transfer.  *See In re Rests. Acquisition I, LLC*, No. 15-12406 (KG), 2016 Bankr. LEXIS 684, at *15-16 (Bankr. D. Del. March 4, 2016).  Indeed, that issue was the first one raised by Judge Gross in *Rests. Acquisition*. *Id*.  However, as discussed by the Committee, the "learning curve" that typically militates against a transfer in the interest-of-justice basis of § 1412 is actually inverted in this case.  That is, it is not the proposed transferee court that will have a "learning curve," but rather this Court if this case stays in the United States Bankruptcy Court for the District of Delaware.

11. That is true, and will soon be true, on *three* separate levels of federal court jurisdiction: the bankruptcy court, district court, and circuit court of appeals.  Judge Jernigan, Judge Fitzwater, and soon a panel of the Fifth Circuit will have a far less steep learning curve regarding the Debtor if this Court grants transfer.  The Northern District of Texas, Dallas Division has extensive knowledge regarding the Debtor, its business operations, its litigation, its management, its executives, and that court just so happens to be a stone's throw from Highland's international headquarters.12.

    (ii)    <u>A transfer will promote judicial economy</u>.

13. If ever a transfer would promote judicial economy, it is in this case. It is beyond reasonable dispute that transferring this case to the Dallas Bankruptcy Court is in the interest of judicial economy. Judges Jernigan and Fitzwater, and soon a panel of the Fifth Circuit, have expended untold hours working on the Acis Bankruptcy, the Adversaries, and the District Court Appeals. That experience, as manifested by their extensive writings, gave these jurists intimate and deep knowledge regarding Highland. They have done so in a timely and fair fashion. Not taking advantage of these courts' previous hard work is the antithesis of promoting judicial economy. Nor should we squander the millions and millions of dollars that Highland, Acis, other creditors and other stakeholders spent in legal fees, lost productivity, and costs in the Acis Bankruptcy to get an otherwise capable bankruptcy court, this Court, to the same point on the learning curve. All parties should be interested in making sure that those precious resources are not wasted, including Highland. A transfer to the Northern District of Texas promotes judicial economy.

    (iii) <u>A transfer will promote timeliness.</u>

14. With their vast knowledge of Highland and could-not-be-closer proximity to relevant witnesses and evidence, the Northern District of Texas can undoubtedly timely adjudicate this case.

    (iv) <u>A transfer will promote fairness.</u>

15. There is certainly nothing unfair about transferring these cases to a venue in which employees, creditors, and numerous other parties-in-interest may participate in the restructuring process. Highland is centralized in a venue, the Northern District of Texas, that is well-positioned to handle these cases and readily accessible to all parties-in-interest.

16.     The Northern District of Texas has a local interest in deciding local controversies at home. *See In re Cubic Energy, Inc.*, 603 B.R. 743, 756 (Bankr. D. Del. 2019). Highland prides itself on its Texas connections. https://www.highlandcapital.com/about-us/our-history/ ("Within a year of finalizing the PAMCO agreement, Mr. Dondero and Mr. Okada moved the firm to Dallas, Texas. The new headquarters put the firm closer to the finance capital of New York, both in terms of the time zone and travel distance. Texas also offered a more business-friendly environment and lower taxes, as well as a better commute."). Highland employs a significant number of residents of Dallas, Texas. Dkt. 9 at 7-8. And Highland takes credit for philanthropic efforts aimed at various organizations in Texas, and specifically Dallas. https://www.highlandcapital.com/community/. Finally, local courts in Texas have already made significant rulings that are highly relevant to this Chapter 11 proceeding. Highland's purported inability to timely pay its creditors, many of which are in Texas (far more than any other single state), and Highland's efforts to reorganize, are a local controversy that should be decided at home in Texas.

17.     It is supremely fair to require Highland to reorganize before courts from which *Highland* asked so much. Highland, through its extremely aggressive litigation tactics, *forced* Judges Jernigan and Fitzwater to spend significant resources to understand its business and the issues that Highland and related parties *chose* to appeal.

18.     Is it fair for Highland to adjudicate this bankruptcy proceeding before those same courts, those same courts where time and again, Highland requested more and more of the judges' and their clerks' time and effort? Acis believes the answer to that question is manifest, as it was largely *Highland's* actions that forced the expenditure of significant judicial resources, not to mention Highland's and others' resources. Highland forced Judges Jernigan and Fitzwater

to educate themselves on Highland – fairness mandates that this Court transfers this case to the Northern District of Texas.

## CONCLUSION

19.    A debtor's choice of venue is not sacrosanct. Otherwise, section 1412 would not exist. We must, of course, operate under the cannon that Congress intended the laws it passes to have meaning. *See Hibbs v. Winn*, 542 U.S. 88, 89 (2004). The deference afforded to a debtor's choice of forum gives way to the practicalities and facts of a particular case, as manifested in section 1412. This case is the posterchild for a transfer in the interest of justice. The fact that that transferee court is less than two miles from Highland's headquarters is merely a bonus. Acis requests the Court to transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1412, and such other relief to which Acis is entitled.

*[Remainder of page intentionally left blank]*

|  |  |
|---|---|
| | **BLANK ROME LLP** |
| Dated: November 12, 2019<br>Wilmington, Delaware | */s/ Josef W. Mintz*<br>John E. Lucian (*pro hac vice*)<br>Josef W. Mintz (DE No. 5644)<br>1201 N. Market Street, Suite 800<br>Wilmington, Delaware 19801<br>Telephone:  (302) 425-6400<br>Facsimile:  (302) 425-6464<br>Email:    lucian@blankrome.com<br>          mintz@blankrome.com |

-and-

**WINSTEAD PC**
Rakhee V. Patel (*pro hac vice*)
Phillip Lamberson (*pro hac vice*)
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Telephone:  (713) 650-8400
Facsimile:  (713) 650-2400
Email:    rpatel@winstead.com
          plamberson@winstead.com

-and-

**ROGGE DUNN GROUP, PC**
Brian P. Shaw (admitted *pro hac vice*)
500 N. Akard St. Suite 1900
Dallas, Texas 75201
(214) 239-2707 (Telephone)
(214) 220-3833 (Fax)
Email:    shaw@roggedunngroup.com

**COUNSEL FOR ACIS**