## Exhibit A

**SEC Order**

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

**INVESTMENT ADVISERS ACT OF 1940**
Release No. 3939 / September 25, 2014

**ADMINISTRATIVE PROCEEDING**
File No. 3-16169

| | |
|---|---|
| **In the Matter of**<br><br>**HIGHLAND CAPITAL MANAGEMENT, L.P.**<br><br>**Respondent.** | ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS, PURSUANT TO SECTIONS 203(e), 203(i), AND 203(k) OF THE INVESTMENT ADVISERS ACT OF 1940, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 203(e), 203(i), and 203(k) of the Investment Advisers Act of 1940 ("Advisers Act") against Highland Capital Management, L.P. ("Highland" or "Respondent").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer"), which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over it and the subject matter of these proceedings, which are admitted, Respondent consents to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Sections 203(e), 203(i), and 203(k) of the Investment Advisers Act of 1940, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

**III.**

On the basis of this Order and Respondent's Offer, the Commission finds that:

### Respondent

1. **Highland Capital Management, L.P. ("Highland")** is a limited partnership organized under the laws of Delaware with its principal place of business in Dallas, Texas. Highland has been registered with the Commission as an investment adviser since 1997. Highland serves as an investment adviser to, among others, unregistered hedge funds and private accounts.

### Summary

2. These proceedings arise out of certain instances by Highland of trading securities between its clients' accounts and accounts in which Highland and its principals maintained an ownership interest, without adhering to certain requirements set forth by the Advisers Act. In addition, with respect to these principal transactions and certain other business operations, Highland failed to keep and maintain true, accurate and current books and records as required by the Advisers Act.

### Background

3. Highland, an investment adviser that has been registered with the Commission since 1997, primarily focuses on investments in the debt instruments of distressed companies, debt-related structured products, and other securities that are not listed or traded on a national securities exchange. Although a market for these securities does exist, many of these securities are considered illiquid and trade primarily among institutional investors.

### Highland Engaged in Improper Principal Transactions

4. A cross trade is a transaction between two accounts managed by the same investment adviser. Cross trades can benefit clients in a number of ways, including: (i) enabling the transfer of securities among client accounts without having to expose the security to the market, thereby saving transaction and market costs that would otherwise be paid; (ii) eliminating counterparty risk; and (iii) providing an adviser with added flexibility when dealing with an illiquid asset. Cross trades can be executed by an adviser on an agency or a principal basis. In an agency cross trade, the adviser buys or sells a security in the account of one client with the account of another client. In contrast, in a principal cross trade, the adviser - acting for its own account - buys a security from, or sells a security to, one of its client's accounts.

5. Although cross trades can be appropriate in many circumstances, they also can create the possibility of a conflict of interest for an adviser: the better the price the adviser obtains for the selling client, the worse it is for the buying client, and vice versa. And, cross trades involving a principal account heighten the potential for unfair treatment. Highland was aware of the potential conflicts created by cross trading, and established a process for its compliance department to monitor such trades.

6.      Between 2007 and 2009, Highland knowingly engaged in a number of transactions with its client advisory accounts without disclosing in writing that Highland was acting as principal, or obtaining client consent, before the trades were completed (the "Trades").[1]

7.      Many of the Trades took place during September and October 2008 when, with the onset of the financial crisis, asset values were dropping and the market for credit products was increasingly illiquid. As a result, margin calls were being made on Highland's accounts. According to Highland, many of the Trades were executed in an effort to generate or maintain liquidity for the advised accounts.

8.      For example, on September 23, 2008, an account in the name of and owned by Highland purchased $3,300,423 in securities from one of Highland's clients, a hedge fund it advised. Highland failed to properly obtain the consent of the hedge fund prior to completing the transaction. As another example, on September 19, 2008, Highland advised two hedge fund clients to sell approximately $15 million in debt securities to four separate accounts in which Highland maintained an ownership interest. Again, Highland failed to properly obtain the consent of the hedge fund clients prior to completing the transaction.

### Highland Failed to Maintain Accurate Books and Records

9.      During the relevant time period, Highland failed to maintain books and records that were true, accurate, and current in relation to certain of the Trades and certain other business operations, as required by the Advisers Act: Highland failed to maintain sufficient documentation in relation to certain principal transactions; Highland maintained trade blotters that reflected certain transactions, but those transactions were either not reflected on a general ledger or did not have a corresponding order ticket, or vice versa; Highland's internal records at times conflicted with those of its former third-party administrator; and, in at least two instances, Highland failed to maintain documents supporting the transfer of funds from a client account to an account maintained by Highland or its principals.

### Violations

10.     Section 206(3) of the Advisers Act prohibits an investment adviser, acting as a principal for its own account, from knowingly buying from or selling to a client any security without disclosing in writing to such client the capacity in which the adviser is acting and obtaining the client's consent before the completion of the transaction. During the relevant period, as described above, Highland engaged in numerous such transactions without disclosing in writing to the relevant client the capacity in which Highland was acting or obtaining timely consent. As a result, Highland willfully violated Section 206(3) of the Advisers Act.

11.     Section 204(a) of the Advisers Act and Rule 204-2(a) thereunder require investment advisers to make and to keep true, accurate, and current books and records, and to maintain certain other records for a period five years. Rule 204-2(a)(3) requires investment advisers to keep a

---

[1] Highland did ultimately receive client consent for many of the Trades; however, this consent was received after the Trades had settled, and therefore did not comply with the requirements of Section 206(3) of the Advisers Act.

3

memorandum concerning certain transaction details for the purchase or sale of any security. Highland, as detailed above, failed to make and keep true, accurate, and current certain required books and records. As a result, Highland willfully violated Section 204(a) of the Advisers Act and Rule 204-2 thereunder.

## **Undertakings**

Respondent has undertaken to:

12. The Respondent shall no later than four (4) months after the issuance of this order retain at its expense a qualified independent consultant (the "Consultant") not unacceptable to the staff of the Commission to conduct a comprehensive review of the Respondent's compliance and control systems relating to principal trades, and the creation and retention of its books and records. The Respondent shall require the Consultant to assess the adequacy of the Respondent's compliance and control systems as they relate to principal transactions and the creation, retention, and adequacy of its books and records.

13. The Respondent shall require the Consultant, within six (6) months of the Consultant's engagement, to submit a report of his/her findings and recommendations ("Initial Report") simultaneously to the Commission's Division of Enforcement and Office of Compliance Inspections and Examinations ("OCIE"), that:

    (A)    Set forth the Consultant's findings about the adequacy of the Respondent's compliance and control systems as they relate to principal transactions and the creation, retention, and adequacy of its books and records; and

    (B)    If necessary, makes recommendations regarding how the Respondent should modify or supplement its compliance and control systems as they relate to principal transactions and creation, retention, and adequacy of its books and records.

14. Respondent shall adopt and implement all recommendations made by the Consultant, subject to Paragraph 15 below.

15. If Respondent determines that any of the Consultant's recommendations in the Initial Report are unduly burdensome or impractical, or if they determine that the objectives of the recommendation can be more effectively achieved through another means, the Respondent may propose that a recommendation not be implemented or propose an alternative reasonably designed to accomplish the same objectives, and shall notify the Consultant of any such proposals with thirty (30) days of receipt of the Initial Report. If, upon evaluating the Respondent's proposal(s), the Consultant determines that a recommendation should not be implemented or that a suggested alternative is reasonably designed to accomplish the same objectives as the recommendation in question, then the Consultant may withdraw the recommendation and/or accept the proposed alternative and notify the Commission's Division of Enforcement and OCIE of any such withdrawn recommendations and/or accepted alternatives, and the Respondent shall adopt and implement the accepted alternative(s). If, upon evaluating the Respondent's proposals, the

Consultant concludes that the Consultant's recommendation should be implemented, the Consultant shall notify the Respondent within thirty (30) days of receipt of the alternative proposal and the Respondent and the Consultant shall, with fourteen (14) days of the Consultant's notification, jointly confer with the staff of the Division of Enforcement and OCIE to resolve the matter.  In the event, after conferring with the Commission staff, the Respondent and the Consultant are unable to agree on an alternative proposal, the Respondent shall adopt and implement the Consultant's recommendation.

16.     Within six (6) months from Respondent's receipt of the Initial Report, the Respondent shall complete implementation of all of the Consultant's recommendations and/or accepted alternatives.

17.     No sooner than six (6) months from the Respondent's receipt of the Initial Report, the Respondent shall require the Consultant to conduct a review of the Respondent's implementation of the Consultant's Recommendation set forth above and, within twelve (12) months from Respondent's receipt of the Initial Report, submit a final report ("Final Report") to the Commission's Division of Enforcement and OCIE.  The Final Report shall describe the review made of the Respondent's implementation of the Consultant's recommendations and describe how Respondent has implemented and are complying with the Consultant's recommendations.

18.     Within two (2) months from Respondent's receipt of the Final Report, a Highland principal shall certify in writing to the Division of Enforcement and OCIE that, to the best of his knowledge based on reasonable inquiry, all of the Consultant's recommendations and any alternative approaches approved by the Consultant have been adopted and implemented by the Respondent.

19.     The Respondent shall cooperate fully with the Consultant, including providing the Consultant with access to all relevant files, books, records, and personnel of the Respondent and facilitate access to relevant personnel at any third party service providers as requested for the above-mentioned review, and obtaining cooperation of employees or persons under the Respondent's control.  Nothing in the foregoing shall be deemed to require the Respondent to waive its attorney-client privileges or other privileges with respect to privileged documents.

20.     The Respondent shall require the Consultant to report to the Commission staff on its activity as the staff may reasonably request.

21.     To ensure the independence of the Consultant, the Respondent shall not have the authority to terminate the Consultant without prior written approval of the Commission staff and shall compensate the Consultant and persons engaged to assist the Consultant for services rendered pursuant to this Order at its reasonably and customary rates.

22.     The Respondent shall expend sufficient funds to permit the Consultant to discharge its duties.  The Respondent shall permit the Consultant to engage such assistance, clerical, legal or expert, as necessary and at a reasonable cost, to carry out its activities, and the cost, if any, of such assistance shall be borne exclusively by the Respondent.

23.     The Respondent shall bear the full expense of carrying out these undertakings, including the costs of retraining the Consultant and implementing the Consultant's recommendations.

24.     The Respondent shall require the Consultant to enter into an agreement that provides that for the period of engagement and for a period of two years from completion of the engagement, the Consultant shall not enter into any employment, consultant, attorney-client, auditing or other professional relationship with Respondent, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity. The agreement will also provide that the Consultant will require that any firm with which it is affiliated or of which it is a member, and any person engaged to assist the Consultant in performance of his/her duties under this Order shall not, without prior written consent of the Fort Worth Regional Office, enter into any employment, consultant, attorney-client, auditing or other professional relationship with Respondent, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity as such for the period of the engagement and for a period of two years after the engagement.

25.     The Respondent may apply to the Division of Enforcement for an extension of the deadlines described above before their expiration and, upon a showing of good cause by the Respondent, the Division of Enforcement may, in its sole discretion, grant such extensions for whatever time period it deems appropriate.

26.     The Respondent shall certify, in writing, compliance with the undertaking(s) set forth above.  The certification shall identify the undertaking(s), provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance.  The Commission staff may make reasonable requests for further evidence of compliance, and Respondent agrees to provide such evidence.  The certification and supporting material shall be submitted to David Peavler, Assistant Regional Director, with a copy to the Office of Chief Counsel of the Enforcement Division, no later than sixty (60) days from the date of the completion of the undertakings.

## IV.

In view of the foregoing, the Commission deems it appropriate, in the public interest to impose the sanctions agreed to in Respondent Offer.

Accordingly, it is hereby ORDERED that:

A.     Pursuant to Section 203(k) of the Advisers Act, Respondent cease and desist from committing or causing any violations and any future violations of Sections 204(a) and 206(3) of the Advisers Act and Rule 204-2 thereunder.

B.     Pursuant to Section 203(e) of the Advisers Act, Respondent is censured.

C.     Pursuant to Section 203(i) of the Advisers Act, Respondent shall, within 30 days of the entry of this Order, pay a civil money penalty in the amount of $225,000 to the Securities and

Exchange Commission. If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. 3717. Payment must be made in one of the following ways:

(1) Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2) Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3) Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

> Enterprise Services Center
> Accounts Receivable Branch
> HQ Bldg., Room 181, AMZ-341
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Highland Capital Management, L.P. as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to David Peavler, Division of Enforcement, Securities and Exchange Commission, Burnett Plaza, 801 Cherry Street, Suite 1900, Unit 18, Fort Worth, TX 76102.

D. Pursuant to Section 203(k) of the Advisers Act, Respondent Highland shall comply with the undertakings set forth in Section III, Paragraphs 12 through 26, above.

By the Commission.

Brent J. Fields
Secretary