**Exhibit B**

**Crusader Plan**

THIS DOCUMENT IS IMPORTANT AND REQUIRES YOUR IMMEDIATE ATTENTION. IF YOU ARE IN ANY DOUBT AS TO ANY ASPECT OF THESE PROPOSALS OR AS TO THE ACTION YOU SHOULD CONSULT YOUR ATTORNEY OR OTHER PROFESSIONAL ADVISER WITHOUT DELAY

If you have sold or otherwise transferred, or sell or transfer prior to the date of this document as set out below, your interests as a Scheme Creditor you must forward a copy of this document to the person or persons to whom you have sold or otherwise transferred such interests, or to the broker, bank or other agent through whom the transfer was carried out for onward transmission to that person or persons. However, such documents should not be forwarded to or transmitted in or into any jurisdiction in which such act would constitute a violation of the relevant laws in such jurisdiction.

## PROPOSAL IN RELATION TO A
## SCHEME OF ARRANGEMENT

**Pursuant to section 99 of the Companies Act 1981**

**Between**

## HIGHLAND CRUSADER FUND II, LTD.

**and its**

## SCHEME CREDITORS[1]

**(as defined in the Scheme of Arrangement)**

Meetings of Scheme Creditors of the Company to consider the Scheme of Arrangement will be held on 7 July 2011 at 9:00 a.m. and 9:30 a.m. A notice of the meetings is set out on Appendix C of this document.

The action you should take is set out on page 7.

10 June 2011

---

[1] Scheme Creditors are redeemed investors of the Company.

266889

**HC-300.0001**

## TIMETABLE

### 1. Scheme Creditors' Meetings

The meetings of Scheme Creditors to consider and, if thought fit, agree to the Scheme will be held on 7 July 2011 at Wakefield Quin, Victoria Place, 31 Victoria Street, Hamilton, Bermuda commencing at 9:00 and 9:30 a.m.

### 2. Court hearings

It is estimated that the court hearing to sanction the Scheme will take place on 14 July 2011.*

### 3. Effective Date of the Scheme

It is estimated that the Effective Date of the Scheme will be in July 2011. It will not occur until all of the conditions precedent to the Scheme have been satisfied.

*With the exception of the date of the Scheme Creditors' meetings, these dates are only guidelines for the implementation of the proposed scheme of arrangement and may be subject to change.*

266889

**HC-300.0002**

1

CONFIDENTIAL

RC00066942

## IMPORTANT NOTICE TO SCHEME CREDITORS

This document has been prepared in connection with a proposed scheme of arrangement (the "Scheme") pursuant to section 99 of the Companies Act 1981 between Highland Crusader Fund II, Ltd. (the "Company") and its Scheme Creditors (as defined in the Scheme).

The Board of Directors of the Company are duly authorised to take all necessary steps in connection with the promotion and implementation of, and conduct of the Company's role under, the Scheme.

The information contained in this document has been prepared by the Company based upon information available to the Company and reflects the views of the Company only and not of any Redeemer.

The statements contained in this document are made as at its date, unless some other time is specified in relation to them, and service of this document shall not give rise to any implication that there has been no change in the facts set forth in this document since such date. Such statements are included for the guidance of creditors on certain issues relevant to the implementation of the Scheme once it becomes effective.

Nothing contained in this document shall constitute any admission of any fact or liability on the part of the Company with respect to any asset to which it may be entitled or any claim against it.

The summaries of the principal provisions of the Plan and the Scheme and related matters contained in this document are qualified in their entirety by reference to the Plan and the Scheme themselves, the full text of which are set out on in Appendix A and pages 27 to 64, respectively, of this document. Creditors are advised to read and to consider carefully the text of the Scheme itself and all appendices to this document.

Although great effort has been made to ensure its accuracy, the Company is unable to warrant or represent the accuracy of the information contained in this document. No person has been authorised by the Company to make any representations concerning the Scheme which are inconsistent with the statements contained in this document and, if made, such representations may not be relied upon as having been so authorised.

**Creditors should not construe the contents of this document as legal, tax or financial advice. Creditors should consult their own professional advisers as to the legal, tax, financial or other matters relevant to the action they should take in connection with the Scheme.**

# *CONTENTS*

|  | Page |
|---|---|
| **Explanatory Statement** | 4 |
| Index to Explanatory Statement | 5 |
| **The Scheme of Arrangement** | 27 |
| Index to the Scheme of Arrangement | 28 |
| The Scheme of Arrangement | 29 |

**Appendices**

Appendix A - Joint Plan of Distribution

Appendix B – Realisation Schedule

Appendix C - Notice of Scheme Creditors' Meetings

Appendix D - Proxy Form

**Certain expressions used in this document are defined in the Scheme of Arrangement on pages 29 to 35.**

Reference to monetary units herein, such as "dollars" or "$," are to United States currency, unless otherwise expressed herein.

---

**Legal Advisers to the Company in relation to the Scheme of Arrangement**

Attride-Stirling &
Woloniecki
Crawford House
50 Cedar Avenue
Hamilton HM11
Bermuda

266889

**HC-300.0004**

CONFIDENTIAL

RC00066944

# EXPLANATORY STATEMENT

### In relation to a

## PROPOSAL IN RELATION TO A

## SCHEME OF ARRANGEMENT

### Pursuant to section 99 of the Companies Act 1981

### Between

## HIGHLAND CRUSADER FUND II, LTD.

### and its

## SCHEME CREDITORS

### (as defined in the Scheme of Arrangement)

266889

**HC-300.0005**

CONFIDENTIAL                                                                RC00066945

## INDEX TO EXPLANATORY STATEMENT

Page No.

Introductory Letter from the Company                 6

1.    Background to the Scheme                        9

2.    Summary of the Scheme provisions              18

3.    Implementation of the Scheme                  25

266889

**HC-300.0006**

5

Letter from the Company

## HIGHLAND CRUSADER FUND II, LTD.

### (Incorporated and registered in Bermuda with number 37130)

**To Scheme Creditors of Highland Crusader Fund II, Ltd. (the "Company")**

### Introduction

The purpose of the Scheme Document is to explain the provisions of the proposed Scheme. The Scheme Document comprises the Explanatory Statement, the full provisions of the Scheme and notice of the meetings of Scheme Creditors. For a proper understanding of the Scheme and its implications, you should read the rest of the Explanatory Statement and the Scheme itself.

### Who are Scheme Creditors?

"Scheme Creditors" is the term conventionally used to describe the creditors of a company to which a scheme of arrangement under section 99 of the Bermuda Companies Act 1981 relates. In this Scheme, the term "Scheme Creditors" is defined as and refers to all investors of the Company whose share redemptions became effective prior to 30 June 2008 (referred to in this letter as "Prior Redeemers") and investors whose shares were not redeemed on or prior to 30 June 2008 (referred to in this letter as "Compulsory Redeemers" and, together with Prior Redeemers, the "Redeemers").

Other expressions used in this letter are also defined in the Scheme at pages 29 to 35.

### Why have you received this document?

You have been sent this document because, according to the Company's records, you are or may be a Scheme Creditor, i.e., a redeemed investor of the Company.

### What is a Scheme of Arrangement?

A scheme of arrangement is a compromise or arrangement which is entered into by the Company pursuant to the provisions of section 99 of the Companies Act 1981 and all, or some of its creditors. In this case the Scheme is between the Company and Scheme Creditors only. The Scheme will become effective if, among the other conditions specified in the Scheme:

1. a majority in number representing three fourths in value of those Scheme Creditors in each class who attend a meeting of that class of Scheme Creditors vote, in person or by proxy, in favour of the Scheme;

2. it is subsequently sanctioned by the Bermuda Court; and

3. the order of the Court sanctioning the Scheme is delivered to the Registrar of Companies.

### Background

CONFIDENTIAL                                                                    RC00066947

Background information to the Scheme is provided in the Explanatory Statement in paragraphs 1.1 through 1.37.2.

**Why has the Scheme been proposed?**

The purpose of the Scheme of Arrangement is to implement the Plan in relation to the Company in order make it binding on all Prior Redeemers and Compulsory Redeemers of the Company.

**Who is a Scheme Creditor?**

Scheme Creditors are Prior Redeemers and Compulsory Redeemers of the Company.

**What are you required to do?**

The Bermuda Court has convened separate meetings of each of the two classes of Scheme Creditors, the Prior Redeemers and Compulsory Redeemers, for the purpose of voting on the Scheme (the "Scheme Creditors' Meetings"). The Scheme Creditors' Meetings will be held at Wakefield Quin, Victoria Place, 31 Victoria Street, Hamilton, Bermuda on 7 July 2011, commencing at 9:00 and 9.30 a.m. (Bermuda Time). Notice of the Scheme Creditors' Meetings is in Appendix B.

If you intend to vote at the Scheme Creditors' Meeting for your class, you may only do so if you are a Scheme Creditor of the Company in that class. If you are a Scheme Creditor and are an individual, you may attend and vote at the Scheme Creditors' Meeting for your class either in person or by proxy (i.e., you may appoint someone who will attend the Scheme Creditors' Meeting on your behalf and who will vote in accordance with your instructions). Corporations may attend and vote by a duly authorized representative or by proxy.

The value of Scheme Claims for voting purposes shall be their Redemption Amount stated on the Proxy Form sent to each Redeemer with the Scheme representing the Redemption Amount in respect of their redemption calculated in accordance with the Governing Documents

You will find enclosed your Proxy Form in relation to the Scheme Creditors' Meetings. This Proxy Form allows you to appoint a proxy to attend the Scheme Creditors' Meeting for your class and vote on your behalf and to indicate how you (if you attend in person) or your proxy may be voting. Please read the Proxy Form carefully and complete it in accordance with the instructions printed on it and return it to the Company c/o Wakefield Quin Limited at Victoria Place, 31 Victoria Street, Hamilton HM 10, Bermuda or by electronic mail to HighlandCrusaderFunds@hcmlp.com, in each case marked for the attention of "Highland Crusader Balloting." Each Proxy Form should be submitted so that it is received by 5:00 p.m. (Bermuda time) on 30 June 2011.

Submission of a Proxy Form at a Scheme Creditors' Meeting may be accepted at the discretion of the Chairman. However, it would be greatly appreciated and would help to avoid delay and inconvenience if you could send it to the Company, at the address or e-mail address stated in the preceding paragraph, in advance of the Scheme Creditors' Meetings as of the date and time set forth in the preceding paragraph.

The return of the Proxy Form will not prevent you from attending and voting in person (or in the case of a corporation by duly authorised representative) if you wish to do so.

CONFIDENTIAL

RC00066948

**When does the Scheme become effective?**

The Scheme will become effective only if the requisite statutory majority is obtained at each of the Scheme Creditors' Meetings, the Bermuda Court sanctions the Scheme, the order of the Court sanctioning the Scheme is delivered for registration to the Registrar of Companies and the other conditions precedent to the Scheme are satisfied or waived.

**The Company believes that the Scheme is in the best interests of the Scheme Creditors of the Company and the Board recommends that Scheme Creditors vote in favour of the Scheme.**

Yours faithfully,

James Dondero
Director
Highland Crusader Fund II, Ltd.

266889

**HC-300.0009**

8

CONFIDENTIAL

RC00066949

## 1. BACKGROUND TO THE SCHEME

**THE COMPANY AND THE HCM FUNDS**

1.1.    The Company was incorporated on 17 January 2002 as an exempted mutual fund company in Bermuda pursuant to the provisions of the Companies Act 1981.

1.2.    The authorised share capital of the Company is US$10.001 divided into 100 voting shares of par value US$0.01 each (the "Management Shares") and 10,000,000 non-voting redeemable participating shares of par value US$0.001 each (the "Participating Shares"). All of the Participating Shares that have been issued are fully paid.

1.3.    The Company was organised for the purpose of investing substantially all of its assets in Highland Crusader Offshore Partners, L.P. (the "Master Fund"), a Bermuda exempted limited partnership registered on 10 July 2000. The Company is a limited partner in the Master Fund together with two other entities, Highland Crusader Fund, Ltd., a Bermuda exempted company ("Offshore Fund I"), and Highland Crusader Fund, L.P., a Delaware limited partnership (the "Onshore Fund"). The Company, Offshore Fund I and Onshore Fund (together, the "Feeder Funds") are feeder funds to the Master Fund. The Company was formed by Highland Capital Management, L.P. ("HCMLP"), a Delaware limited partnership, which is investment manager to the Master Fund and the Feeder Funds (together the "Crusader Funds").

**FINANCIAL POSITION**

**Events Leading to the Wind Down**

1.4.    Following market upheaval throughout 2008, the financial markets took a drastic turn for the worse after the bankruptcy of Lehman Brothers on September 15, 2008, resulting in the most negative conditions in the financial markets, in a generation.

266889

**HC-300.0010**

CONFIDENTIAL                                                                    RC00066950

1.5.    The credit markets were hit particularly hard.  Specifically, the high yield bond and loan markets experienced unprecedented declines in October 2008, with returns of minus 16 and 13.2%, respectively, following negative 8 and 6.7% returns, in September 2008, respectively.   To put that in context, the average historical negative monthly returns have been about minus 2% for the high yield bond market for the last 12 years.  And negative 1% for loans over the last 11 years.

1.6.    In October 2008, the average loan bid plummeted 14 points to 71, eclipsing the prior historical lows of roughly 87 in 2001 and 84 cents on the dollar in March 2008.  The October 2008 loss in loans more than doubled the prior record loss of 6.15% in September 2008.

1.7.    The week of 10 October 2008 was reported to be the worst week in the 112-year history of the Dow and Friday 10 October's 1,019 point inter-day swing was the most volatile session ever.  The stock market dropped 22% in the eight sessions ended October 10, 2008.

1.8.    Both the high yield bond market and the loan market had dropped 17% over the prior five weeks.  The corporate bond market lost 11% over the prior five weeks and the commercial paper and money markets were on the verge of collapse.

1.9.    With the high yield credit markets, for all intents and purposes, frozen, there was little ability to trade.  The only sellers in the market were forced sellers and buyers responded accordingly with a huge gap in bid/offer spreads.   And in many situations sellers were getting no bids at all.

1.10.   Additionally, during this period there was a sharp reduction in the availability and stability of financing.  On the heels of Lehman's bankruptcy filing, prime brokers started pulling back financing, increasing discounts, terminating repurchase agreements and trapping cash.  The Master Fund, like many other similarly situated funds, saw a dramatic deterioration in the terms and tone of its activities with financing providers, in September and October 2008.

CONFIDENTIAL                                                                                                          RC00066951

**The Wind Down Determination**

1.11.  Therefore, the Crusader Funds decided to wind down as a means of trying to reduce the risks of being a forced seller and in an effort to preserve as much of the value of each fund as possible for the benefit of all of its constituencies.

1.12.  Accordingly, on 15 October 2008, on behalf of the Feeder Funds, HCMLP gave notice of the intention to wind down to investors in all of the Feeder Funds by two letters: one addressed to former investors in the Feeder Funds who had redeemed prior to 15 October 2008 (the "Crusader Fund Prior Redeemers") and one addressed to investors in the Feeder Funds who had not redeemed (the "Crusader Fund Compulsory Redeemers"). By these letters, the investors were given notice that:

    1.12.1. All outstanding shares and limited partnership interests were being compulsorily redeemed (with effect on 15 November 2008 in the case of the Company Compulsory Redeemers) and

    1.12.2. Payment of the Redemption Amounts due to investors was suspended.

1.13.  From 15 November 2008 to the end of March 2011, the Crusader Funds assets have appreciated by approximately 23% and the credit and equity markets have largely stabilized. If the current valuation of the assets is achieved on realisation, the Crusader Funds Redeemers will be paid their Redemption Amounts in full and will be entitled to share in the surplus. Accordingly, the Crusader Funds' decision to suspend payment of Redemption Price has achieved the aim of preserving the Crusader Funds' asset value.

**The Disputes Between Prior Redeemers and Compulsory Redeemers**

1.14.  HCMLP made a proposal for a plan of dissolution in its letters dated 15 October 2008 under which the Prior Redeemers and Compulsory Redeemers were treated alike on the basis that, because they had all been redeemed, they generally had the same rights, though different redemption values as a result of different effective redemption dates. However, this plan of dissolution did not proceed due to disagreement between the Prior Redeemers and Compulsory Redeemers. On 29

266889

**HC-300.0012**

CONFIDENTIAL
RC00066952

January 2009, HCMLP proposed a new plan of distribution to the stakeholders in all of the Feeder Funds, in which it was proposed that the Prior Redeemers receive some priority of distribution proceed payment over the Compulsory Redeemers as an attempted compromise of the dispute between the Prior Redeemers and Compulsory Redeemers.

## The Mediation

1.15.    HCMLP then initiated a mediation between the Prior Redeemers and Compulsory Redeemers and HCMLP in order to try to agree a plan of distribution, which commenced in April 2009. Both Prior and Compulsory Redeemers appointed representatives to form working groups to represent their separate interests. These working groups then collectively chose a mediator and presented position papers to the mediator to advance their views.

1.16.    There were several meetings and numerous discussions and proposals in 2009 and 2010. However, these did not result in an agreement.

## THE LIQUIDATION PROCEEDINGS

1.17.    Muirfield Offshore Fund SPC, Ltd ("Muirfield") held shares in the Company through its nominee, Royal Bank of Canada, which were redeemed effective 30 June 2008.  In July 2010, Muirfield served a statutory demand on the Company demanding payment of the Redemption Amount payable in respect of its shares. The Company rejected the statutory demand on the basis that the payment of the Redemption Amount had been suspended.

1.18.    On 14 October 2010, Muirfield presented a winding-up petition (the "Petition") against the Company based upon three grounds: that based on non-payment of the statutory demand the Company was insolvent; that the Company had suspended its business for more than one year; and that due to allegations of bad faith and conflict of interest, it was just and equitable that the Company be wound up.

266889

**HC-300.0013**

CONFIDENTIAL                                                                                          RC00066953

1.19.   The Company vigorously defended the Petition, which was eventually set down for hearing on 2 May 2011. A number of other Company Prior Redeemers and one Company Compulsory Redeemer served notices of intention to appear at the petition hearing indicating that they would support the petition.

1.20.   Throughout the period that the Petition was pending, HCMLP continued in its efforts to reach an agreement with Prior Redeemers and Compulsory Redeemers regarding a plan of distribution. With the agreement of a majority of the Company Prior Redeemers who had served notices of intention to appear at the petition hearing (not including Muirfield), the petition hearing was adjourned until 30 May 2011 to enable the Company to prepare and propose a scheme of arrangement to all Company Redeemers. This resulted in the proposal of the Scheme.

1.21.   Barclays Bank PLC is a Compulsory Redeemer of the Onshore Fund. It has a pending claim against HCMLP, the Onshore Fund and 7 other funds that are managed by HCMLP that are not Crusader Funds, which has been denied by the defendants. Barclays may be a Non-Consenting Compulsory Redeemer under the Plan.

## THE PLAN OF DISTRIBUTION

1.22.   In conjunction with preparation of the Scheme, HCMLP and the Crusader Funds prepared a joint plan of distribution of the Crusader Funds (the "Plan"). The Scheme is intended to implement the terms of the Plan. The Plan is being submitted to the other Crusader Fund Redeemers for their consent at the same time as the Scheme is being proposed to the Company Redeemers. The Company's adoption of the Plan is conditional on the implementation of the Scheme. A copy of the Plan is appended as Appendix A to the Scheme. The principal terms of the Plan are reflected in the Scheme, a summary of which is in section 2.

1.23.   A key feature of the Scheme and the Plan is that the Master Fund's assets will be distributed in accordance with the collective entitlement of the Prior Redeemers and Compulsory Redeemers under the Scheme and Plan across the Feeder Funds

**HC-300.0014**

CONFIDENTIAL

RC00066954

and not in accordance with the entitlement of the Feeder Funds as between themselves.

## PURPOSE OF THE SCHEME

1.24.  The purpose of the Scheme is to implement the Plan in relation to the Company by making the terms of the Plan binding on all Company Redeemers.

## ADVANTAGES OF THE SCHEME

### Position on a liquidation

1.25.  If the Company were to go into liquidation, and there were no Plan or Scheme, the Company considers that the Company Prior Redeemers and Company Compulsory Redeemers would be creditors in the amount of their Redemption Amounts calculated in accordance with the Governing Documents and ranking equally. If they are regarded as creditors only and no longer as members of the Company, they would not be entitled to any surplus of the Company's assets after payment of the Redemption Amounts.   Although it is clear from the Governing Documents that HCMLP, as holder of the Management Shares, would not have been entitled to the surplus, there are no provisions to deal with a surplus. The Company would have needed to amend the Governing Documents to make such provision. That effect can now be achieved by the Scheme.

1.26.  However, it has been alleged by Muirfield in the liquidation proceedings that the compulsory redemption of the Company Compulsory Redeemers was not effective and they are still members of the Company. If this were established to be the case in the liquidation, this would be likely to mean (although this point has not been determined by the Bermuda Court) that the Company Prior Redeemers would be entitled to be paid in full prior to the Company Compulsory Redeemers and that only the Company Compulsory Redeemers would be entitled to the assets remaining after payment of the Company Prior Redeemers.

1.27.  The Company considers that it is likely that realisations on the sale of the assets of the Master Fund would be less if the Crusader Funds were to go into liquidation.

CONFIDENTIAL

RC00066955

If a liquidator were to liquidate assets quickly or without the assistance of HCMLP's knowledge of the assets, the assets available for Distribution may be significantly less and would be further reduced as the expenses of the liquidation would be payable out of the assets.

1.28.   A creditors' committee appointed in a liquidation of the Company would not have the same level of influence over the affairs of the Company as the Redeemer Committee will have under the Scheme, which gives it the ability to terminate HCMLP's services as investment manager on 30 days' notice with or without Cause.

**Advantages of the Scheme**

1.29.   The main advantages of the Scheme to the Company Prior Redeemers are:

1.29.1.   that the cost of litigating claims (which have principally been threatened by Company Compulsory Redeemers), will be saved, as claims by Scheme Creditors will be barred.

1.29.2.   they will be entitled without question to a share of any surplus available for Distribution after payment of the Redemption Amounts.

1.29.3.   they will avoid a protracted and potentially multi-jurisdictional dispute, with the Company Compulsory Redeemers.

1.30.   The main advantages of the Scheme to Company Compulsory Redeemers are:

1.30.1.   that they will receive 40% of Distributions, which is approximately 9 percentage points more than the proportion that their aggregate Redemption Amounts bear to the Company Prior Redeemers' aggregate Redemption Amounts (which is approximately 31% to 69%).

1.30.2.   they will be entitled to their pro rata share (with all Crusader Fund Compulsory Redeemers) of (i) the $5 million contributed to the Redeemer Trust Account by HCMLP (ii) any balance on the Redeemer Trust Account after all Redeemer Claims have been resolved or dismissed with prejudice, or the limitation period with respect thereto has expired; and (iii) the amount in the Deferred Fee Account, if the Crusader Funds have not

**HC-300.0016**

CONFIDENTIAL                                                                                                RC00066956

made aggregate Distributions equal to or in excess of $1.7 billion prior to the 43rd month following the Effective Date, unless HCMLP is terminated other than for Cause prior to the third anniversary of the Effective Date.

1.31. The main advantages of the Scheme to both classes of Scheme Creditor are:

1.31.1. the Scheme will enable the orderly management, sale and distribution of the assets by HCMLP, subject to the Redeemer Committee's right to oversee and terminate HCMLP's services;

1.31.2. the expenses of the liquidation will be saved;

1.31.3. it will provide certainty regarding the respective claims of the Company Prior Redeemers and Company Compulsory Redeemers; and

1.31.4. distributions will proceed on a more timely basis than is likely in a liquidation.

**Disadvantages of the Scheme**

1.32. There is a risk that the Company Redeemers' Distributions may be less than their Redemption Amounts and this may be more of a risk for Company Prior Redeemers as they are receiving approximately 9 percentage points less than the proportion that their aggregate Redemption Amounts bear to the Company Compulsory Redeemers' aggregate Redemption Amounts.

1.33. Company Redeemers will be barred from bringing claims other than Scheme Claims.

**Effect of Releases**

1.34. Various releases will be granted under the Scheme and Plan.

1.35. Upon the Effective Date, each of the Company Redeemers release the Crusader Funds, each of the HCM-Related Parties and each of the other Consenting Crusader Fund Redeemers, from any and all claims which each Company Redeemer has, may have or ever had against any or all of the Crusader Funds, such HCM-Related Parties and the other Consenting Crusader Fund Redeemers from the beginning of the world to the Effective Date related to the Crusader Funds including without limitation its administration and wind-down.

CONFIDENTIAL    RC00066957

1.36. Upon the Effective Date, subject to certain exceptions stated in the Plan and Scheme, the HCM-Related Parties release each of the Company Redeemers, the Crusader Funds, and each other HCM-Related Party from any and all claims, which each HCM-Related Party has, may have or ever had against any or all of them from the beginning of the world to the Effective Date related to the Crusader Funds and their administration and wind-down.

## DIRECTORS', INVESTMENT MANAGERS' ETC. INTERESTS

1.37. The interests of the HCM-Related Parties and other associated parties in the Feeder Funds collectively are as follows:

1.37.1. As Prior Redeemers:

| Name | US$ |
| --- | --- |
| Highland 401(k) Plan | 31,042.00 |
| Highland Capital Management Services | 15,059,961.00 |
| **Total** | **15,091,003.00** |

1.37.2. As Compulsory Redeemers:

| Name | US$ |
| --- | --- |
| Highland 401(k) Plan | 175,939.00 |
| Highland Capital Management, L.P. Retirement Plan and Trust | 148,707.00 |
| **Total** | **324,646.00** |

These parties will not be voting on the Scheme.

CONFIDENTIAL                                                                                          RC00066958

## SUMMARY OF SCHEME PROVISIONS

A summary of the principal provisions of the Scheme and related matters is set out in this part of the Explanatory Statement. The full text of the Scheme is set out on pages 27 to 64 of the Scheme Document and qualifies this summary in its entirety. Therefore, Scheme Creditors should carefully read the Scheme itself.

2.  The principal terms of the Scheme are as follows:

   2.1. The Scheme mirrors the provisions of the Plan to the extent that they are applicable to the Company.

   2.2. However, the Scheme is binding only on Company Prior Redeemers and Company Compulsory Redeemers.

   2.3. Company Redeemers have a Scheme Claim based upon the Redemption Amount stated on their Proxy Form.

   2.4. Company Redeemers are not required to execute a Consent and are deemed to have consented to the Plan by the Scheme.

   2.5. The Scheme contemplates that HCMLP will continue to manage the Crusader Funds, subject to the oversight of and at the discretion of the Redeemer Committee. The Redeemer Committee will consist of representatives of 5 Consenting Crusader Fund Prior Redeemers and 5 Consenting Crusader Fund Compulsory Redeemers who will be elected in accordance with the Scheme. The powers of the Redemption Committee include the right to receive monthly reports from HCMLP on the Crusader Funds' performance and Realisation Plan progress; and the right to remove HCMLP as investment manager upon 30 days' notice with or without Cause.

   2.6. HCMLP shall be entitled to receive the following fees for its services:

      2.6.1.  25 basis points (per annum) calculated based on the value of the net distributable assets of the Company at the beginning of each calendar month, to be paid monthly in arrears out of the assets of the Company; and

266889

**HC-300.0019**

CONFIDENTIAL                                                                      RC00066959

2.6.2.   Provided that assets equal to or in excess of the amount scheduled in the Realisation Schedule have been distributed during such quarter (with amounts in excess of scheduled distributions for prior quarters being carried over), 125 basis points calculated based on all amounts Distributed during each quarter following the Effective Date (which shall be paid on a Company Redeemer by Company Redeemer basis by deduction from amounts distributed to such Company Redeemers during the quarter;

2.6.3.   In the event that HCMLP is removed as investment manager by the Redeemer Committee pursuant to clauses (b) or (c) of the definition of "Cause," HCMLP shall not be entitled to receive any of these fees that are accrued as of the termination date, and shall not, be entitled to any such future fees.

2.6.4.   HCMLP shall not be entitled to any future fees after it has been removed as investment manager by the Redeemer Committee.

2.7.   HCMLP will continue to be entitled to receive payment in respect of the Deferred Fees, the payment of which has been deferred due to an election contained in the Investment Management Agreement for the Company, which amount to $42,450,226 as at 30 April 2011; provided that (a) HCMLP shall not be entitled to receive payment in respect of such Deferred Fees until the complete liquidation of the Company's assets (except for that portion equal to the amount payable with respect to such Deferred Fees immediately prior to complete liquidation) and (b) the amount payable with respect to the Deferred Fees will be equal to:

(i)     $42,450,226 (which is the accrued liability associated with such fees on the Company's books as of 30 April 2011) multiplied by (ii) a fraction, which is expressed as a percentage (the "Distribution Percentage"),

(A)     the numerator of which is the amount of assets (in U.S. dollars) that are Distributed to Crusader Fund Redeemers prior to the dissolution of the Crusader Funds and

266889

**HC-300.0020**

CONFIDENTIAL

RC00066960

(B)     the denominator of which is $1,634,991,092 (the net distributable assets reflected on the books and records of the Master Fund as of 30 April 2011); and

(c) to the extent that in respect of its claim as a Crusader Funds Compulsory Redeemer Barclays does not execute a Consent and either enters into a settlement agreement or obtains a final, binding non-appealable judgment against the Onshore Fund for, in either case, for an amount in excess of the amount that Barclays would receive as a Consenting Compulsory Redeemer under the Plan (the "Barclays Excess Payment"), HCMLP shall assign to the Onshore Fund its right to receive an amount of Deferred Fees that are then equal to the amount of the Barclays Excess Payment (provided that HCM-Related Parties shall not be entitled to receive any such amounts). If the amount of the Barclays Excess Payment exceeds the amount of Deferred Fees held by HCMLP, HCMLP shall have no further liability or obligations with respect to the Barclays Excess Payment.

2.8. Until the Deferred Fees have been forfeited or paid under the Scheme, the Company shall fully reserve for such fees in cash in an amount equal to the Distribution Percentage calculated as of the date of each Distribution multiplied by the aggregate amount of such fees. The only circumstance where a portion of the Deferred Fees may be forfeited is with respect to the Deferred Fee Contribution as provided in Section 6.02 of the Plan and 5.2 of the Scheme. Otherwise, Deferred Fees are payable under all circumstances to HCMLP, subject to the Distribution Percentage adjustment.

2.9. HCMLP or its successor will oversee the liquidation of the Master Fund's assets in accordance with the Realisation Schedule (in Appendix B) and distribution of the net proceeds of those assets in accordance with the Scheme and the Plan as follows:

2.9.1. As investments in the Crusader Funds are realized (including all interest and dividends related to such investments prior to their realization) and money is available for Distribution or if any other asset of the Company

266889

**HC-300.0021**

CONFIDENTIAL                                                                                   RC00066961

resulting from an "in kind" distribution from the Master Fund to the Company is liquidated 100% of the Excess Cash of the Company, will be distributed to Company Redeemers in accordance with the Scheme (provided, however, that amounts in, and rights to, the Redeemer Trust Account and the Deferred Fee Account shall not be considered assets of the Crusader Funds for this purpose).

2.9.2. Distributions of Excess Cash will be made as follows:

2.9.2.1. Crusader Fund Prior Redeemers shall be entitled to 60% in aggregate of the total distributions made by the Master Fund constituting Excess Cash (the "Crusader Fund Prior Redeemers' Distribution"). Each Company Prior Redeemer shall be entitled to a Scheme Claim equivalent to that Company Prior Redeemer's pro rata share of the Crusader Fund Prior Redeemers' Distribution, based on that Company Prior Redeemer's Redemption Amount relative to the total of all Crusader Fund Prior Redeemers' Redemption Amounts.

2.9.2.2. Crusader Fund Compulsory Redeemers shall be entitled to 40% in aggregate of the total distributions made by the Master Fund constituting Excess Cash (the "Crusader Fund Compulsory Redeemers' Distribution"). Each Company Compulsory Redeemer shall be entitled to a Scheme Claim equivalent to that Company Compulsory Redeemer's pro rata share of the Crusader Fund Compulsory Redeemer's Distribution, based on that Company Compulsory Redeemer's Redemption Amount relative to the total of all Crusader Fund Compulsory Redeemers' Redemption Amounts.

2.10. There shall be no accrual of interest on Redemption Amounts. Distributions will be made on a monthly basis.

266889

**HC-300.0022**

CONFIDENTIAL                                                                RC00066962

2.11. The Scheme provides for mutual releases between the Crusader Funds and the HCM-Related Parties. Further, Article 6 of the Scheme provides that Consenting Crusader Fund Redeemers shall release each of the HCM-Related Parties, and the HCM-Related Parties shall release those Redeemers. Article 6 of the Scheme provides certain qualifications and conditions as well as certain enforcement provisions.

2.12. In partial consideration for the releases provided in clause 6 of the Scheme, on the Effective Date HCMLP shall establish, administer and fund in accordance with the Plan the Redeemer Trust Account with $6,030,000 million in cash. Upon the Effective Date, HCMLP will immediately distribute from the Redeemer Trust Account to:

2.12.1. each Consenting Crusader Fund Compulsory Redeemer (excluding any HCM-Related Party Consenting Crusader Fund Compulsory Redeemer) its pro rata portion of $5 million (which shall be determined based upon each Consenting Crusader Fund Compulsory Redeemer's Redemption Amount as compared to the Redemption Amount of all Crusader Fund Compulsory Redeemers) and

2.12.2. to each Consenting Crusader Fund Prior Redeemer (excluding any HCM-Related Party Consenting Crusader Fund Prior Redeemer) its pro rata portion of $1,030,000 (which shall be determined based upon each Consenting Crusader Fund Prior Redeemer's Redemption Amount as compared to the Redemption Amount of all Consenting Crusader Fund Prior Redeemers).

2.13. Pursuant to the Plan, the portion of such amounts in excess of the Redemption Amounts otherwise attributable to Non-Consenting Compulsory Redeemers shall be contributed to the Redeemer Trust Account and shall not be distributed to Non-Consenting Compulsory Redeemers. Amounts in the Redeemer Trust Account after the distribution of the amounts referred to above and Section 6.01 of the Plan, will be reserved and used to pay all costs of HCMLP-Related

CONFIDENTIAL

RC00066963

Parties and the Redeemer Committee to defend, respond to, settle and satisfy any Claims by Crusader Fund Redeemers, other than for their Scheme Claim ("Redeemer Claims") and shall be used to defend, respond to, settle and satisfy any such Redeemer Claims in advance of any amounts otherwise properly available for such purposes out of the assets of the Crusader Funds; provided, however, that to the extent that in respect of its claim as a Crusader Fund Compulsory Redeemer Barclays either (i) enters into a settlement agreement or (ii) obtains a final, binding non-appealable judgment against the Crusader Funds, in either case, for amounts less than the amount that Barclays would receive as a Consenting Compulsory Redeemer, HCMLP shall be entitled to an amount from the Redeemer Trust Account equal to such difference less amounts that have been paid in defence of such claim, payable only from amounts otherwise distributable to Onshore Fund Consenting Compulsory Redeemers.

2.14. In partial consideration for the releases provided under Clause 6 of the Scheme, HCMLP will establish the "Deferred Fee Account," on the Effective Date by allocating the right to potentially receive Deferred Fees in an amount equal to the Deferred Fee Contribution (i.e., $10 million) to the Deferred Fee Account. Amounts payable in respect of the Deferred Fee Account will depend upon the amount of distributions that are made by the Crusader Funds.

2.15. The Company will have obligations under Section 2.03 of the Plan (the "Indemnification Obligations"), to the fullest extent permitted by applicable law, to indemnify and hold harmless each other HCM-Related Party against any losses, claims, damages, liabilities, costs or expenses to which such HCM-Related Party may become subject in connection with any claim, investigation or suit threatened or asserted based on such HCM-Related Party's position with respect to or role in connection with the Crusader Funds or HCMLP in respect to its role in connection with the Crusader Funds, unless a court of competent jurisdiction, in a judgment that has become final and that is no longer subject to appeal or review, determines that any such loss, claim, damage, liability, cost or expense is primarily attributable to such HCM-Related Party's wilful misconduct or gross negligence.

266889

**HC-300.0024**

CONFIDENTIAL

RC00066964

2.16. The Scheme contains other provisions including mediation and arbitration of disputes.

2.17. Conditions precedent to the Scheme are that:

2.17.1. the $6,030,000 million in cash referenced in clause 5.1.1 of the Scheme has been deposited in the Redeemer Trust Account by HCMLP; and

2.17.2. the Plan has been adopted by each other Crusader Fund.

24

**HC-300.0025**

CONFIDENTIAL

## *3.*    IMPLEMENTATION OF THE SCHEME

### 3.1.    Meetings of Scheme Creditors

Before the Scheme can become binding on the Company and the Scheme Creditors, a resolution approving the Scheme must be passed by the majority of Scheme Creditors in each class required by section 99 of the companies Act 1981, being a majority in number representing three fourths in value of those Scheme Creditors in each class who, being so entitled, are present in person or by proxy and vote at the meeting of Scheme Creditors convened for each class for the purpose of considering the Scheme.

### 3.2.    Notice of meetings

A meeting of each class of Scheme Creditors for the purpose of considering the Scheme has been ordered to be summoned by the Bermuda Court. If you are a Scheme Creditor, you are entitled to attend and vote at the meeting for your class or classes (for those Scheme Creditors that are both Company Prior Redeemers and Company Compulsory Redeemers. You may attend and vote at the meeting in person (or, if a corporation, by a duly authorised representative) or by proxy. **A notice of the meetings, to be held on 7 July 2011, is set out on Appendix C of the Scheme Document.**

### 3.3.    Forms of proxy

3.3.1.    Enclosed with this document you will find a Proxy Form.  Please complete, sign and return the Proxy Form in accordance with the instructions printed on it. Completion of the Proxy Form does not prevent you from attending in person (or, if a corporation, by a duly authorised representative) at the meeting.

3.3.2.    If you elect to complete a Proxy Form you should return it (in accordance with the instructions printed on such form) to the Company c/o Wakefield Quin Limited, Victoria Place, 31 Victoria Street, Hamilton HM 10, Bermuda or by email (as a scanned copy) to HighlandCrusaderFunds@hcmlp.com, in each case marked for the attention of "Highland Crusader Balloting."

### 3.4.    Valuation of claims for voting purposes

266889

**HC-300.0026**

CONFIDENTIAL

RC00066966

3.4.1.   The value of Scheme Claims for voting purposes shall be the value of the Redemption Amount stated on the Proxy Form sent to each Company Redeemer for the purpose of voting on the Scheme.

3.4.2.   In the event that a Scheme Creditor objects to the valuation of its claim as set out in the Proxy Form for the purpose of voting at the meeting, the value of that Scheme Claim shall be determined by the Chairman of the meeting at his discretion, provided that the minimum value of such Scheme Claim determined by the Chairman shall be the Redemption Amount stated on the Scheme Creditor's Proxy Form.  In the event of overlapping or duplicative claims only one vote shall be allowed and priority shall be given the person who appears to be the record holder. The Chairman's decision shall be final and binding for the purpose only of valuing the Scheme Claim for voting purposes. The valuation of the Scheme Claim by the Chairman for the purpose of voting at the meeting will be without prejudice to the determination of the Scheme Creditor's claim under the Scheme.

## 3.5.   Court hearings

3.5.1.  Before the Scheme can become effective and binding:

3.5.1.1.   the Bermuda Court must enter an order sanctioning the Scheme after it has been approved by the requisite majority of Scheme Creditors; and

3.5.1.2.   The order of the Bermuda Court sanctioning the Scheme must be delivered to the Registrar of Companies of Bermuda for registration.

## 3.6.   Effective date of the Scheme

It is expected that, if the Scheme is sanctioned by the Bermuda Court and delivered for registration, and the other conditions precedent to the Scheme are satisfied, the Scheme will become effective in July 2011.

266889

**HC-300.0027**

CONFIDENTIAL                                                                                                                           RC00066967

# IN THE SUPREME COURT OF BERMUDA

## CIVIL JURISDICTION
## COMMERCIAL COURT
## NO. 51 OF 2011

## IN THE MATTER OF HIGHLAND CRUSADER FUND II, LTD.

And

## IN THE MATTER OF THE COMPANIES ACT 1981

### SCHEME OF ARRANGEMENT

(under Section 99 of the

Companies Act 1981)

Between

## HIGHLAND CRUSADER FUND II, LTD.

and its

### SCHEME CREDITORS

(as defined in the Scheme)

27

266889

**HC-300.0028**

RC00066968

# TABLE OF CONTENTS

| | | |
|---|---|---|
| 1. | Introduction | 29 |
| 2. | The Scheme | 40 |
| 3. | Establishment of Claims | 46 |
| 4. | Management | 47 |
| 5. | Trust Accounts | 55 |
| 6. | Miscellaneous | 58 |

**HC-300.0029**

CONFIDENTIAL                                                                 RC00066969

# 1 – INTRODUCTION

## 1.1    Definitions and Interpretation

In the Scheme, unless the context otherwise requires or as otherwise expressly provided for, the following expressions shall have the meanings set out below and where a capitalized term is not defined it shall have the same meaning as in the Plan.

| | |
|---|---|
| **Barclays** | Barclays Bank PLC and its affiliates. |
| **Barclays Claims** | Any and all amounts claimed by Barclays against any Crusader Fund in respect of its investment in the Crusader Funds, including its Redemption Amount, other compensatory and punitive damages, interest, legal fees, and costs of litigation, and including all claims asserted in the proceeding styled HYMF, Inc., and Barclays Bank PLC, v. Highland Capital Management, L.P., et al., Index No. 601027/09, pending in the Supreme Court of the State of New York, County of New York – Civil Term – Part 54. |
| **Barclays Excess Payment** | "Barclays Excess Payment" shall have the meaning given in clause 1.5.2 |
| **Bermuda Court** | The Supreme Court of Bermuda |
| **Board** | The Board of Directors of the Company appointed or elected pursuant to the Governing Documents. |

**HC-300.0030**

CONFIDENTIAL

| | |
|---|---|
| **Cause** | "Cause" shall mean (a) the failure by the Crusader Funds to distribute assets that equal or exceed the amounts stated in the Realisation Schedule for two consecutive quarters without the approval of the Redeemer Committee (provided that amounts in excess of scheduled distributions for prior quarters will be carried over), (b) the engagement by the Crusader Funds in a transaction or other action for which the Redeemer Committee's approval is required and is not obtained or which transaction or other action is not subsequently ratified by the Redeemer Committee or (c) HCMLP is adjudged by a court of competent jurisdiction to have engaged in fraud or wilful misconduct relating to its management of the Crusader Funds. |
| **Claim** | "Claim" shall have the meaning given in clause 6.3.1 of the Scheme. |
| **Companies Act** | The Bermuda Companies Act 1981 |
| **Company** | Highland Crusader Fund II, Ltd. |
| **Company Compulsory Redeemers** | Investors of the Company who did not timely submit redemption requests for redemption dates on or before 30 June 2008. |
| **Company Prior Redeemers** | Investors of the Company who timely submitted redemption requests for redemption dates that fell on or before 30 June 2008, and who have not received full payment of their Redemption Amount. |
| **Company Redeemers** | Company Compulsory Redeemers and Company Prior Redeemers. Any Company Redeemer who is both a Company Prior Redeemer and a Company Compulsory Redeemer shall be referred to as a Company Prior Redeemer with respect to its investment that was included in its timely submitted redemption requests(s) for redemption dates on or before 30 June 2008, and a Company Compulsory Redeemer with respect to the remainder of its investment. |
| **Consent** | The written instruments executed by Consenting Crusader Fund Redeemers consenting to the Plan and entitled "Consent to Joint Plan of Distribution of the Crusader Funds." |

266889

30

**HC-300.0031**

RC00066971

| | |
|---|---|
| **Consenting Crusader Fund Redeemers** | Crusader Fund Redeemers who execute a Consent shall be referred to herein as "Consenting Crusader Fund Redeemer;" or, as applicable, "Consenting Crusader Fund Prior Redeemers" or "Consenting Crusader Fund Compulsory Redeemers"; provided that all Company Redeemers are deemed to be Consenting Crusader Fund Redeemers for the purposes of the Scheme. |
| **Crusader Funds** | Collectively, the Master Fund, the Company, Offshore Fund I and the Onshore Fund. |
| **Crusader Fund Compulsory Redeemers** | Investors of the Company, Offshore Fund I and the Onshore Fund who did not timely submit withdrawal/redemption requests for withdrawal/redemption dates on or before 30 June 2008. |
| **Crusader Fund Compulsory Redeemers' Distribution** | "Crusader Fund Compulsory Redeemers' Distribution" shall have the meaning given in clause 2.2.2 of the Scheme. |
| **Crusader Fund Redeemers** | Crusader Fund Compulsory Redeemers and Crusader Fund Prior Redeemers. Any Crusader Fund Redeemer who is both a Crusader Fund Prior Redeemer and a Crusader Fund Compulsory Redeemer shall be referred to as a Crusader Fund Prior Redeemer with respect to its investment that was included in its timely submitted withdrawal/redemption request(s) for withdrawal/redemption date(s) on or before 30 June 2008, and a Crusader Fund Compulsory Redeemer with respect to the remainder of its investment. |
| **Crusader Fund Prior Redeemers** | Investors of the Company, Offshore Fund I and the Onshore Fund who timely submitted withdrawal/redemption requests for withdrawal/redemption dates that fell on or before 30 June 2008, and who have not received full payment of their Redemption Amount. |
| **Crusader Fund Prior Redeemers' Distribution** | "Crusader Fund Prior Redeemers' Distribution" shall have the meaning given in clause 2.2.1 of the Scheme. |

CONFIDENTIAL                                                                                      RC00066972

| | |
|---|---|
| **Data Room** | The Crusader Funds' dedicated online Intralinks data room to which all Crusader Fund Redeemers have access at https://services.intralinks.com. |
| **Deferred Fee Account** | The account established and funded in accordance with clause 5.2 of the Scheme and Section 6.02 of the Plan. |
| **Deferred Fee Contribution** | HCMLP's right to receive payment in respect of Deferred Fees equal to $10 million (as of 30 April 2011). |
| **Deferred Fees** | The liability associated with annual performance fees payable by the Company to HCMLP, which is recorded as a liability of $42,450,226 on the Company's books as of 30 April 2011. For the avoidance of doubt, Deferred Fees are not, and shall not be deemed to be, shares of the Company and HCMLP shall not be deemed to be a Company Redeemer in respect of such Deferred Fees. |
| **Disputed Scheme Claim Notice** | "Disputed Scheme Claim Notice" shall have the meaning given to such term in clause 3.2.1 of the Scheme. |
| **Distribution Fee** | "Distribution Fee" shall have the meaning given to such term in clause 4.4 of the Scheme. |
| **Distributions** | Amounts to be paid to Crusader Fund Redeemers under the Plan, including amounts to be paid to Company Redeemers under the Scheme (other than out of the Redeemer Trust Account or the Deferred Fee Account). |
| **Distribution Percentage** | "Distribution Percentage" shall have the meaning given to such term in clause 1.5.2 of the Scheme. |
| **Effective Date** | The first business day on which all conditions to the effectiveness of the Scheme have been satisfied or waived. |
| **Excess Cash** | Cash and cash equivalents minus current liabilities (excluding Scheme Claims) and other appropriate accruals or reserves, each as determined in accordance with GAAP and minus any other liabilities, escrows, or reserves expressly provided for by the Plan or the Scheme; provided, however, that for purposes of determining "Excess Cash," except with respect to reserves required by clause 1.5.3 below, the Crusader Funds shall only retain cash to the extent such liabilities are reasonably anticipated to be due and payable within 180 days and HCMLP |

**HC-300.0033**

CONFIDENTIAL                                                                        RC00066973

(or a replacement investment manager) does not reasonably believe that the Crusader Funds would be able to realize cash proceeds necessary to satisfy such liabilities prior to the date by which such liabilities are due and payable.

| | |
|---|---|
| **Feeder Funds** | The Company, Offshore Fund I and the Onshore Fund. |
| **Final Distribution Date** | "Final Distribution Date" shall have the meaning given to such term in clause 5.1.2 of the Scheme. |
| **GAAP** | Generally accepted accounting principles in the United States. |
| **General Partner** | Highland General Partner, L.P., as general partner of the Master Fund and the Onshore Fund. |
| **Governing Documents** | This term refers to one or more of the following: the Amended and Restated Bye-Laws of Highland Crusader Fund II, Ltd. and the Third Amended and Restated Investment Management Agreement between the Company and HCMLP dated as of 1 September 2006, as amended. |
| **HCMLP** | Highland Capital Management, L.P., a Delaware limited partnership. |
| **HCM-Related Parties** | The Crusader Funds, the General Partner and HCMLP, as well as each of their present, future, and former respective officers, directors, employees, affiliates, agents and representatives. |
| **Larceny Claims** | "Larceny Claims" shall have the meaning given to such term in clause 6.3.1 of the Scheme. |
| **Master Fund** | Highland Crusader Offshore Partners, L.P. |
| **Management Shares** | "Management Shares" shall have the meaning given to such term in clause 1.4.3 of the Scheme. |
| **NexBank** | NexBank, SSB |

**HC-300.0034**

CONFIDENTIAL                                                            RC00066974

| | |
|---|---|
| **Non-Consenting Redeemers** | Crusader Fund Redeemers of Offshore Fund I and the Onshore Fund who did not execute a Consent are referred to collectively as "Non-Consenting Redeemers" or, where applicable, "Non-Consenting Prior Redeemers" or "Non-Consenting Compulsory Redeemers." (All Company Redeemers are deemed to be Consenting Crusader Fund Redeemers under the Scheme.) |
| **Offshore Fund I** | Highland Crusader Fund, Ltd. |
| **Onshore Fund** | Highland Crusader Fund, L.P. |
| **Participating Shares** | "Participating Shares" shall have the meaning given to such term in clause 1.4.3 of the Scheme. |
| **Plan** | The agreement entitled "The Joint Plan of Distribution of the Crusader Funds," a copy of which is attached as Appendix A to the Scheme. |
| **Proxy Form** | "Proxy Form" shall have the meaning given in clause 3.1.1 of the Scheme. |
| **Realisation Schedule** | The schedule attached as Appendix B hereto, as it may be amended with the consent of HCMLP and the Redeemer Committee. |
| **Redeemer Claims** | "Redeemer Claims" shall have the meaning given in clause 5.1.1 of the Scheme. |
| **Redeemer Committee** | The committee constituted in accordance with clause 4.5 of the Scheme, which will represent all Consenting Crusader Fund Redeemers with respect to those matters specified in clauses 4.6 and 4.7 of the Scheme. |
| **Redeemer Trust Account** | The account established and funded in accordance with clause 5.1 of the Scheme. |

CONFIDENTIAL

RC00066975

| | |
|---|---|
| **Redemption Amount** | With respect to each Crusader Fund Redeemer, the amount set forth on the Consent and/or Proxy Form (for Company Redeemers), which is calculated as the net asset value or capital account balance (as applicable) of a Crusader Fund Redeemer's investment as of the date on which the redemption related to such investment became effective (which, for the sake of clarity, for Company Compulsory Redeemers shall be 15 November 2008), calculated in accordance with the Governing Documents, adjusted by deducting the payment(s), if any, made to such Crusader Fund Redeemer through 15 November 2008. For Crusader Fund Redeemers that may be subject to redemption/withdrawal fees, the Crusader Fund shall waive any such redemption/withdrawal fees and the Redemption Amount for such Crusader Fund Redeemers shall not be reduced by any such redemption fees. |
| **Scheme Arbitrators** | Any arbitrators appointed in an arbitration under clause 6.10 of the Scheme. |
| **Scheme Claim** | The claim of a Scheme Creditor to payment of, or based upon, the Redemption Amount relating to the redemption of their shares in the Company as detailed in clause 2.2 of the Scheme. |
| **Scheme Creditors** | Company Redeemers |
| **Scheme Mediator** | Layn Philips |
| **U.S. or United States** | United States of America |

1.2    Clause headings and the table of contents are inserted for convenience of reference only and shall be ignored in the interpretation of the Scheme.

1.3    In the Scheme, unless the context otherwise requires

    1.3.1    references to parts and clauses are to be construed as references to the parts and clauses of the Scheme and references to Appendices are to be construed as references to the Appendices to the Scheme unless otherwise stated;

**HC-300.0036**

CONFIDENTIAL    RC00066976

1.3.2    references to (and to any provision of) the Scheme shall be construed as references to the Scheme or that provision as in force for the time being and as amended in accordance with its terms;

1.3.3    words importing the plural shall include the singular and vice versa and the masculine, feminine or neuter gender shall each include the other genders;

1.3.4    references to a person shall be construed as including references to an individual, firm, company, corporation, unincorporated body of persons or any State or any agency thereof;

1.3.5    references to any enactment or statutory instrument shall be to such enactment or statutory instrument as amended and in force on the date of this document; and

1.3.6    references to monetary units, such as "dollars" or "$," are to U.S. currency, unless otherwise expressed herein.

## 1.4    The Company

1.4.1    The Company was incorporated on 17 January 2002 as an exempted company in Bermuda pursuant to the provisions of the Companies Act.

1.4.2    The registered office of the Company is at c/o MQ Services, Victoria Place, 31 Victoria Street, Hamilton HM10, Bermuda.

1.4.3    The authorised share capital of the Company is US$10.001 divided into 100 Management Shares of par value US$0.01 each (the "Management Shares") and 10,000,000 non-voting redeemable Participating Shares of par value US$0.001 each (the "Participating Shares"). All of the Participating Shares that have been issued are fully paid.

**HC-300.0037**

CONFIDENTIAL                                                       RC00066977

1.4.4    The Company has carried on business since its incorporation as a mutual fund.

## 1.5    Parties other than the Company and Scheme Creditors

1.5.1    HCMLP is the holder of all of the Management Shares of the Company and is the investment manager of the Crusader Funds.

1.5.2    HCMLP shall continue to be entitled to receive payment in respect of the Deferred Fees pursuant to the Third Amended and Restated Investment Management Agreement between the Company and HCMLP dated as of September 1, 2006, as amended; provided, however, that (a) HCMLP shall not be entitled to receive payment in respect of such Deferred Fees until the complete liquidation of the Company's assets (except for that portion of the Company's assets equal to the amount payable immediately prior to complete liquidation with respect to such Deferred Fees) (b) the amount payable with respect to the Deferred Fees will be equal to (i) $42,450,226 multiplied by (ii) a fraction, which is expressed as a percentage (the "Distribution Percentage"), the numerator of which is (A) the amount of assets (in U.S. dollars) that are Distributed to Crusader Fund Redeemers prior to the dissolution of the Crusader Funds and the denominator of which is (B) $1,634,991,092 (the net distributable assets reflected on the books and records of the Master Fund as of 30 April 2011); and (c) to the extent Barclays does not execute a Consent to the Plan and in respect of the Barclays Claims either (x) enters into a settlement agreement or (y) obtains a final, binding non-appealable judgment against any or all of the Crusader Funds, in either case for an amount that is in excess of the amount that Barclays would receive as a Consenting Compulsory Redeemer (the "Barclays Excess Payment"), HCMLP shall assign to the Onshore Fund the right to receive an amount of Deferred Fees

**HC-300.0038**

CONFIDENTIAL    RC00066978

that are then equal to the amount of the Barclays Excess Payment (provided that HCM-Related Parties shall not be entitled to receive any such amounts). If the amount of the Barclays Excess Payment exceeds the amount of the Deferred Fees held by HCMLP, HCMLP shall ~~indemnify and hold harmless the Crusader Funds with respect to such excess amount~~have no further liability or obligations with respect to the Barclays Excess Payment.

1.5.3   Until the Deferred Fees have been forfeited or paid under the Scheme, the Company shall fully reserve for such fees in cash in an amount equal to the Distribution Percentage calculated as of the date of each Distribution multiplied by the aggregate amount of such fees. Cash held by the Company in reserve for such Deferred Fees shall be maintained in an interest bearing account, with all interest accruing thereon being retained by the Company for the benefit of Company Redeemers.

1.5.4   Layn Phillips has given and not withdrawn his consent to act as the Scheme Mediator from the Effective Date.

1.5.5   James Dondero, Nicholas Hoskins and Roderick Forrest have each given and not withdrawn their consent to continue to act as a director of the Company.

## 1.6   The Plan and the Scheme

1.6.1   To facilitate the winding down of the investments of the Master Fund and the distribution of its assets, the Crusader Funds, after taking advice from their professional advisers, decided that the best course of action is to promote the adoption of the Plan.

**HC-300.0039**

CONFIDENTIAL                                              RC00066979

1.6.2   The Company, having taken advice from its professional advisers, has decided that the best course of action in Bermuda to implement the Plan in order that it shall be binding on all Company Redeemers, is to promote a scheme of arrangement under Section 99 of the Companies Act in respect of the Company.   Accordingly, the Company's adoption of the Plan is conditional on the implementation of the Scheme.

1.6.3   Coordination between the Scheme and the Plan is essential to minimise any discrepancies between them.  The terms of the Plan, insofar as they are relevant to the Company, are hereby incorporated mutatis mutandis into the Scheme unless contradicted by the express terms of the Scheme, and upon the Scheme becoming effective, all Scheme Creditors will be bound by the provisions of the Plan.  The Governing Documents of the Company shall be deemed amended to conform to the Scheme.

1.6.4   In the event of an express conflict between the terms of the Scheme and the terms of the Plan, the terms of the Scheme shall prevail as to Scheme Creditors.

1.6.5   The Scheme is conditional on the sanction by the Bermuda Court and satisfaction of the other conditions precedent.

**HC-300.0040**

CONFIDENTIALRC00066980

## 2.   THE SCHEME

2.1   **Classes of Claims**

2.1.1   There shall be two classes of claims under the Scheme:

2.1.1.1   Company Prior Redeemers; and

2.1.1.2   Company Compulsory Redeemers.

2.2   **Treatment of Claims**

2.2.1   Crusader Fund Prior Redeemers shall be entitled to 60% in aggregate of the total distributions made by the Master Fund constituting Excess Cash (the "Crusader Fund Prior Redeemers' Distribution"). Each Company Prior Redeemer shall be entitled to a Scheme Claim equivalent to that Company Prior Redeemer's pro rata share of the Crusader Fund Prior Redeemers' Distribution, based on that Company Prior Redeemer's Redemption Amount relative to the total of all Crusader Fund Prior Redeemers' Redemption Amounts.

2.2.2   Crusader Fund Compulsory Redeemers shall be entitled to 40% in aggregate of the total distributions made by the Master Fund constituting Excess Cash (the "Crusader Fund Compulsory Redeemers' Distribution"). Each Company Compulsory Redeemer shall be entitled to a Scheme Claim equivalent to that Company Compulsory Redeemer's pro rata share of the Crusader Fund Compulsory Redeemer's Distribution, based on that Company Compulsory Redeemer's Redemption Amount relative to the total of all Crusader Fund Compulsory Redeemers' Redemption Amounts.

2.3   **Application of the Scheme**

The Scheme applies to the Scheme Claims of the Scheme Creditors.

**HC-300.0041**

CONFIDENTIAL                                                                      RC00066981

2.4     **Assets for Distribution**

2.4.1   Assets of the Company will be distributed in accordance with this clause 2.4.1. As investments in the Master Fund are realized and assets are distributed to the Company in accordance with the Plan and are available for Distribution or if any other asset of the Company resulting from an "in kind" distribution from the Master Fund to the Company is liquidated (subject to clause 4.7 of the Scheme), 100% of the Excess Cash of the Company, will be distributed to Company Redeemers in accordance with the treatment set forth in clause 2.2 of this Scheme (provided, however, that amounts in, and rights to, the Redeemer Trust Account and the Deferred Fee Account shall not be considered assets of the Crusader Funds for this purpose).

2.4.2   There shall be no accrual of interest on Redemption Amounts. Distributions of Excess Cash will be made monthly. The Company may withhold any Distribution if a Company Redeemer has failed to provide:

2.4.2.1   Any requested tax identification documentation;

2.4.2.2   A written acknowledgment that the Company Redeemer has received a copy of the Scheme and the order sanctioning the Scheme and is bound thereby; and

2.4.2.3   Confirmation of wire or other payment instructions.

2.5     **Mechanism for Distributions**

2.5.1   Distributions to Company Redeemers shall be made by cheque or wire at the addresses or pursuant to the instructions set forth on:

2.5.1.1   Proxy Forms or Consents executed and delivered by Company Redeemers;

**HC-300.0042**

CONFIDENTIAL                                                                                    RC00066982

2.5.1.2    any written notices of address changes delivered to the Company after the date of any Proxy Form or Consent; or

2.5.1.3    the address of the Company Redeemer in the Company's books and records or any written notice of address delivered by a Company Redeemer who does not submit a Consent or Proxy Form.

2.5.2    If a Distribution is returned as undeliverable, no further distributions to such Company Redeemer shall be made unless and until the Company is notified of such Company Redeemer's current address, at which time all missed Distributions shall be made without interest. Amounts in respect of undeliverable Distributions shall be returned to the Company until claimed. All claims for undeliverable Distributions must be made on or before 360 days after the relevant Distribution date, after which date, unless otherwise approved by the Company, all unclaimed property shall revert to the Company free of any restrictions thereon, and the claim of any Company Redeemer or successor to such Company Redeemer with respect to an undeliverable Distribution shall be discharged and forever barred, notwithstanding any Bermudian, U.S. federal or state escheat or other laws to the contrary. Nothing in this Scheme shall require the Company to attempt to locate any Company Redeemer.

2.5.3    In connection with this Scheme and all Distributions to be made hereunder, the Company shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any Bermudian, U.S. federal, state or local taxing authority, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Company is hereby

266889

42

**HC-300.0043**

CONFIDENTIAL                                                                                RC00066983

authorized to take any and all actions that may be necessary or appropriate to comply with any such requirements.

2.5.4    Distributions made pursuant to this Scheme shall be in U.S. funds by check or wire transfer, or such other commercially reasonable manner as the Company shall determine.  If the amount of any Distribution payable to a Company Redeemer is less than $1,000, the Company shall withhold such payment until the amount equals or exceeds $1,000, except with respect to final Distributions.

## 2.6    Effect of the Scheme

### 2.6.1    Moratorium

Upon the Effective Date no Scheme Creditor shall be entitled to take or continue any action, step or proceedings against the Company, the Crusader Funds or any HCM-Related Party for any claims (whether by way of demand, legal proceedings, execution of judgment or otherwise howsoever without limitation) in any jurisdiction whatsoever; provided, however, that a Scheme Creditor may bring an action or other proceeding in the Bermuda Court solely for the purpose of enforcing payment of a Distribution which the Company has failed to pay in breach of the Scheme or otherwise as permitted by the Bermuda Court. To the extent that any Scheme Creditor threatens or asserts a Claim in contravention of the Scheme including, without limitation, a Claim released pursuant to clause 6 of the Scheme, the Company shall withhold any Distribution to such Scheme Creditor pending a final determination of such Claim or any claim for or right to indemnification under clause 6.5 of the Scheme.

### 2.6.2    Discharge

**HC-300.0044**

CONFIDENTIAL                                                                                     RC00066984

In addition to and without limiting in any way the releases in clause 6.3 of the Scheme, the entitlement of a Scheme Creditor to a Distribution shall discharge the corresponding Scheme Claim in full and thereupon the Company shall have no further liability in respect thereof.

## 2.7 Conditions to Effective Date for the Scheme

2.7.1   The Scheme shall become effective as soon as:

2.7.1.1   a copy of the Order of the Bermuda Court sanctioning the Scheme shall have been delivered for registration to the Registrar of Companies in Bermuda as required by Section 99(3) of the Companies Act; and

2.7.1.2   the following conditions precedent to the Effective Date have been satisfied:

2.7.1.2.1   the $6,030,000 million in cash referenced in clause 5.1.1 of the Scheme has been deposited in the Redeemer Trust Account; and

2.7.1.2.2   the Plan has been adopted by each other Crusader Fund.

2.7.2   Not more than 5 days after the Effective Date, the Company shall post to the Data Room a notice to Scheme Creditors that the Scheme has become effective.

## 2.8 Modifications to the Scheme

2.8.1   Subject to the provisions of the Plan and the Scheme, the Company acting by the Board may, at any hearing of the Bermuda Court to sanction its Scheme, consent on behalf of all of the Scheme Creditors to any modification of the Scheme or any terms or conditions which

**HC-300.0045**

CONFIDENTIAL                                                                 RC00066985

the Bermuda Court may think fit to approve or impose, in either case which does not materially alter the effect of such Scheme and in the reasonable judgment of the Company is in the best interests of Scheme Creditors.

2.8.2   Subject to the terms of the Plan, if the Company considers it is expedient to do so and it is in the best interests of the Scheme Creditors, the Company may at any time prior to the Effective Date and without reference to the Scheme Creditors, apply to the Bermuda Court for the purpose of modifying the provisions of the Scheme (provided such modifications do not materially alter the effect of such Scheme) or obtaining directions on how to deal with any matters or disputes arising in respect of such Scheme.  If such modifications are approved or such directions are given by the Bermuda Court, they shall be binding on the Scheme Creditors and the Scheme shall be modified accordingly.

266889

45

**HC-300.0046**

CONFIDENTIAL

RC00066986

### 3.    ESTABLISHMENT OF CLAIMS

3.1    **Scheme Claims**

3.1.1    Each Scheme Creditor will be entitled to pro rata Distributions in accordance with clause 2.4.1 in respect of its Scheme Claim, which shall be the Redemption Amount stated by the Company on the Consent and the proxy form issued for the purpose of voting on the Scheme ("Proxy Form"). Scheme Creditors are not required to submit a claim in order to receive their pro rata Distributions.

3.1.2    Any dispute raised by the timely service of a Disputed Scheme Claim Notice (defined below) shall be limited to whether the Redemption Amount is calculated in accordance with the terms of this Scheme.

3.2    **Procedure for Resolving Disputed Claims**

3.2.1    If a Scheme Creditor disputes its Redemption Amount as determined by the Company and stated on its Consent and Proxy Form, it shall give notice to the Company in writing (a "Disputed Scheme Claim Notice") within 14 days of the notice of the Effective Date of the Scheme. A Scheme Creditor that has executed and delivered a Consent or Proxy Form may not dispute its Redemption Amount unless the Scheme Creditor properly amends the amount inserted on the Consent and/or Proxy Form. The Company and the Scheme Creditor shall confer in good faith in an attempt to resolve the dispute within 10 days of the submission of the Disputed Scheme Claim Notice. If they cannot reach a resolution through such good faith effort, either side may engage the Scheme Mediator at the expense of the Company or, if he is unavailable, another mutually agreeable third party to mediate the

**HC-300.0047**

CONFIDENTIAL                                                                                                        RC00066987

dispute. If the dispute cannot be resolved by mediation it will be referred to arbitration in accordance with clause 6.10.

## 4.    MANAGEMENT

**The Board**

4.1    The members of the Board of the Company are James Dondero, Nicholas Hoskins and Roderick Forrest.

4.2    The powers of the Board shall remain, save as provided below, as before the Effective Date of the Scheme and the Board shall exercise all their statutory and managerial powers, rights, duties and functions in relation to the Company, subject to the powers, rights, duties and functions of the Redeemer Committee, as set forth herein.  Subject to the powers, rights, duties and functions of the Redeemer Committee, the Board shall also have the duty and responsibility of carrying out all of the functions of the Company in relation to the Scheme.

4.3    No Scheme Creditor shall be entitled to challenge the validity of any act done or omitted to be done in good faith by any member of the Board in relation to acts done pursuant or in relation to the adoption of the Scheme, and no member of the Board shall be liable for any loss suffered as a result of such action, if he or she acted honestly and in good faith with a view to the best interests of the Company.

**The Investment Manager**

4.4    Subject to clauses 4.6 and 4.7, HCMLP will continue to manage the investments of the Company pursuant to the Third Amended and Restated Investment Management Agreement, which will continue to apply save to the extent that its terms are inconsistent with the Plan and the Scheme, including that HCMLP's services as investment manager may be terminated by the

**HC-300.0048**

CONFIDENTIAL                                                                          RC00066988

Redeemer Committee under clause 4.6.8.  For so long as HCMLP serves as investment manager of the Crusader Funds, HCMLP will receive fees in cash in the amount of (a) 25 basis points (per annum) calculated based on the net distributable assets of the Company at the beginning of each calendar month, to be paid monthly in arrears out of the assets of the Company and (b) provided that assets equal to or in excess of the amount scheduled in the Realisation Schedule have been distributed to Redeemers during such quarter (with amounts distributed to Redeemers in excess of scheduled distributions for prior quarters being carried over), 125 basis points calculated based on all amounts actually Distributed to Redeemers during each quarter following the Effective Date (which shall be paid on a Company Redeemer by Company Redeemer basis by deduction from amounts distributed to such Company Redeemers during the quarter) (the "Distribution Fee").  In the event that HCMLP is removed as investment manager by the Redeemer Committee pursuant to clauses (b) or (c) of the definition of "Cause," HCMLP shall not be entitled to receive any fees described in this clause 4.4 of the Scheme that are accrued as of the termination date, and shall not, be entitled to any such future fees.  For the avoidance of doubt, HCMLP shall not be entitled to any future fees described in this clause 4.4 after it has been removed as investment manager by the Redeemer Committee.  Except as set forth above, the Crusader Funds shall retain liability to pay out-of-pocket costs of the administration of the Crusader Funds, including accounting and audit expenses, legal fees, and costs associated with reporting.  During its service as investment manager, HCMLP (and any successor investment manager) will cause the Crusader Funds to maintain reserves for future liabilities in accordance with GAAP and such other reserves as may be expressly contemplated by the Plan and the Scheme.

**The Redeemer Committee**

**HC-300.0049**

CONFIDENTIAL                                                                                RC00066989

4.5    The Redeemer Committee shall be a ten-member committee, which will be composed of five representatives of Consenting Crusader Fund Prior Redeemers (to be selected in accordance with the voting provisions in clause 4.12) and five representatives of Consenting Crusader Fund Compulsory Redeemers (to be selected in accordance with the voting provisions in clause 4.12), which will represent all Consenting Crusader Fund Redeemers with respect to those matters specified in clauses 4.6 and 4.7 of the Scheme. Redeemer Committee members may be individuals or entities (acting through designated representatives).

4.6    The Redeemer Committee will have, subject to the execution and delivery of customary and reasonable confidentiality agreements:

4.6.1    reasonable access to all books, records and other information related to the current and past performance, management, asset valuation and liquidation (including costs and expenses) of the Crusader Funds including, but not limited to, any such information in the possession, custody or control of the Crusader Funds or HCMLP;

4.6.2    the right to obtain monthly reports from HCMLP on the Crusader Funds' performance and management and Realisation Schedule progress and notification of any action that is proposed to be taken by the Board prior to such action;

4.6.3    the right to approve or disapprove any cost or expense of the Crusader Funds, including any amounts to be paid in settlement of litigation (other than as described in clause 4.6.7 of the Scheme) in excess of $100,000 (other than with respect to for amounts payable in accordance with clauses 1.5.2, 4.4 and 5.2 of the Scheme, Sections 2.01, 2.02, 2.03 and 6.02 of the Plan and, with respect to amounts payable arising prior to the Effective Date, clause 6.3.3 of the Scheme and Section 7.02 of the Plan) in excess of $100,000; provided that any such

**HC-300.0050**

CONFIDENTIAL                                                                          RC00006990

incurrence shall be deemed to be approved if not affirmatively objected to within 30 days of submission to the Redeemer Committee;

4.6.4    the right to engage, at the expense of the Crusader Funds, third party professionals to assist the Redeemer Committee with discharging its oversight responsibilities (each member of the Redeemer Committee may also engage separate third-party professionals to advise them in respect of such member's responsibilities, provided that, absent approval of the Redeemer Committee, such member shall be solely responsible for any fees and expenses of any such third-party professionals such member engages);

4.6.5    the authority to approve or disapprove the engagement of professional advisers to the Crusader Funds as described below; provided that the Crusader Funds shall continue to have administration and auditing services performed by JP Morgan Hedge Fund Services and PricewaterhouseCoopers, respectively, unless any change of such service providers shall be required or approved by the Redeemer Committee; provided, further, that any such engagement shall be deemed to be approved if not affirmatively objected to within 30 days of submission to the Redeemer Committee;

4.6.6    the authority to approve or disapprove the assignment or transfer of interests in the Crusader Funds or Scheme Claims; provided that such proposed assignment or transfer shall be deemed to be rejected if not approved within 30 days of submission to the Redeemer Committee;

4.6.7    the authority to approve or disapprove any settlement by the Crusader Funds with Barclays that would be in excess of what Barclays would receive as a Consenting Crusader Funds Redeemer(provided, however, that with respect to this matter, the approval of a majority of any

266889

50

**HC-300.0051**

CONFIDENTIAL

RC00066991

members of the Redeemer Committee that are Redeemers of the Onshore Fund shall also be required);

4.6.8   the authority to remove HCMLP as investment manager upon 30 days' written notice with or without Cause and upon such removal, to request that HCMLP transfer the Management Shares as directed by the Redeemer Committee; and the authority to remove any member of the Redeemer Committee for any reason with the approval of at least 7 members of the Redeemer Committee and the authority to fill any vacancy on the Redeemer Committee (provided that any vacancy in a position appointed by Consenting Crusader Fund Prior Redeemers will be filled by the remaining appointees of Consenting Crusader Fund Prior Redeemers and any vacancy in a position appointed by Consenting Crusader Fund Compulsory Redeemers will be filled by the remaining appointees of Consenting Crusader Fund Compulsory Redeemers); and

4.6.9   the right to be consulted regarding any proposed sale of Crusader Funds' assets (or transaction involving) (in a single transaction or series of related transactions) in an amount equal to or greater than $10 million reasonably in advance of any such proposed sale.

4.7     Unless otherwise approved in advance by the Redeemer Committee,

4.7.1   all transactions (other than those contemplated by this Scheme and the Plan) between the Crusader Funds and affiliates of HCMLP, while it serves as investment manager of the Crusader Funds, including any "cross trade" between the Crusader Funds and any other account managed or advised by the HCMLP, are prohibited;

4.7.2   all proceeds received in respect of the realization of Crusader Funds' investments (including all interest and dividends related to such

**HC-300.0052**

CONFIDENTIAL                                                         RC00066992

investments prior to their realization) shall be held in cash and short-term instruments pending Distribution and, except for those investments, the Crusader Funds shall not be permitted to make any future investments; and

4.7.3    Distributions (and distributions from the Master Fund) shall only be made in cash.

4.8    The approval of the Redeemer Committee with respect to any matter submitted for approval under clauses 4.6 or 4.7 shall not be unreasonably withheld.

4.9    In the event of a dispute between the Crusader Funds or the Redeemer Committee and HCMLP, any HCM-Related Party, the General Partner or the Board, including relating to the matters in clauses 4.6 or 4.7, the applicable parties' representatives shall confer in good faith in an attempt to resolve the dispute within 48 hours of a request by either side.  If they cannot reach a resolution through such good-faith effort, either side may engage the Scheme Mediator (with the expense to be shared 50% by the Crusader Funds and 50% by HCMLP) or, if he is unavailable, another mutually agreeable third party to mediate the dispute.  If the dispute cannot be resolved by mediation it will be referred to arbitration in accordance with clause 6.10.

4.10    Each member of the Redeemer Committee (and any designated representative thereof) shall be held harmless by the Consenting Crusader Fund Redeemers and the HCM-Related Parties and   indemnified out of the funds of the Crusader Funds against all (a) civil liabilities, loss, damage or expense incurred or suffered by such member or its representative for any acts or omissions in the performance of their duties on the Redeemer Committee if such member acted honestly and in good faith and (b) liabilities incurred by such member or its representative in defending any proceedings, whether civil or criminal, for

**HC-300.0053**

CONFIDENTIAL                                                                                    RC00066993

any acts or omissions in the performance of their duties if they acted honestly and in good faith and, in the case of criminal proceedings, that such member or its representative had no cause to believe that their conduct was criminal.

4.11    Meetings of the Redeemer Committee may be held at such places and times (including by telephone or other electronic media) as a majority of the members shall determine.  Except as otherwise specified in the Scheme, any decisions made or actions taken by a majority of members present at any meeting of the Redeemer Committee shall be deemed to be the decision or action of the Redeemer Committee.  Any action required or permitted to be taken at any meeting of the Redeemer Committee may be taken without a meeting if a majority of the members of the Redeemer Committee entitled to vote on the matter consent to the action in writing.  Such consents shall be treated for all purposes as a vote at a meeting.

4.12    **Voting**

4.12.1  Within 7 days after the Effective Date, the Crusader Funds shall solicit nominations in relation to the election of members of the Redeemer Committee.  In accordance with the Plan, only Consenting Crusader Fund Redeemers are entitled to vote in the elections.  By virtue of the Scheme, all Scheme Creditors are Consenting Crusader Fund Redeemers for purpose of voting.

4.12.2  The Crusader Funds shall solicit nominations from the Consenting Crusader Fund Prior Redeemers and Consenting Crusader Fund Compulsory Redeemers, respectively. Nomination forms and the timetable for the elections will be delivered to Company Redeemers and will be available in the Data Room. A Company Redeemer may self-nominate.  Nominations must be submitted to the Crusader Funds. The list of nominees will be published in the Data Room. No

CONFIDENTIAL                                                                                    RC00066994

more than two candidates per Consenting Crusader Fund Redeemer or group of Consenting Crusader Fund Redeemers, which shall include Consenting Crusader Fund Redeemers that are affiliated or that share a common investment manager, may be nominated, as either Crusader Fund Prior Redeemer representatives on the Redeemer Committee or Crusader Fund Compulsory Redeemer representatives on the Redeemer Committee.

4.12.3  Ballots will be available on the Data Room or by request by email to HighlandCrusaderFunds@hcmlp.com. Each ballot shall list the names of each candidate together with the Redemption Amount associated with such candidate in order from top to bottom (largest to smallest).

4.12.4  The ballot may also be accompanied by an information sheet that presents background information provided by the candidate. Elections to the Redeemer Committee shall be held no later than 30 days after the Effective Date.

4.12.5  Company Redeemers may cast a number of votes equal to the number of committee slots to be filled as follows:

4.12.5.1  Consenting Crusader Fund Prior Redeemers will have five votes in relation to the election of the five Consenting Crusader Fund Prior Redeemer representatives on the Redeemer Committee.

4.12.5.2  Consenting Crusader Fund Compulsory Redeemers will have five votes in relation to the election of the five Consenting Crusader Fund Compulsory Redeemer representatives on the Redeemer Committee.

**HC-300.0055**

CONFIDENTIAL                                                        RC00066995

4.12.6   The value of each vote will be the Company Redeemer's Redemption Amount divided by the number of votes cast by the Company Redeemer. A Company Redeemer may cast all or any number of its votes for up to five candidates. (Casting multiple votes for a candidate increases the aggregate Redemption Amount voting in favour of that candidate.) If more votes are cast than are permitted, the first votes cast from the beginning to end of the ballot list will be counted.

4.12.7   Company Redeemers who have claims as both Consenting Prior Redeemers and Consenting Compulsory Redeemers may vote in the election to the extent of the Redemption Amount in respect of each class, but otherwise Company Redeemers may only vote in elections to select representatives from their class of claims.

4.12.8   Candidates will be appointed to the Redeemer Committee based on total value of votes received. The candidate receiving the highest aggregated Redemption Amounts based on the votes cast will be appointed to the first seat, the candidate receiving the second highest amount will be appointed to the second seat and so on until all of the respective seats are filled.

4.12.9   HCMLP and its affiliates shall not be eligible to participate in the vote for Redeemer Committee members or to serve on the Redeemer Committee.

4.12.10   The result of the voting in respect of the Redeemer Committee will be published in the Data Room.

4.12.11   All disputes related to the nomination or election of candidates to the Redeemer Committee will be finally determined by the Scheme Mediator.

**HC-300.0056**

CONFIDENTIAL                                                                               RC00066996

## 5.    TRUST ACCOUNTS

5.1    **Redeemer Trust Account**

5.1.1    In partial consideration for the releases provided in clause 6 of the Scheme, on the Effective Date HCMLP shall establish, administer and fund in accordance with the Plan the Redeemer Trust Account with $6,030,000 million in cash.   Upon the Effective Date, HCMLP will immediately distribute from the Redeemer Trust Account to (a) each Consenting Crusader Fund Compulsory Redeemer (excluding any HCM-Related Party Consenting Compulsory Redeemer) its pro rata portion of $5 million (which shall be determined based upon each Consenting Crusader Fund Compulsory Redeemer's Redemption Amount as compared to the Redemption Amount of all Crusader Fund Compulsory Redeemers) and (b) each Consenting Crusader Fund Prior Redeemer (excluding any HCM-Related Party Consenting Compulsory Redeemer) its pro rata portion of $1,030,000 (which shall be determined based upon each Consenting Crusader Fund Prior Redeemer's Redemption Amount as compared to the Redemption Amount of all Consenting Crusader Fund Prior Redeemers).   Pursuant to the Plan, the portion of such amounts in excess of the Redemption Amounts otherwise attributable to Non-Consenting Compulsory Redeemers shall be contributed to the Redeemer Trust Account and shall not be distributed to Non-Consenting Compulsory Redeemers. Amounts in the Redeemer Trust Account after the distribution of the amounts referred to above and Section 6.01 of the Plan, will be reserved and used to pay all costs of HCMLP-Related Parties and the Redeemer Committee to defend, respond to, settle and satisfy any Claims by Crusader Fund Redeemers, other than for their Scheme Claim ("Redeemer Claims") and shall be used to defend, respond to,

**HC-300.0057**

CONFIDENTIAL                                                                          RC00066997

settle and satisfy any such Redeemer Claims in advance of any amounts otherwise properly available for such purposes out of the assets of the Crusader Funds; provided, however, that to the extent in respect of the Barclays Claims Barclays (x) enters into a settlement agreement or (y) obtains a final, binding non-appealable judgment against any or all of the Crusader Funds, in either case, in satisfaction of the Barclays Claims and for an amount less than the amount that Barclays would receive as a Consenting Compulsory Redeemer, HCMLP shall be entitled to an amount from the Redeemer Trust Account equal to such difference less amounts that have been paid in defense of such claim, payable from amounts otherwise distributable to Consenting Compulsory Redeemers of the Onshore Fund.

5.1.2   Within 30 days after (i) all Redeemer Claims have been resolved or dismissed with prejudice, or (ii) the sixth anniversary of the Effective Date, provided that no suits asserting Redeemer Claims are then pending, whichever is earlier (the "Final Distribution Date"), HCMLP will cause any amounts remaining in the Redeemer Trust Account to be distributed 100% to Consenting Crusader Fund Compulsory Redeemers (pro rata based on their relative Redemption Amounts).

5.2   **Deferred Fee Account**

5.2.1   In partial consideration for the releases provided in clause 6 of the Scheme, pursuant to the Plan, HCMLP shall establish and administer the "Deferred Fee Account" on the Effective Date by allocating the right to potentially receive Deferred Fees in an amount equal to the Deferred Fee Contribution to such Deferred Fee Account. Amounts payable in respect of the Deferred Fee Account will be distributed as follows:

**HC-300.0058**

CONFIDENTIAL                                                                                    RC00066998

5.2.1.1   In the event that the Crusader Funds make aggregate Distributions of at least $1.7 billion prior to the forty-third (43rd) month following the Effective Date, HCMLP shall be entitled to receive payment in respect of the Deferred Fee Account in accordance with clause 1.5.2 of the Scheme.

5.2.1.2   Subject to clause 5.2.1.3 of the Scheme, if prior to the forty third (43rd) month following the Effective Date, the Crusader Funds have not made aggregate Distributions equal to or in excess of $1.7 billion, then HCMLP will cause the Feeder Funds to distribute the right to receive payment in respect of the assets in the Deferred Fee Account in accordance with clause 1.5.2 of the Scheme (except that with respect to the assets in the Deferred Fee Account, amounts will be payable, rather than reserved, in accordance with clause 1.5.3 of the Scheme), 100% to Consenting Crusader Fund Compulsory Redeemers (pro rata based on their relative Redemption Amounts).

5.2.1.3   Notwithstanding clause 5.2.1.2 of the Scheme, if HCMLP's services as investment manager of the Crusader Funds have been terminated by the Redeemer Committee other than for Cause prior to the third anniversary of the Effective Date, HCMLP shall be entitled to receive payments in respect of the Deferred Fee Account in accordance with clause 1.5.2 of the Scheme.

## 6.    MISCELLANEOUS

6.1       **Assignments**

**HC-300.0059**

CONFIDENTIAL                                                               RC00066999

6.1.1    The rights of the Scheme Creditors under the Scheme shall be assignable, but (i) the assignment shall be subject to any existing rights of set-off, and (ii) the Company shall not be bound by any assignment unless and until notice in writing is given to the Company.

6.1.2    No assignment or transfer of a Scheme Claim after the Effective Date shall be recognised by the Company for the purpose of determining entitlements under the Scheme, provided that the Company may, in its sole discretion and subject to the production of such evidence in relation to such transfer or assignment as the Company may require and to any other terms and conditions which the Company may consider necessary or desirable, agree to recognise such assignment or transfer for the purposes of determining entitlements under the Scheme.

6.1.3    No assignment or transfer of a Scheme Claim after the Effective Date may be purchased by HCMLP or its affiliates without such Scheme Claim first being offered to, and rejected by, the Crusader Funds.

6.2    **Releases**

6.2.1    The Crusader Funds, their successors, predecessors, control persons, members, agents, employees, officers and directors serving as of the date hereof and thereafter, and their attorneys, financial advisors, investment bankers, accountants, and other professionals retained by the Crusader Funds shall neither have nor incur any liability to any person or entity (including any holder of a Claim) for any act taken or omitted to be taken in connection with or related to or in contemplation of:

6.2.1.1    the negotiation, formulation and preparation of the Scheme, or any related agreements, instruments or other documents;

**HC-300.0060**

CONFIDENTIAL                                                                    RC00067000

6.2.1.2    the formulation, negotiation, preparation, dissemination, implementation, administration or sanction of the Scheme by the Bermuda Court or other associated documents or the occurrence of the Effective Date; or

6.2.1.3    any contract, instrument, release or other agreement or document created or entered into in connection with the Scheme;

provided that the foregoing exculpations shall not extend to any damages, losses or claims arising from acts which were not honest and in good faith; and, provided, further, that such release shall not be applicable in determining whether Cause exists.

## 6.3    Mutual Releases

6.3.1    Upon the Effective Date, each of the Company Redeemers, for themselves and on behalf of any of their respective officers, directors, shareholders, partners, members, employees, affiliates, investors, agents and representatives and any other person or entity entitled to assert a Claim (defined below) by, through, under, or on behalf of any Company Redeemer, hereby releases each of the HCM-Related Parties and each of the other Consenting Crusader Fund Redeemers, from any and all accounts, actions, agreements, causes of action, claims, contracts, covenants, controversies, damages, debts, demands, executions, expenses, judgments, liabilities, obligations, omissions, promises, representations, and rights to payment, and all other liabilities of every kind, nature and description whatsoever, liquidated and unliquidated, fixed and contingent, matured and unmatured, disputed and undisputed, legal and equitable, state and federal, secured and unsecured, accrued and unaccrued, known and unknown, choate and inchoate (each, a "Claim"), which each Company Redeemer has,

CONFIDENTIAL                                                                                                RC00067001

may have or ever had against any or all of the HCM-Related Parties and the other Consenting Crusader Fund Redeemers from the beginning of the world to the Effective Date related to the Crusader Funds, including without limitation its administration and wind-down; provided, however, that such release of the HCM-Related Parties shall not operate to release any claims based on larceny within the meaning of Section 155.05 of the New York Penal Code ("Larceny Claims"), provided that such claims are not within the scope of knowledge of the releasing party as of the Effective Date.

6.3.2   The benefit of the release in clause 6.3.1, as it relates to the HCM-Related Parties, is held in trust by the Company for the HCM-Related Parties, and the Company hereby assigns the benefit of the release in clause 6.3.1 in their favour.

6.3.3   Upon the Effective Date, the HCM-Related Parties, for themselves and on behalf of any successors and assigns and any other person or entity entitled to assert a Claim by, through, under, or on behalf of such HCM-Related Party, hereby release <u>each other HCM-Related Party (except for intra HCM-Related Party fees or accounts that are not subject to indemnification by any Crusader Fund), each of</u> the Crusader Funds (except for intra-Crusader Funds Claims) and each of the Company Redeemers from any and all Claims, which each HCM-Related Party has, may have or ever had against any or all of them from the beginning of the world to the Effective Date related to each of the Crusader Funds and its administration and wind-down; provided, however, that nothing in this clause shall operate to release or in any way limit any claims that any HCM-Related Party may have:

**HC-300.0062**

CONFIDENTIAL                                                                                   RC00067002

6.3.3.1    for defence or indemnification arising from claims asserted against any of them pursuant to the Governing Documents or Sections 2.03 and 7.04 of the Plan;

6.3.3.2    for reimbursement of out of pocket expenses actually incurred to third-parties in connection with administration of the Crusader Funds;

6.3.3.3    with respect to NexBank, in its capacity as agent in respect of investments by the Crusader Funds;

6.3.3.4    as a Crusader Fund Redeemer under the Scheme and the Plan; and

6.3.3.5    for fees payable in accordance with clauses 1.5.2, 4.4, and 5.2 of the Scheme and Sections 2.01, 2.02, 2.03 and 6.02 of the Plan.

6.4    Upon the Effective Date, the Company, for itself and on behalf of its respective officers, directors, shareholders, partners, members, employees, affiliates, investors, agents and representatives, hereby releases each of the other HCM-Related Parties and the Company Redeemers from any and all Claims, which each of them has, may have or ever had against any or all of the HCM-Related Parties and the Company Redeemers from the beginning of the world to the Effective Date related to the Crusader Funds and its administration and wind-down; provided, however, that such release shall not be effective as to any such Consenting Crusader Fund Redeemer that takes any action in contravention of the Plan.

6.5    No Company Redeemer or HCM-Related Party providing a release pursuant to this clause 6 shall assert any claim released pursuant to this clause 6 or otherwise in contravention of the Scheme. Each such Company Redeemer or HCM-Related Party providing a release pursuant to this clause 6, shall

**HC-300.0063**

CONFIDENTIAL                                                                                          RC00067003

indemnify and hold harmless each party intended to receive the benefit of such release from and against any liability, expense, including reasonable attorneys' fees and costs, or other damages arising from the assertion by such releasing party, or any assignee or successor of such releasing party, of any claim released by that party pursuant to this clause 6 or otherwise in contravention of the Scheme. Additionally, the Company shall have all Indemnification Obligations as defined and provided for in Section 2.03 of the Plan.

6.6    **Completion of the Scheme**

The Scheme will be completed when the Board and HCMLP (or the Redeemer Committee in the event that HCMLP is no longer the investment manager of the Crusader Funds) resolve that all Scheme Claims have been determined and paid (or deemed to have been satisfied) in accordance with the Scheme.

6.7    **Severability**

If any provision of this Scheme is held to be invalid or unenforceable, then such provision shall (so far as invalid or unenforceable) be given no effect and shall be deemed not to be included in the Scheme but without invalidating any of the remaining provisions of the Scheme; except that if the provision of the Scheme which is found to be invalid or unenforceable is material to the performance of the obligations or the receipt of rights or remedies under the Scheme, then the consent of the Company, the Redeemer Committee, any affected HCM-Related Party and any affected Company Redeemer must be obtained for this clause to have effect.

6.8    **Notices**

**HC-300.0064**

CONFIDENTIAL

RC00067004

All notices and other communications provided for in the Scheme shall be in writing and posted, faxed, emailed or delivered to the applicable party at its address as described herein, or if so directed by the Bermuda Court, by advertisement.

6.9     **Fund Expenses**

Except as set forth above, the Crusader Funds retain all obligations to pay out-of-pocket costs of the administration of the Crusader Funds, including accounting and audit expenses, legal fees, and costs associated with reporting.

6.10    **Arbitration**

Any dispute referred to in clauses 3.2.1, 4.9 or 5.2 above (other than a dispute regarding the existence of "Cause"), which cannot be resolved through mediation referred to in clauses 3.2.1, 4.9 or 5.2 above, respectively, shall be subject to and decided by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof pursuant to applicable law. Arbitration shall be conducted in New York, New York.

6.11    **Governing Law and Jurisdiction**

Except as otherwise provided herein, the Scheme shall be governed by and construed in accordance with the laws of Bermuda and, subject to clauses 3.2.1, 4.9, 5.2 and 6.10, the Bermuda Court shall have exclusive jurisdiction to hear and determine any suit, action, or proceeding and to settle any dispute which may arise out of any provision of any Scheme or any related documents, or out of any action taken or omitted to be taken under the Scheme or in connection with the administration of the Scheme. And for such

**HC-300.0065**

CONFIDENTIAL                                                                         RC00067005

purposes, the Scheme Creditors irrevocably submit to the jurisdiction of the Bermuda Court.


Dated:  10 June 2011

CONFIDENTIAL                                                                          RC00067006

APPENDIX A

## JOINT PLAN OF DISTRIBUTION
## OF THE CRUSADER FUNDS

Upon occurrence of the Effective Date and subject to the terms and conditions herein, with the consent of the Consenting Redeemers (defined below) and the HCM-Related Parties (defined below), Highland Crusader Offshore Partners, L.P. ("Master Fund"), Highland Crusader Fund, L.P. ("Onshore Fund"), Highland Crusader Fund, Ltd. ("Offshore Fund I"), and Highland Crusader Fund II, Ltd. ("Offshore Fund II" and, together with the Master Fund, the Onshore Fund, and Offshore Fund I, the "Crusader Funds") hereby adopt this Joint Plan of Distribution of the Crusader Funds (the "Plan") providing for the settlement and satisfaction of the claims of Consenting Redeemers.

### Recitals

A.    On October 15, 2008, the Onshore Fund, Offshore Fund I and Offshore Fund II gave notice of their intent to liquidate and the compulsory redemption of all limited partnership interests and shares pursuant to the respective Governing Documents (defined below).

B.    Disputes have arisen among Prior Redeemers and Compulsory Redeemers (both, as defined below).

C.    After mediation and negotiation, the Crusader Funds have proposed this Plan as a compromise to maximize the recovery for all Consenting Redeemers and avoid the expense and uncertainty of litigation.

### Article 1:  Defined Terms and Plan Interpretation

**Section 1.01.**  The following expressions shall have the meanings set out below:

| | |
|---|---|
| **Alternative Transaction** | "Alternative Transaction" shall have the meaning given in Section 8.02. |
| **Barclays** | Barclays Bank PLC and its affiliates. |

266889

**HC-300.0067**

CONFIDENTIAL

RC00067007

| | |
|---|---|
| **Barclays Claims** | Any and all amounts claimed by Barclays against any Crusader Fund in respect of its investment in the Crusader Funds, including its Redemption Amount, other compensatory and punitive damages, interest, legal fees, and costs of litigation, and including all claims asserted in the proceeding styled <u>HYMF, Inc., and Barclays Bank PLC, v. Highland Capital Management, L.P., et al.</u>, Index No. 601027/09, pending in the Supreme Court of the State of New York, County of New York – Civil Term – Part 54. |
| **Barclays Excess Payment** | "Barclays Excess Payment" shall have the meaning given in Section 2.02. |
| **Bermuda Court** | The Supreme Court of Bermuda |
| **Boards** | The Boards of Directors of Offshore Fund I and Offshore Fund II. |
| **Cause** | "Cause" shall mean (a) the failure by the Crusader Funds to distribute assets that equal or exceed the amounts stated in the Realisation Schedule for two consecutive quarters without the approval of the Redeemer Committee (provided that amounts in excess of scheduled distributions for prior quarters will be carried over), (b) the engagement by the Crusader Funds in a transaction or other action for which the Redeemer Committee's approval is required and is not obtained or which transaction or other action is not subsequently ratified by the Redeemer Committee or (c) HCMLP is adjudged by a court of competent jurisdiction to have engaged in fraud or wilful misconduct relating to its management of the Crusader Funds. |
| **Claim** | "Claim" shall have the meaning given in Section 7.01. |
| **Compulsory Redeemers** | Investors of the Crusader Funds who did not timely submit redemption/withdrawal requests for redemption/withdrawal dates that fell on or before 30 June 2008. |
| **Compulsory Redeemers' Distribution** | "Compulsory Redeemers' Distribution" shall have the meaning given to such term in Section 4.01(b). |
| **Consent** | The written instruments executed by Consenting Redeemers consenting to the Plan and entitled "Consent to Joint Plan of Distribution of the Crusader Funds." |

266889

**HC-300.0068**

CONFIDENTIAL

RC00067008

| | |
|---|---|
| **Consenting Redeemers** | Redeemers who execute a Consent shall be referred to herein as "Consenting Redeemers" or, as applicable, "Consenting Prior Redeemers" or "Consenting Compulsory Redeemers"; provided that all Offshore Fund II Redeemers are deemed to be Consenting Redeemers for the purposes of the Scheme. |
| **Covered Claims** | "Covered Claims" shall have the meaning given to such term in Section 2.03. |
| **Crusader Funds** | Collectively, the Master Fund, Onshore Fund, Offshore Fund I and Offshore Fund II. |
| **Data Room** | The Crusader Funds' dedicated online Intralinks data room to which all Redeemers have access at https://services.intralinks.com. |
| **Deferred Fee Account** | The account established and funded in accordance with Section 6.02. |
| **Deferred Fee Contribution** | HCMLP's right to receive payment in respect of Deferred Fees equal to $10 million (as of 30 April 2011). |
| **Deferred Fees** | The liability associated with annual performance fees payable by (a) Offshore Fund II to HCMLP, which is recorded as a liability of $42,450,226 on Offshore Fund II's books as of 30 April 2011 (the "Offshore Fund II Deferred Fees"), and (b) Offshore Fund I to HCMLP, which is recorded as a liability of $5,007,818 on Offshore Fund I's books as of 30 April 2011 (the "Offshore Fund I Deferred Fees"). For the avoidance of doubt, Deferred Fees are not, and shall not be deemed to be, shares of Offshore Fund I or Offshore Fund II and HCMLP shall not be deemed to be a Redeemer in respect of such Deferred Fees. |
| **Disputed Plan Claim Notice** | "Disputed Plan Claim Notice" shall have the meaning given to such term in Section 5.03. |
| **Distribution Fee** | "Distribution Fee" shall have the meaning given to such term in Section 2.01. |
| **Distributions** | Amounts to be paid to Redeemers under the Plan, including amounts to be paid to Redeemers under the Scheme (other than out of the Redeemer Trust Account or the Deferred Fee Account). |
| **Effective Date** | The first business day on which all conditions to the effectiveness of the Plan and the Scheme have been satisfied or waived. |

CONFIDENTIAL                                                                RC00067009

| | |
|---|---|
| **Excess Cash** | Cash and cash equivalents minus current liabilities (excluding Plan Claims) and other appropriate accruals or reserves, each as determined in accordance with GAAP, and minus any other liabilities, escrows, or reserves expressly provided for by the Plan or the Scheme; provided, however, that for the purposes of determining "Excess Cash," except with respect to reserves required by Section 2.02, the Crusader Funds shall only retain cash to the extent such liabilities are reasonably anticipated to be due and payable within 180 days and HCMLP (or a replacement investment manager) does not reasonably believe that the Crusader Funds would be able to realize cash proceeds necessary to satisfy such liabilities prior to the date by which such liabilities are due and payable. |
| **Feeder Funds** | The Onshore Fund, Offshore Fund I and Offshore Fund II. |
| **Final Distribution Date** | "Final Distribution Date" shall have the meaning given to such term in Section 6.01. |
| **GAAP** | Generally accepted accounting principles in the United States. |
| **General Partner** | Highland General Partner, L.P., as general partner of the Master Fund and the Onshore Fund. |

266889

**HC-300.0070**

CONFIDENTIAL                                                                                            RC00067010

| | |
|---|---|
| Governing Documents | With respect to the Master Fund, this term refers to one or more of the following: (i) the Amended and Restated Limited Partnership Agreement of the Master Fund dated as of 10 July 2000, as amended by Amendment No. 1 dated as of 31 December 2007 (collectively, the "Master Fund Partnership Agreement") and (ii) the Amended and Restated Investment Management Agreement between the Master Fund and HCMLP dated as of 1 June 2006. With respect to the Offshore Fund I, this term refers to one or more of the following: (i) the Bye-Laws of Offshore Fund I adopted effective as of 1 May 2005 and (ii) the Amended and Restated Investment Management Agreement between Offshore Fund I and HCMLP dated as of 1 September 2006. With respect to the Offshore Fund II, this term refers to one or more of the following: (i) the Amended and Restated Bye-Laws of Offshore Fund II and (ii) the Third Amended and Restated Investment Management Agreement between Offshore Fund II and HCMLP dated as of 1 September 2006, as amended. With respect to the Onshore Fund, this term refers to one or more of the following: (i) the Fifth Amended and Restated Limited Partnership Agreement of the Onshore Fund dated as of 1 September 2006, as amended by Amendment No. 1 dated as of 31 December 2007 (collectively, the "Onshore Partnership Agreement") and (ii) the Amended and Restated Investment Management Agreement between Onshore Fund and HCMLP dated as of 1 June 2006. |
| HCMLP | Highland Capital Management, L.P., a Delaware limited partnership. |
| HCM-Related Parties | The Crusader Funds, the General Partner, and HCMLP, as well as each of their present, future, and former respective officers, directors, employees, affiliates, agents and representatives. |
| Indemnification Obligations | "Indemnification Obligations" shall have the meaning given to such term in Section 2.03 |
| Larceny Claims | "Larceny Claims" shall have the meaning given to such term in Section 7.01. |
| Master Fund | Highland Crusader Offshore Partners, L.P. |
| Mediator | Layn Philips |
| NexBank | NexBank, SSB |

**HC-300.0071**

CONFIDENTIAL

| | |
|---|---|
| **Non-Consenting Redeemers** | Redeemers of Offshore Fund I and the Onshore Fund who did not execute a Consent are referred to collectively as "Non-Consenting Redeemers" or, where applicable, "Non-Consenting Prior Redeemers" or "Non-Consenting Compulsory Redeemers." |
| **Offshore Fund I** | Highland Crusader Fund, Ltd. |
| **Offshore Fund II** | Highland Crusader Fund II, Ltd. |
| **Onshore Fund** | Highland Crusader Fund, L.P. |
| **Plan Claim** | The claim of a Redeemer to payment of, or based upon, the Redemption Amount relating to the redemption of its shares or withdrawal of its capital account balance, as the case may be, in the Crusader Funds as detailed in Section 4.01. |
| **Prior Redeemers** | Investors of the Crusader Funds who timely submitted withdrawal/redemption requests for withdrawal/redemption dates that fell on or before 30 June 2008, and who have not received full payment of their Redemption Amount. |
| **Prior Redeemers' Distribution** | "Prior Redeemers' Distribution" shall have the meaning given to such term in Section 4.01(a). |
| **Proxy Form** | "Proxy Form" shall have the meaning given to such term in the Scheme. |
| **Realisation Schedule** | The schedule attached as Appendix A hereto, as it may be amended with the consent of HCMLP and the Redeemer Committee. |
| **Redeemer Claims** | "Redeemer Claims" shall have the meaning given in Section 6.01. |
| **Redeemer Committee** | The committee constituted in accordance with Section 2.04, which will represent all Consenting Redeemers with respect to those matters specified in Sections 2.05 and 2.06. |
| **Redeemer Trust Account** | The account established and funded in accordance with Section 6.01. |

266889    **HC-300.0072**

CONFIDENTIAL                                                              RC00067012

| | |
|---|---|
| **Redeemers** | Compulsory Redeemers and Prior Redeemers. Any Redeemer who is both a Prior Redeemer and a Compulsory Redeemer shall be referred to as a Prior Redeemer with respect to its investment that was included in its timely submitted withdrawal/redemption request(s) for withdrawal/redemption date(s) on or before 30 June 2008, and a Compulsory Redeemer with respect to the remainder of its investment. |
| **Redemption Amount** | With respect to each Redeemer, the amount set forth on the Consent and/or Proxy Form (for Offshore Fund II Redeemers), which is calculated as the net asset value or capital account balance (as applicable) of a Redeemer's investment as of the date on which the withdrawal/redemption related to such investment became effective (which, for the sake of clarity, for Compulsory Redeemers shall be 15 November 2008), calculated in accordance with the Governing Documents, adjusted by deducting the payment(s), if any, made to such Redeemer through 15 November 2008. For Redeemers that may be subject to redemption/withdrawal fees, the Crusader Funds shall waive any such redemption/withdrawal fees and the Redemption Amount for such Redeemers shall not be reduced by any such redemption/withdrawal fees. |
| **Scheme** | The Scheme of Arrangement between Offshore Fund II and its Scheme Creditors filed with the Bermuda Court. |
| **U.S. or United States** | United States of America |

**Section 1.02.** Clause headings are inserted for convenience of reference only and shall be ignored in the interpretation of the Plan.

**Section 1.03.** In the Plan, unless the context otherwise requires,

(a) references to parts and clauses are to be construed as references to the parts and clauses of the Plan and references to Appendices are to be construed as references to the Appendices to the Plan unless otherwise stated;

(b) references to (and to any provision of) the Plan shall be construed as references to the Plan or that provision as in force for the time being and as amended in accordance with its terms;

266889

**HC-300.0073**

CONFIDENTIAL

RC00067013

(c) words importing the plural shall include the singular and vice versa and the masculine, feminine or neuter gender shall each include the other genders;

(d) references to a person shall be construed as including references to an individual, firm, company, corporation, unincorporated body of persons or any State or any agency thereof;

(e) references to any enactment or statutory instrument shall be to such enactment or statutory instrument as amended and in force on the date of this document; and

(f) references to monetary units, such as "dollars" or "$," are to U.S. currency, unless otherwise expressed herein.

## Article 2:  Management of Crusader Funds

**Section 2.01.**  Subject to Sections 2.05 and 2.06, HCMLP will continue to manage the investments of the Crusader Funds pursuant to the existing investment management agreements with the Crusader Funds, which will continue to apply except to the extent that their terms are inconsistent with the Plan or the Scheme, including that HCMLP's services as investment manager may be terminated by the Redeemer Committee under Section 2.05(h). For so long as HCMLP serves as investment manager of the Crusader Funds, HCMLP will receive fees in cash in the amount of (a) 25 basis points (per annum) calculated based on the net distributable assets of each of the Onshore Fund, Offshore Fund I and Offshore Fund II (in accordance with the Scheme) at the beginning of each calendar month, to be paid monthly in arrears out of the assets, respectively, of the Onshore Fund, Offshore Fund I and Offshore Fund II and (b) provided that assets equal to or in excess of the amount scheduled in the Realisation Schedule have been distributed to Redeemers during such quarter (with amounts distributed to Redeemers in excess of scheduled distributions for prior quarters being carried over), 125 basis points calculated based on all amounts actually Distributed to Redeemers during each quarter following the Effective Date (which shall be paid on a Redeemer by Redeemer basis by deduction from amounts distributed to such Redeemers during the quarter (the "Distribution Fee"). In the event that HCMLP is removed as investment manager by the Redeemer Committee pursuant to clauses (b) or (c) of the definition of "Cause," HCMLP shall not be entitled to receive any fees described in this Section 2.01 that are accrued as of the termination date, and shall not be entitled to any such future fees. For the avoidance of doubt, HCMLP shall not be entitled to any future fees described in Section 2.01 after it has been removed as investment manager by the Redeemer Committee.

**Section 2.02.**  HCMLP shall continue to be entitled to receive payment in respect of the

266889

**HC-300.0074**

CONFIDENTIAL                                                                                      RC00067014

Deferred Fees from the applicable Feeder Fund; provided, however, that (a) with respect to the Offshore Fund I Deferred Fees, (i) HCMLP shall not be entitled to receive payment for such fees until the complete liquidation of the Crusader Funds' assets (except for that portion of the Crusader Funds' assets equal to the amount payable immediately prior to complete liquidation with respect to the Deferred Fees) and (ii) the amount payable with respect to such fees will be equal to (A) $5,007,818 multiplied by (B) a fraction (the "Distribution Percentage") equal to (I) the amount of assets (in U.S. dollars) that are Distributed to Redeemers prior to the dissolution of the Crusader Funds divided by (II) $1,634,991,092, (b) with respect to the Offshore Fund II Deferred Fees, HCMLP's entitlement to such Deferred Fees shall be governed by the Scheme and (c) to the extent Barclays does not execute a Consent to the Plan and in respect of the Barclays Claims either (x) enters into a settlement agreement or (y) obtains a final, binding non-appealable judgment against any or all of the Crusader Funds, in either case for an amount that is in excess of the amount that Barclays would receive as a Consenting Compulsory Redeemer (the "Barclays Excess Payment"), HCMLP shall assign to the Onshore Fund the right to receive an amount of Deferred Fees that are then equal to the amount of the Barclays Excess Payment (provided that HCM-Related Parties shall not be entitled to receive any such amounts). If the amount of the Barclays Excess Payment exceeds the amount of the Deferred Fees held by HCMLP, HCMLP shall indemnify and hold harmless the Crusader Funds with respect to such excess amount~~have no further liability or obligations with respect to the Barclays Excess Payment~~. Until the Deferred Fees have been forfeited or paid, the Master Fund shall distribute to each applicable Feeder Fund amounts, and such Feeder Fund shall fully reserve for such fees in cash in an amount, equal to the Distribution Percentage calculated as of the date of each Distribution multiplied by the aggregate amount of its applicable portion of such fees. Cash held in reserve for such Deferred Fees shall be maintained in an interest bearing account, with all interest accruing thereon being retained by the applicable Feeder Fund for the benefit of its Redeemers.

**Section 2.03.** Except as set forth above in Section 2.01, the Crusader Funds shall retain liability to pay out-of-pocket costs of the administration of the Crusader Funds, including accounting and audit expenses, legal fees, and costs associated with reporting. Notwithstanding the foregoing, the costs of responding to, defending, settling or satisfying any claims asserted by Non-Consenting Redeemers of a Crusader Fund or an HCM-Related Party shall be paid exclusively by the Crusader Fund of which the claimant is a Redeemer or, in respect of a claim asserted by an HCM-Related Party, the Crusader Fund to which the claim relates and, for the avoidance of doubt, to the extent that one Feeder Fund is adjudged to be liable for a claim asserted by a Non-Consenting Redeemer of another Feeder Fund, such second Feeder Fund shall indemnify and hold harmless the first Feeder Fund for such liability. During its service as investment manager, HCMLP (and any successor investment manager) will cause the Crusader Funds to maintain reserves for future liabilities in accordance with GAAP and such other reserves as may be expressly contemplated by the Plan and the Scheme. Each Crusader Fund shall, to the fullest extent permitted by applicable law, indemnify and hold harmless ("Indemnification Obligations") each other HCM-Related Party against any losses, claims, damages, liabilities, costs or expenses to which such HCM-Related Party may become subject in connection with any claim, investigation or suit threatened or asserted

266889

**HC-300.0075**

CONFIDENTIAL

RC00067015

based on such HCM-Related Party's position with respect to or role in connection with the Crusader Funds or HCMLP in respect to its role in connection with the Crusader Funds ("Covered Claims"), unless a court of competent jurisdiction, in a judgment that has become final and that is no longer subject to appeal or review, determines that any such loss, claim, damage, liability, cost or expense is primarily attributable to such HCM-Related Party's willful misconduct or gross negligence. The Indemnification Obligations shall inure to the benefit of the heirs, executors, successors and assigns of each HCM-Related Party. If any HCM-Related Party becomes involved in any capacity in any Covered Claim, the responsible Crusader Fund(s) shall pay (as they are incurred) the HCM-Related Party's legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith; provided that such HCM-Related Party must promptly repay to the applicable Crusader Fund the amount of any such expenses paid if it is ultimately determined by a court of competent jurisdiction, in a judgment that has become final and that is no longer subject to appeal or review, that any loss, claim, damage, liability, cost or expense with respect to the underlying claims was primarily attributable to such HCM-Related Party's willful misconduct or gross negligence. In any suit brought to enforce an Indemnification Obligation or to recover an advancement of expenses, the burden of proving that the HCM-Related Party or other person claiming a right to indemnification is not entitled to be indemnified, or to an advancement of expenses, hereunder shall be on the Crusader Fund (or any person or entity acting derivatively or otherwise on behalf of the Crusader Fund) from which indemnification is sought. Each HCM-Related Party is the intended third party beneficiary of this Section 2.03 with standing to enforce such provision.

**Section 2.04.** The Redeemer Committee shall be a ten-member committee which will be composed of five representatives of the Consenting Prior Redeemers (to be selected in accordance with the voting provisions of Section 2.11) and five representatives of the Consenting Compulsory Redeemers (to be selected in accordance with the voting provisions of Section 2.11), which will represent all Consenting Redeemers with respect to those matters specified in Sections 2.05 and 2.06. Redeemer Committee members may be individuals or entities (acting through designated representatives).

**Section 2.05.** The Redeemer Committee will have, subject to the execution and delivery of customary and reasonable confidentiality agreements:

a) reasonable access to all books, records and other information related to the current and past performance, management, asset valuation and liquidation (including costs and expenses) of the Crusader Funds including, but not limited to, any such information in the possession, custody or control of the Crusader Funds or HCMLP;

b) the right to obtain monthly reports from HCMLP on the Crusader Funds' performance and management and Realisation Schedule progress and notification of any action that is proposed to be taken by either of the Boards or the general partner of the Onshore Fund prior to such action;

c) the right to approve or disapprove any cost or expense of the Crusader Funds, including any amounts to be paid in settlement of litigation (other than as

266889
CONFIDENTIAL

**HC-300.0076**

RC00067016

described in clause (g) below), in excess of $100,000 (other than with respect to or for amounts payable in accordance with clauses 1.5.2, 4.4 and 5.2 of the Scheme, Sections 2.01, 2.02, 2.03 and 6.02 of the Plan and, with respect to amounts payable arising prior to the Effective Date, clause 6.3.3 of the Scheme and Section 7.02 of the Plan);

d)  the right to engage, at the expense of the Crusader Funds, third party professionals to assist the Redeemer Committee with discharging its oversight responsibilities (each member of the Redeemer Committee may also engage separate third-party professionals to advise them in respect of such member's responsibilities, provided that, absent approval of the Redeemer Committee, such member shall be solely responsible for any fees and expenses of any such third-party professionals such member engages);

e)  the authority to approve or disapprove the engagement of professional advisers to the Crusader Funds as described below; provided that the Crusader Funds shall continue to have administration and auditing services performed by JP Morgan Hedge Fund Services and PricewaterhouseCoopers, respectively, unless any change in such service providers shall be required or approved by the Redeemer Committee; provided, further, that any such engagement shall be deemed to be approved if not objected to in writing within 30 days of submission to the Redeemer Committee;

f)  the authority to approve or disapprove the assignment or transfer of interests in the Feeder Funds or Plan Claims; provided that such proposed assignment or transfer shall be deemed to be rejected if not affirmatively approved in writing within 30 days of submission to the Redeemer Committee;

g)  the authority to approve or disapprove any settlement by the Crusader Funds with Barclays that would be in excess of what Barclays would receive as a Consenting Compulsory Redeemer (provided, however, that with respect to this matter, the approval of a majority of the members of the Redeemer Committee that are Redeemers of the Onshore Fund shall be required);

h)  the authority to remove HCMLP as investment manager upon 30 days' written notice with or without Cause and upon such removal, to require that HCMLP transfer any general partnership interest or any other voting control or delegate its general partnership responsibilities, or take such other actions as are necessary to transfer control, in each case as directed by the Redeemer Committee;

i)  the authority to remove any member of the Redeemer Committee for any reason with the approval of at least 7 members of the Redeemer Committee and the authority to fill any vacancy on the Redeemer Committee (provided that any vacancy in a position appointed by Consenting Prior Redeemers will be filled by the remaining appointees of Consenting Prior Redeemers and any vacancy in a position appointed by Consenting Compulsory Redeemers will be filled by the remaining appointees of Consenting Compulsory Redeemers); and

CONFIDENTIAL                                                                    RC00067017

j) the right to be consulted regarding any proposed sale of Crusader Funds' assets (or transaction involving) (in a single transaction or series of related transactions) in an amount equal to or greater than $10 million reasonably in advance of any such proposed sale.

**Section 2.06.** Unless otherwise approved in advance by the Redeemer Committee, (a) all transactions between the Crusader Funds and any other HCM-Related Party, while it serves as investment manager of the Crusader Funds, including any "cross trade" between the Crusader Funds and any other account managed or advised by HCMLP, are prohibited, (b) all proceeds received in respect of the realization of the Crusader Funds' investments (including all interest and dividends related to such investments prior to their realization) shall be held in cash and short-term instruments pending Distribution and, except for those investments, the Crusader Funds shall not be permitted to make any future investments and (c) Distributions (and distributions from the Master Fund) shall only be made in cash.

**Section 2.07.** The approval of the Redeemer Committee with respect to any matter submitted for approval under Sections 2.05 or 2.06 shall not be unreasonably withheld.

**Section 2.08.** Meetings of the Redeemer Committee may be held at such places and times (including by telephone or other electronic media) as a majority of the members shall determine. Except as otherwise specified herein, any decisions made or actions taken by a majority of members present at any meeting of the Redeemer Committee shall be deemed to be the decision or action of the Redeemer Committee. Any action required or permitted to be taken at any meeting of the Redeemer Committee may be taken without a meeting if a majority of the members of the Redeemer Committee entitled to vote on the matter consent to the action in writing. Such consents shall be treated for all purposes as a vote at a meeting.

**Section 2.09.** In the event of a dispute between the Crusader Funds or the Redeemer Committee and HCMLP, any HCM-Related Party, the General Partner or the Boards, including relating to the matters in Sections 2.05 or 2.06, the applicable parties' representatives shall confer in good faith in an attempt to resolve the dispute within 48 hours of a request by either side. If they cannot reach a resolution through such good-faith effort, either side may engage the Mediator (with the expense to be shared 50% by the Crusader Funds and 50% by HCMLP) or, if he is unavailable, another mutually agreeable third party to mediate the dispute. If the dispute cannot be resolved by mediation it will be referred to arbitration in accordance with Section 9.03.

**Section 2.10.** Each member of the Redeemer Committee (and any designated representative thereof) shall be held harmless by the Consenting Redeemers and the HCM-Related Parties and indemnified out of the funds of the Crusader Funds against all (a) civil liabilities, loss, damage or expense incurred or suffered by such member or its representative for any acts or omissions in the performance of their duties on the Redeemer Committee if such member acted honestly and in good faith and (b) liabilities incurred by such member or its representative in defending any proceedings, whether

266889    **HC-300.0078**

CONFIDENTIAL    RC00067018

civil or criminal, for any acts or omissions in the performance of their duties if they acted honestly and in good faith and, in the case of criminal proceedings, that such member or its representative had no cause to believe that their conduct was criminal.

**Section 2.11.** Within 7 days after the Effective Date, the Crusader Funds shall solicit nominations in relation to the election of members of the Redeemer Committee. Only Consenting Redeemers are entitled to vote in the elections. The Crusader Funds shall solicit nominations from the Consenting Prior Redeemers and Consenting Compulsory Redeemers, respectively. Nomination forms and the timetable for the elections will be delivered to Redeemers and will be available in the Data Room. Elections to the Redeemer Committee shall be held no later than 30 days after the Effective Date. A Redeemer may self-nominate. Nominations must be submitted to the Crusader Funds. The list of nominees will be published in the Data Room. No more than two candidates per Consenting Redeemer or group of Consenting Redeemers, which shall include Consenting Redeemers that are affiliated or that share a common investment manager, may be nominated as either Consenting Prior Redeemer representatives on the Redeemer Committee or Consenting Compulsory Redeemer representatives on the Redeemer Committee. Ballots will be available on the Data Room or by request by email to HighlandCrusaderFund@hcmlp.com. Each ballot shall list the names of each candidate together with the Redemption Amount associated with such candidate in order from top to bottom (largest to smallest). The ballot may also be accompanied by an information sheet that presents background information provided by the candidate. Redeemers may cast a number of votes equal to the number of committee slots to be filled as follows:

a) Consenting Prior Redeemers will have five votes in relation to the election of the five Consenting Prior Redeemer representatives on the Redeemer Committee; and

b) Consenting Compulsory Redeemers will have five votes in relation to the election of the five Consenting Compulsory Redeemer representatives on the Redeemer Committee.

The value of each vote will be the Redeemer's Redemption Amount divided by the number of votes cast by the Redeemer. A Redeemer may cast all or any number of its votes for up to five candidates. (Casting multiple votes for a candidate increases the aggregate Redemption Amount voting in favor of that candidate.) If more votes are cast than are permitted, the first votes cast from the beginning to end of the ballot list will be counted. Redeemers who have claims as both Consenting Prior Redeemers and Consenting Compulsory Redeemers may vote in the election to the extent of the Redemption Amount in respect of each class, but otherwise Redeemers may only vote in elections to select representatives from their class of claims. Candidates will be appointed to the Redeemer Committee based on total value of votes received. The candidate receiving the highest aggregated Redemption Amounts based on the votes cast will be appointed to the first seat, the candidate receiving the second highest amount will be appointed to the second seat and so on until all of the respective seats are filled. HCMLP and its affiliates shall not be eligible to participate in the vote for Redeemer Committee members or to serve on the Redeemer Committee. The result of the voting in respect of the Redeemer Committee will be published in the Data Room. All disputes

CONFIDENTIAL    RC00067019

related to the nomination or election of candidates to the Redeemer Committee will be finally determined by the Mediator.

### Article 3:  Distribution to Feeder Funds

**Section 3.01.** As investments in the Crusader Funds are realized (including all interest and dividends related to such investments prior to their realization) and money is available for Distribution or if any other asset of the Crusader Funds is distributed "in kind" from the Master Fund to the Feeder Funds, subject to Section 2.06, 100% of the Excess Cash and any such assets shall be distributed by the Master Fund to the Feeder Funds in accordance with Section 4.01 (provided, however, that amounts in, and rights to, the Redeemer Trust Account and the Deferred Fee Account shall not be considered assets of the Crusader Funds for this purpose).

### Article 4:  Distribution by Feeder Funds

**Section 4.01.** Following distributions by the Master Fund, 100% of Excess Cash will be Distributed by each Feeder Fund as follows:

a) Prior Redeemers shall be entitled to 60% in aggregate of the total distributions to be made by the Master Fund (the "Prior Redeemers' Distribution"). Each such Prior Redeemer shall be entitled to a Plan Claim equivalent to that Prior Redeemer's pro rata share of the Prior Redeemers' Distribution, based on that Prior Redeemer's Redemption Amount relative to the total of the Redemption Amounts of all Prior Redeemers.

b) The Compulsory Redeemers shall be entitled to 40% in aggregate of the total distributions to be made by the Master Fund (the "Compulsory Redeemers' Distribution"). Each such Compulsory Redeemer shall be entitled to a Plan Claim equivalent to that Compulsory Redeemer's pro rata share of the Compulsory Redeemers' Distribution, based on that Compulsory Redeemer's Redemption Amount relative to the total of the Redemption Amounts of all Compulsory Redeemers; provided, however, that the portion of such amounts in excess of the Redemption Amounts otherwise attributable to Non-Consenting Compulsory Redeemers shall be contributed to the Redeemer Trust Account and shall not be distributed to Non-Consenting Compulsory Redeemers.

**Section 4.02.** There shall be no accrual of interest on Redemption Amounts. Distributions of Excess Cash will be made monthly. The Crusader Funds may withhold any Distribution if a Redeemer has failed to provide (a) any requested tax identification documentation or (b) confirmation of wire or other payment instructions.

**Section 4.03.** Distributions to Consenting Redeemers shall be made by check or wire at the addresses or pursuant to the instructions set forth on (a) the Consents/Proxies executed and delivered by Consenting Redeemers, (b) any written notices of address changes delivered to the Crusader Funds after the date of any Consent/Proxy Form or (c) the address of the Redeemer in the Crusader Funds' books and records or any written notice of address delivered by a Redeemer who does not submit a Consent or Proxy

266889
**HC-300.0080**

CONFIDENTIAL                                                                                    RC00067020

Form. If a Distribution is returned as undeliverable, no further Distributions to such Consenting Redeemer shall be made unless and until the Crusader Funds are notified of such Redeemer's current address, at which time all missed Distributions shall be made without interest. Amounts in respect of undeliverable Distributions shall be returned to the applicable Feeder Fund until claimed. All claims for undeliverable distributions must be made on or before 360 days after the relevant Distribution date, after which date, unless otherwise approved by the applicable Feeder Fund, all unclaimed property shall revert to the applicable Feeder Fund, free of any restrictions thereon, and the claim of any Consenting Redeemer or successor to such Consenting Redeemer with respect to an undeliverable Distribution shall be discharged and forever barred, notwithstanding any Bermudian, U.S. federal, state escheat or other laws to the contrary. Nothing in this Plan shall require the Crusader Funds to attempt to locate any Consenting Redeemer. In connection with this Plan and all Distributions to be made hereunder, the Crusader Funds shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any Bermudian, U.S. federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Crusader Funds are hereby authorized to take any and all actions that may be necessary or appropriate to comply with any such requirements. Distributions made pursuant to this Plan shall be in U.S. funds by check or wire transfer, or such other commercially reasonable manner as the applicable Feeder Fund shall determine. If the amount of any Distribution to a Redeemer is less than $1,000, the applicable Feeder Fund shall withhold such payment until the amount equals or exceeds $1,000, except with respect to final Distributions.

**Section 4.04.** To the extent that any Redeemer threatens or asserts a Claim in contravention of the Plan including, without limitation, a Claim released pursuant to Article 7 of the Plan, the Crusader Funds shall withhold any Distribution to such Redeemer pending a final determination of such Claim or any claim for or right to indemnification under Article 7 of the Plan. In addition to and without limiting in any way the releases in Article 7 of the Plan, the entitlement of a Redeemer to a Distribution shall discharge the corresponding Claim in full and thereupon the Crusader Funds shall have no further liability in respect thereof.

**Section 4.05.** The Plan shall become effective as soon as:

a)  the conditions for effectiveness of the Scheme have been met; and

b)  the Plan has been adopted by each of the Master Fund, Offshore Fund I and Onshore Fund pursuant to receipt of Consents deemed sufficient by each such fund to constitute adoption of the Plan.

266889

**HC-300.0081**

CONFIDENTIAL

RC00067021

Not more than 5 days after the Effective Date, the Crusader Funds shall post to the Data Room a notice that the Plan has become effective.

## Article 5: Plan Claims

**Section 5.01.** Each Consenting Redeemer will be entitled to pro rata Distributions in accordance with Section 4.01 in respect of its Plan Claim, which shall be the Redemption Amount stated by the Crusader Funds on its Consent. Consenting Redeemers are not required to submit a claim in order to receive their pro rata Distribution.

**Section 5.02.** Any dispute raised by the timely service of a Disputed Plan Claim Notice (defined below) shall be limited to whether the Redemption Amount is calculated in accordance with the terms of this Plan.

**Section 5.03.** If a Redeemer disputes the calculation of its Redemption Amount made in accordance with the terms of this Plan as determined by the Crusader Funds and stated on its Consent, it shall give notice to the Crusader Funds in writing (a "Disputed Plan Claim Notice") within 14 days of the notice of the Effective Date of the Plan. A Redeemer that has executed and delivered a Consent may not dispute its Redemption Amount. The Crusader Funds may agree to amend amounts stated on Consent Form if such forms were incorrect when issued. The Crusader Funds and the Redeemer shall confer in good faith in an attempt to resolve the dispute within 10 days of the submission of the Disputed Plan Claim Notice. If they cannot reach a resolution through such good faith effort, either side may engage the Mediator at the expense of the Crusader Funds or, if he is unavailable, another mutually agreeable third party to mediate the dispute. If the dispute cannot be resolved by mediation it will be referred to arbitration in accordance with Section 9.03.

**Section 5.04.** The rights of Redeemers under the Plan shall be assignable, but (i) the assignment shall be subject to any existing rights of set-off, and (ii) the Crusader Funds shall not be bound by any assignment unless and until notice in writing of the assignment is given to the Crusader Funds. No assignment or transfer of a Plan Claim after the Effective Date shall be recognized by the Crusader Funds for the purpose of determining entitlements under the Plan, provided that the Crusader Funds may, in their sole discretion and subject to the production of such evidence in relation to such transfer or assignment as the Crusader Funds may require and to any other terms and conditions which the Crusader Funds may consider necessary or desirable, agree to recognise such assignment or transfer for the purposes of determining entitlements under the Plan. No assignment or transfer of a Plan Claim after the Effective Date may be purchased by HCMLP or its affiliates without such Plan Claim first being offered to, and rejected by, the Crusader Funds.

## Article 6:  Trust Accounts

**HC-300.0082**

CONFIDENTIAL
RC00067022

**Section 6.01.**  In partial consideration for the releases described in Article 7, on the Effective Date HCMLP shall contribute $6,030,000 in cash to the Master Fund, which in turn will contribute such amount (collectively) to the Feeder Funds to establish and fund the Redeemer Trust Account, which will be administered by HCMLP.  Upon the Effective Date, HCMLP will immediately distribute from the Redeemer Trust Account to (a) each Consenting Compulsory Redeemer (excluding any HCM-Related Party Consenting Compulsory Redeemer) its pro rata portion of $5 million (which shall be determined based upon each Consenting Compulsory Redeemer's Redemption Amount as compared to the Redemption Amount of all Compulsory Redeemers) and (b) each Consenting Prior Redeemer (excluding any HCM-Related Party Consenting Compulsory Redeemer) its pro rata portion of $1,030,000 (which shall be determined based upon each Consenting Prior Redeemer's Redemption Amount as compared to the Redemption Amount of all Consenting Prior Redeemers).  Amounts (x) contributed to the Redeemer Trust Account as provided in Section 4.02 and (y) in the Redeemer Trust Account after the distribution of the amounts referred to in (a) and (b) above, shall be reserved and used to pay all costs of HCM-Related Parties and the Redeemer Committee to defend, respond to, settle and satisfy any Claims by Crusader Fund Redeemers excluding Plan Claims ("Redeemer Claims") and shall be used to defend, respond to, settle and satisfy any such Redeemer Claims in advance of any amounts otherwise properly available for such purposes out of the assets of the Crusader Funds; provided, however, that to the extent in respect of the Barclays Claims Barclays (x) enters into a settlement agreement or (y) obtains a final, binding non-appealable judgment against any or all of the Crusader Funds, in either case, in satisfaction of the Barclays Claims and for an amount less than the amount that Barclays would receive as a Consenting Compulsory Redeemer, HCMLP shall be entitled to an amount from the Redeemer Trust Account equal to such difference less amounts that have been paid in defense of such claim, payable from amounts otherwise distributable to Consenting Compulsory Redeemers of the Onshore Fund.  Within 30 days after (i) all Redeemer Claims have been resolved or dismissed with prejudice, or (ii) the sixth anniversary of the Effective Date, provided that no suits asserting Redeemer Claims are then pending, whichever is earlier (the "Final Distribution Date"), any amounts remaining in the Redeemer Trust Account from amounts funded pursuant to this Section 6.01 and Section 4.01(b)(1) shall be distributed 100% to Consenting Compulsory Redeemers (pro rata based on their relative Redemption Amounts).

**Section 6.02.**  In partial consideration for the releases described in Article 7, HCMLP shall establish and administer the "Deferred Fee Account" on the Effective Date by allocating the right to potentially receive Deferred Fees in an amount equal to the Deferred Fee Contribution to such Deferred Fee Account.  Amounts payable in respect of the Deferred Fee Trust Account will be distributed as follows:

a)  In the event that the Feeder Funds make aggregate Distributions of at least $1.7 billion prior to the forty-third (43rd) month following the Effective Date, HCMLP shall receive payment in respect of the Deferred Fee Account in accordance with Section 2.02.

**HC-300.0083**

82

CONFIDENTIAL

RC00067023

b) Subject to Section 6.02(c), if prior to the forty-third (43rd) month following the Effective Date, the Feeder Funds have not made aggregate Distributions equal to or in excess of $1.7 billion, then HCMLP will cause the Feeder Funds to distribute the right to receive payment in respect of the assets in the Deferred Fee Account in accordance with Section 2.02 of the Plan (except that with respect to the assets in the Deferred Fee Account, amounts will be payable, rather than reserved, in accordance with Section 2.02 of the Plan), 100% to Consenting Compulsory Redeemers (pro rata based on their relative Redemption Amounts).

c) Notwithstanding Section 6.02(b), if HCMLP's services as investment manager of the Crusader Funds have been terminated by the Redeemer Committee other than for Cause prior to the third anniversary of the Effective Date, HCMLP shall receive payment in respect of the Deferred Fee Account in accordance with Section 2.02.

### Article 7: Mutual Releases and Indemnification

**Section 7.01.** Upon the Effective Date, each of the Consenting Redeemers, for themselves and on behalf of any of their respective officers, directors, shareholders, partners, members, employees, affiliates, investors, agents and representatives and any other person or entity entitled to assert a Claim (defined below) by, through, under, or on behalf of any Consenting Redeemer, hereby releases each of the HCM-Related Parties and each of the other Consenting Redeemers, from any and all accounts, actions, agreements, causes of action, claims, contracts, covenants, controversies, damages, debts, demands, executions, expenses, judgments, liabilities, obligations, omissions, promises, representations, and rights to payment, and all other liabilities of every kind, nature and description whatsoever, liquidated and unliquidated, fixed and contingent, matured and unmatured, disputed and undisputed, legal and equitable, state and federal, secured and unsecured, accrued and unaccrued, known and unknown, choate and inchoate (each, a "Claim"), which each Consenting Redeemer has, may have or ever had against any or all of the HCM-Related Parties and the other Consenting Redeemers from the beginning of the world to the Effective Date related to each of the Crusader Funds, including without limitation its administration and wind-down; provided, however, that such release shall not operate to release any claims arising from this Plan or based on larceny within the meaning of Section 155.05 of the New York Penal Code ("Larceny Claims"), provided that such exception shall not apply to Larceny Claims within the scope of knowledge of the releasing party as of the Effective Date.  The benefit of the release in this Section 7.01, as it related to the HCM-Related Parties, is held in trust by the Crusader Funds for the HCM-Related Parties, and the Crusader Funds hereby assign the benefit of the release in this Section 7.01 in their favor.

**Section 7.02.** Upon the Effective Date, the HCM-Related Parties, for themselves and on behalf of any successors and assigns and any other person or entity entitled to assert a Claim by, through, under, or on behalf of such HCM-Related Party, hereby release each other of the HCM-Related Party (except for intra-HCM-Related Party fees or accounts that are not subject to indemnification by any Crusader Fund, each of the Crusader Funds (except for intra-Crusader Funds claims) and each of the Consenting Redeemers

**HC-300.0084**

CONFIDENTIAL

RC00067024

from any and all Claims, which each HCM-Related Party has, may have or ever had against any or all of them from the beginning of the world to the Effective Date related to each of the Crusader Funds and its administration and wind-down; provided, however, that nothing in this clause shall operate to release or in any way limit any claims that any HCM-Related Party may have:

a) for defense or indemnification arising from claims asserted against any of them pursuant to the Governing Documents or Sections 2.03 and 7.04;

b) for reimbursement of out of pocket expenses actually incurred to third-parties in connection with administration of the Crusader Funds;

c) with respect to NexBank, in its capacity as agent in respect of investments by the Crusader Funds;

d) as a Crusader Fund Redeemer (as that term is defined in the Scheme) and Redeemer under the Scheme and the Plan, respectively, (as applicable); and

e) for fees payable in accordance with clauses 1.5.2, 4.4 and 5.2 of the Scheme and Sections 2.01, 2.02 and 6.02 of the Plan.

**Section 7.03.** Upon the Effective Date, the Master Fund, the Onshore Fund, Offshore Fund I, and Offshore Fund II, for themselves and on behalf of their respective officers, directors, shareholders, partners, members, employees, affiliates, investors, agents and representatives, hereby release each of the other HCM-Related Parties and the Consenting Redeemers from any and all Claims, which each of them has, may have or ever had against any or all of the HCM-Related Parties and the Consenting Redeemers from the beginning of the world to the Effective Date related the each of the Crusader Funds and their administration and wind-down; provided, however, that such release shall not be effective as to any such Consenting Redeemer that takes any action in contravention of the Plan.

**Section 7.04.** No party providing a release pursuant to this Article 7 shall assert any claim released pursuant to this Article 7 or otherwise in contravention of the Plan. Each party providing a release pursuant to this Article 7, shall indemnify and hold harmless each party intended to receive the benefit of such release from and against any liability, expense, including reasonable attorneys' fees and costs, or other damages arising from the assertion by such releasing party, or any assignee or successor of such releasing party, of any claim released by that party pursuant to this Article 7 or otherwise in contravention of the Plan.

## Article 8:  Representations and Consents

**Section 8.01.** Each Consenting Redeemer acknowledges, represents and warrants that (a) it has received, read carefully, and understands this Plan, (b) it has had an opportunity to consult with its own attorneys, accountants, investment advisors, and other professionals regarding this Plan, (c) it has all requisite power, authority and capacity to

**HC-300.0085**

CONFIDENTIAL
RC00067025

execute and deliver its Consent to this Plan, (d) it has had received and reviewed all information that it deems necessary to make an informed decision regarding this Plan, (e) it has had sufficient opportunity to review documents maintained by, ask questions of, and receive answers from the HCM-Related Parties concerning the Crusader Funds, the assets of the Crusader Funds, the Governing Documents, the claims of Consenting Redeemers and Non-Consenting Redeemers, and all other matters related in any way to this Plan, (f) it has not been induced to consent to this Plan by any of HCM-Related Parties, and (g) its recovery under this Plan is inherently uncertain, and no representations have been made to such Consenting Redeemer whatsoever regarding the likelihood of any recovery with respect thereto.

**Section 8.02.**   Each Consenting Redeemer agrees to support and (to the extent necessary) vote in favor of any future sale, merger, consolidation, plan of liquidation, plan of reorganization, distribution of assets, scheme of arrangement under Bermuda law, or other similar proceeding or transaction proposed by the HCM-Related Parties with respect to the Master Fund, the Onshore Fund or the Offshore Fund I ("Alternative Transaction"); provided that the Alternative Transaction will result in the Consenting Redeemer receiving materially the same benefit as it would under this Plan.

**Section 8.03.**   Each Consenting Redeemer agrees to promptly execute and deliver any agreements, assurances, consents, waivers, proxies, votes or instruments necessary to effectuate the terms of this Plan or an Alternative Transaction that provides materially the same benefit to such Consenting Redeemer as it would under this Plan.

## Article 9:  Miscellaneous

**Section 9.01.**   If the transactions contemplated herein are not consummated, nothing shall be construed herein as a waiver by any party of any or all of such party's rights and the parties expressly reserve any and all of their respective rights. Pursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, this Plan and all negotiations relating hereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms.  Nothing herein shall be deemed to create a joint venture or partnership or similar relationship among the parties.

**Section 9.02.**   Except as set forth above, each of the Crusader Funds retains obligations it has to pay out-of-pocket costs of the administration of the respective Crusader Fund, including accounting and audit expenses, legal fees, and costs associated with reporting.

**Section 9.03.**   Any dispute referred to in Sections 2.09, 5.03 or 6.02 above (other than a dispute regarding the existence of "Cause" or the payment or repayment in respect of Indemnification Obligations), which cannot be resolved through mediation referenced in Sections 2.09 or 5.03 above, respectively, shall be subject to and decided by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof pursuant to applicable law. Arbitration shall be conducted in New York, New York.

266889   **HC-300.0086**

CONFIDENTIAL                                                                                          RC00067026

**Section 9.04.** This Plan and the rights of the parties hereto shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflict of law rules thereof.

**Section 9.05.** This Plan constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof. Except as otherwise provided herein, this Plan supersedes all prior written and oral agreements, and no representations, warranties, statements, promises, or conditions not contained in this Plan shall be binding or have any force or effect whatsoever. In the event of a conflict between this Plan and any of the Governing Documents, the provisions of this Plan shall control. In the event of a conflict between this Plan and the Scheme, the Scheme shall control as to Redeemers of Offshore Fund II. The Governing Documents shall be deemed amended to conform to the provisions of the Plan and to authorize each respective HCM-Related Party to adopt this Plan notwithstanding any potential conflict of interest posed thereby, including without limitation by Sections 2.01 and Article 6 and each Consenting Redeemer hereby consents to the actions and transactions contemplated by the Plan (including, without limitation, those contemplated by Section 2.01 and Article 6), the General Partner's execution of the Plan on behalf of the Onshore Fund and the Master Fund, and the amendment of the Onshore Partnership Agreement and the Master Fund Partnership Agreement to add, respectively, Section 4.9 and 4.6, as follows:

> **"4.9    Plan of Distribution**
>
> Notwithstanding anything to the contrary contained herein, the General Partner is authorized to execute on behalf of the Partnership that certain Joint Plan of Distribution of the Crusader Funds and the transactions entered into, and the actions to be taken by, the Partnership contained therein are hereby approved."

> **"4.6    Plan of Distribution**
>
> Notwithstanding anything to the contrary contained herein, the General Partner is authorized to execute on behalf of the Partnership that certain Joint Plan of Distribution of the Crusader Funds and the transactions to be entered into, and the actions to be taken by, the Partnership contained therein are hereby approved."

For the avoidance of doubt, each Consent shall constitute consent to and approval of the foregoing actions and amendment of the Governing Documents.

**Section 9.06.** If any provision of this Plan is held to be invalid or unenforceable, then such provision shall (so far as invalid or unenforceable) be given no effect and shall be deemed not to be included in the Plan but without invalidating any of the remaining provisions of the Plan; except that if the provision of the Plan which is found to be invalid or unenforceable is material to the performance of the obligations or the receipt of rights or remedies under the Plan, then the consent of the Crusader Funds, the

CONFIDENTIAL    RC00067027

Redeemer Committee and any affected HCM-Related Party must be obtained in order for this clause to have effect.

**Section 9.07.**  All notices and other communications provided for in the Plan shall be in writing and posted, faxed, emailed or delivered to the applicable party at its address as described herein.

**HC-300.0088**

CONFIDENTIAL

RC00067028

## APPENDIX A

### Realisation Schedule

| | |
|---|---|
| Months 1-3 | $300,000,000 |
| Months 4-6 | $100,000,000 |
| Months 7-9 | $100,000,000 |
| Months 10-12 | $200,000,000 |
| Months 13-15 | $100,000,000 |
| Months 16-18 | $100,000,000 |
| Months 19-21 | $100,000,000 |
| Months 22-24 | $200,000,000 |
| Months 25-27 | $230,000,000 |
| Months 28-30 | $260,000,000 |
| Months 31-36 | $151,808,000 |

266889   **HC-300.0089**

CONFIDENTIAL

RC00067029

## EXHIBIT B

### Realisation Schedule

| | |
|---|---|
| Months 1-3 | $300,000,000 |
| Months 4-6 | $100,000,000 |
| Months 6-9 | $100,000,000 |
| Months 9-12 | $200,000,000 |
| Months 12-15 | $100,000,000 |
| Months 15-18 | $100,000,000 |
| Months 18-21 | $100,000,000 |
| Months 21-24 | $200,000,000 |
| Months 24-27 | $230,000,000 |
| Months 27-30 | $260,000,000 |
| Months 30-36 | $151,808,000 |

266889

**HC-300.0090**

CONFIDENTIAL

RC00067030

## APPENDIX C

### Notice of Scheme Meetings

## IN THE SUPREME COURT OF BERMUDA

### CIVL JURISDICTION
### COMMERCIAL COURT
### 2011: No. 51

## HIGHLAND CRUSADER FUND II, LTD.

### (THE "COMPANY")

## NOTICE OF MEETINGS ORDERED BY THE SUPREME COURT OF BERMUDA UNDER SECTION 99 OF THE COMPANIES ACT 1981

NOTICE IS HEREBY GIVEN that on an application by the Company, an order was made on 9 June 2011 that separate meetings of the two classes of Scheme Creditors (as defined in the scheme of arrangement referred to in this Notice) of the Company, could be convened for the purpose of considering and if thought fit, approving (with or without modification) a scheme of arrangement (the "Scheme") proposed to be made between the Company and its Scheme Creditors pursuant to section 99 of the Companies Act 1981. Terms defined in the Scheme shall have the same meaning in this notice.

The meetings are to be held on 7 July 2011 at Wakefield Quin, Victoria Place, 31 Victoria Street, Hamilton, Bermuda at the following times:

Company Prior Redeemers – at 9:00 a.m. (Bermuda time)

Company Compulsory Redeemers – at 9:30 a.m. (Bermuda time)

Scheme Creditors may attend and vote in person at the meeting for their class or they may appoint another person, whether or not such person is a Scheme Creditor, as their proxy to attend and vote in their place. Scheme Creditors which are corporations may attend and vote by a duly authorized representative or by proxy. Scheme Creditors are requested to complete the Proxy Form, which will be mailed and emailed to Scheme Creditors with this notice, and return it to the Company by email (as a scanned copy) to HighlandCrusaderFunds@hcmlp.com or by mail to c/o Wakefield Quin Limited, Victoria Place, 31 Victoria Street, Hamilton HM 10, Bermuda), in each case marked for the attention of "Highland Crusader Funds Balloting." Provided that if the Proxy Form is submitted by email, it must be legible and an original executed copy or copies must be received by the Company within 3 business days of the date of electronic submission. Each Proxy Form should be received by 5:00 p.m. (Bermuda time) on 30 June 2011,

90

CONFIDENTIAL                                                                                          RC00067031

although, if not so returned, the Chairman of the meeting has discretion to accept a Proxy Form if handed in between 8:30 a.m. and 8:45 a.m. on the day of the meeting at the place fixed for the meeting.

Each Scheme Creditor or his proxy will be required to register his attendance at the meeting prior to its commencement. Registration will commence at 8:45 a.m.

A copy of the Scheme, the Explanatory Statement to the Scheme required by section 100 of the Companies Act 1981 of Bermuda, a Proxy Form for use at this meeting and all other documents in relation or ancillary thereto have been sent to all Scheme Creditors by mail and can be downloaded from the Data Room at https://services.intralinks.com using your existing login name and password. A new login name and/or password may be obtained by emailing HighlandCrusaderFunds@hcmlp.com. If you are unable to access these documents from the Data Room, please contact the Company by email at HighlandCrusaderFunds@hcmlp.com and a copy of these documents will be sent to you at the address you specify (or if no address is specified, your last known address as shown in the Company's records).

The Bermuda Court has directed that Roderick Forrest, a director of the Company, or failing him, Nicholas Hoskins, also a director, act as chairman of the meeting and directed the chairman to report the result of the meeting to the Court.

If approved by the scheme creditors' meeting, the Scheme will not come into force unless it is sanctioned by order of the Bermuda Court at a hearing which is expected to take place in July 2011, and a copy of the order is delivered for registration to the Registrar of Companies in Bermuda after other conditions precedent to the Scheme are satisfied.

All Scheme Creditors are entitled to attend the sanction hearing in person or by counsel to support or oppose the approval and sanction of the Scheme.

Dated 13 June 2011

Attride-Stirling & Woloniecki
Crawford House
50 Cedar Avenue
Hamilton HM11
Bermuda
Attorneys to the Company

CONFIDENTIAL                                                                                                    RC00067032

# APPENDIX D
# PROXY FORM

## Highland Crusader Fund II, Ltd. (the "Company")

### Proxy Form

### General notes for the completion of the Proxy Form

If you are a Scheme Creditor, you will be entitled to attend and vote at the meeting of your class of Scheme Creditors summoned to consider the proposed Scheme.
Enclosed with this document is the Proxy Form.

You are requested to complete and return the Proxy Form as soon as possible and, in any event, so that it is received by 5:00 p.m. (Bermuda time) on 30 June 2011 by the Company. The completed signed Proxy Form, should be to be sent by email (as a scanned copy) to HighlandCrusaderFunds@hcmlp.com or by mail to c/o MQ Services Ltd, Victoria Place, 31 Victoria House, Hamilton HM 10, Bermuda, in each case marked for the attention of "Highland Crusader Funds Balloting." Provided that, if the Proxy Form is submitted by email, it must be legible and an original executed copy or copies must be received by the Company within 3 business days of the date of electronic submission. If a Proxy Form is not returned by 5:00 p.m. (Bermuda time) on 30 June 2011, the Chairman of the meeting has discretion to accept a Proxy Form if handed in between 8:30 a.m. and 8:45 a.m. on the day of the meeting at the place fixed for the meeting.

If you are a Scheme Creditor in both classes, you should complete a separate Proxy Form for each class meeting.

If you are a duly authorised agent and/or attorney of a number of Scheme Creditors, you should complete separate Proxy Forms in respect of each Scheme Creditor for whom you act.

Any alteration to the Forms must be initialled by the person who signs it.

The value attributed to each Scheme Creditor's Scheme Claim for voting purposes shall be the Redemption Amount stated on the Proxy Form sent to each Redeemer

In the event that a Scheme Creditor objects to the valuation of its claim as set out in the Proxy Form for the purpose of voting at the meeting, the value of that Scheme Claim shall be determined by the Chairman of the meeting at his discretion, provided that the minimum value of such Scheme Claim determined by the Chairman shall be the Redemption Amount stated on the Scheme Creditor's Proxy Form. In the event of a dispute, the Chairman's decision will be final and binding and will be notified to the relevant Scheme Creditor before the Scheme Meeting where possible, and in any event, afterwards.

266889

**HC-300.0093**

CONFIDENTIAL

RC00067033

ffffffffffffort>8ffort>8ffffffort>8ffort>8ffffort>8ffort>8ffort>8ffort>8ffort>8ffort>8ffort>8ffort>8ffort>8ffort>8ffort>8ffort>8ffort>8ffort>8

93

**PROXY FORM FOR COMPANY PRIOR REDEEMERS**
IN THE SUPREME COURT OF BERMUDA
CIVIL JURISDICTION (COMMERCIAL COURT) No. 51 of 2011
IN THE MATTER OF HIGHLAND CRUSADER FUND II, LTD.
AND IN THE MATTER OF THE COMPANIES ACT 1981

To be used at the Meeting of Scheme Creditors who are Company Prior Redeemers (as defined in the Scheme of Arrangement mentioned below) of HIGHLAND CRUSADER FUND II, LTD. to be held on 7 July 2011 at 9:00 a.m. (Bermuda time) at Victoria Place, 31 Victoria Street, Hamilton, HM10, Bermuda.

I/We (1) ..................................................................

of ................................................................ (Enter the name of the Scheme Creditor)

................................................................ (Enter the address of the Scheme Creditor)

being a Scheme Creditor with a claim as a Company Prior Redeemer of HIGHLAND CRUSADER FUND II, LTD. in the sum of [*Redemption Amount s to be inserted by Company*] HEREBY APPOINT(3) the Chairman of the Scheme Meeting for Company Prior Redeemers or

................................................................as my/our proxy to act for me/us at the Scheme Meeting for Company

Prior Redeemers the purpose of considering and, if thought fit, approving (with or without modification) the Scheme referred to in the notice summoning such Scheme Meeting, and at such Scheme Meeting, or any adjournment thereof, to vote for me/us and in my/our name(s) for the Scheme or against the Scheme (either with or without modification as my/our proxy may approve) as hereinafter indicated.

If you wish to vote for the Scheme, sign in the box marked "FOR". If you wish to vote against the Scheme, sign in the box marked "AGAINST". If you wish your proxy to have discretion to vote for or against the Scheme, sign in the box marked "AT DISCRETION". Note that if you have appointed the Chairman of the Scheme Meeting as your proxy, you must sign either the box marked "FOR" or the box marked "AGAINST", not the box marked "AT DISCRETION". If you sign the box marked "AT DISCRETION", this Proxy Form will not operate as a valid appointment of the Chairman as your proxy and the Chairman will abstain from voting on your behalf. If you do not sign in any of the boxes, this Proxy Form will not operate as a valid appointment of your proxy.

| FOR the Scheme | AGAINST the Scheme | AT DISCRETION(4) |
|---|---|---|
| Signature | Signature | Signature |

Name ................................

Position/Capacity (5) ................................   Date ................................

Contact email address 1 ................................

Contact email address 2 ................................

PLEASE SEE PAGE 3 FOR DETAILED INSTRUCTIONS ON COMPLETING THE PROXY FORM

266889

**HC-300.0094**

CONFIDENTIAL

RC00067034

94

**PROXY FORM FOR COMPANY COMPULSORY REDEEMERS**
IN THE SUPREME COURT OF BERMUDA
CIVIL JURISDICTION (COMMERCIAL COURT): No. 51 of 2011
IN THE MATTER OF HIGHLAND CRUSADER FUND II, LTD
AND IN THE MATTER OF THE COMPANIES ACT 1981

To be used at the Meeting of Scheme Creditors who are Company Compulsory Redeemers (as defined in the Scheme of Arrangement mentioned below) of HIGHLAND CRUSADER FUND II, LTD. to be held on 7 July 2011 at 9:30 a.m. (Bermuda time) at Victoria Place, 31 Victoria Street, Hamilton, HM10, Bermuda.

I/We (1) ..............................................................................(Enter the name of the Scheme Creditor)

of...............................................................................(Enter the address of the Scheme Creditor)

being a Scheme Creditor with a claim as a Company Compulsory Redeemer of HIGHLAND CRUSADER FUND II, LTD. in the sum of [*Redemption Amount to be inserted by Company*]

HEREBY APPOINT(3) the Chairman of the Scheme Meeting for Company Compulsory Redeemers or

................................................................................................................

as my/our proxy to act for me/us at the Scheme Meeting for Company Compulsory Redeemers for the purpose of considering and, if thought fit, approving (with or without modification) the Scheme referred to in the notice summoning such Scheme Meeting, and at such Scheme Meeting, or any adjournment thereof, to vote for me/us and in my/our name(s) for the Scheme or against the Scheme (either with or without modification as my/our proxy may approve) as hereinafter indicated.

If you wish to vote for the Scheme, sign in the box marked "FOR". If you wish to vote against the Scheme, sign in the box marked "AGAINST". If you wish your proxy to have discretion to vote for or against the Scheme, sign in the box marked "AT DISCRETION". Note that if you have appointed the Chairman of the Scheme Meeting as your proxy, you must sign either the box marked "FOR" or the box marked "AGAINST", not the box marked "AT DISCRETION". If you sign the box marked "AT DISCRETION", this Proxy Form will not operate as a valid appointment of the Chairman as your proxy and the Chairman will abstain from voting on your behalf. If you do not sign in any of the boxes, this Proxy Form will not operate as a valid appointment of your proxy.

| FOR the Scheme | AGAINST the Scheme | AT DISCRETION(4) |
|---|---|---|
| Signature | Signature | Signature |
| .................... | .................... | .................... |
| Name .................... | | |
| Position/Capacity (5).................... | Date .................... | |
| Contact email address 1 .................... | Contact email address 2 .................... | |

PLEASE SEE PAGE 3 FOR DETAILED INSTRUCTIONS ON COMPLETING THE PROXY FORM

266889

**HC-300.0095**

CONFIDENTIAL

RC00067035

## Instructions for completion of the Proxy Form

Please note that the terms contained within these instructions and the Proxy Form bear the same meanings as given to them in the Scheme. The numbers below refer to the numbers on the Proxy Form.

1. Complete the Proxy Form that is applicable to your class of claim.

2. Enter the name and address of the Scheme Creditor in block capitals. If you are the duly authorised agent and/or attorney of a Scheme Creditor or a number of Scheme Creditors, complete a form in respect of each Scheme Creditor, and provide evidence (which must be satisfactory to the Chairman of the Scheme Meeting) of your authority to execute the form on each Scheme Creditor's behalf. Please note that each Scheme Creditor which is a company within a group of companies must complete a separate Proxy Form, as a group submission is not permissible.

3. If you wish to appoint a person other than the Chairman of the Scheme Meeting as your proxy, delete the words "the Chairman of the Scheme Meeting" and enter the name of the person to be appointed. The person to be appointed as your proxy need not be a Scheme Creditor. If you appoint a person other than the Chairman of the Scheme Meeting as your proxy, that person must attend the meeting in person in order to vote on your behalf.

4. If you wish to instruct your proxy to vote for the Scheme please sign the box marked "FOR". If you wish to instruct your proxy to vote against the Scheme please sign the box marked "AGAINST". If you wish to leave your vote to the discretion of your proxy, please sign the box marked "AT DISCRETION" in which event you must appoint a person other than the Chairman of the Scheme meeting to be your proxy, otherwise the form will not operate as a valid appointment of a proxy at the Scheme Meeting.

5. If you are the duly authorised representative of a corporation or a partnership or other unincorporated body of persons, or the duly authorised agent and/or attorney of a Scheme Creditor or a number of Scheme Creditors, enter the capacity in which you have signed the Proxy Form (for example, director, partner or agent and/or attorney). If you are the duly authorised representative of a number of companies, a separate Proxy Form should be completed in respect of each company. You must provide evidence (which must be satisfactory to the Chairman of the Scheme Meeting) of your authority to execute the form on each Scheme Creditor's behalf.

266889

**HC-300.0096**

CONFIDENTIAL                                                                                                              RC00067036