**Exhibit E**

**Final Arbitration Award (Joshua Terry)**

01:25579940.1

**JAMS**

| | |
|---|---|
| **TERRY, JOSHUA N.** | § |
| | § |
| **Claimant,** | § |
| | § |
| **v.** | §    **JAMS ARBITRATION NO.  1310022713** |
| | § |
| **HIGHLAND CAPITAL** | § |
| **MANAGEMENT, LP, ACIS CAPITAL** | § |
| **MANAGEMENT, LP, ACIS CAPITAL** | § |
| **MANAGEMENT GP, LLC, DONDERO** | § |
| **JAMES D. as TRUSTEE/THE DUGABOY** | § |
| **INVESTMENT TRUST and** | § |
| **OKADA, MARK K.** | § |
| | § |
| **Respondents.** | § |

### FINAL AWARD

**Parties and Counsel**:  The parties are identified in the caption and are represented as follows:

Brain P. Shaw
Rogge Dunn
Clouse Dunn LLP
1201 Elm Street, Suite 5200
Dallas, TX 75270
Phone:  214-220-3888; Fax:  214-330-3833
Email:  shaw@clousedunn.com
Email:  rogge@clousedunn.com
Counsel for Claimant, Joshua N. Terry

Paul B. Lackey
Jamie R. Welton
Bruce E. Bagelman
Lackey Hershman LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, TX 75219
Phone:  214-560-2201; Fax:  214-560-2203
Email: pbl@lhlaw.net
Email:  jrw@lhlaw.net

Email: beb@lhlaw.net

AND

Marc D. Katz
Robert M. Hoffman
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, TX 75201
Phone: 214-659-4400; Fax: 214-659-4401
Email: marckatz@andrewskurth.com
Email: robhoffman@andrewskurth.com
Counsel for Respondents, Highland Capital Management, LP, ACIS Capital Management, LP, ACIS Capital Management GP, LLC, Dondero, James D. as Trustee/The Dugaboy Investment Trust, and Okada, Mark K.

**Arbitrator**:

Hon. Harlan Martin
Hon. Glen M. Ashworth (Ret.)
Hon. Mark Whittington (Ret.)
JAMS
8401 N. Central Expressway, Suite 610
Dallas, Texas 75225
Telephone: 214-744-5267; Fax: 214-720-6010

**Case Manager**:

Judy Stephenson
JAMS
8401 N. Central Expressway, Suite 610
Dallas, Texas 75225
Email: jtephenson@jamsadr.com
Telephone: 214-891-4523; Fax: 214-720-6010

## HEARING

In accordance with the Parties' agreement to arbitrate and Court Order, disputes between

Claimant, Joshua N. Terry ("Terry") and Highland Capital Management, LP, ("Highland"), ACIS

Capital Management, LP ("ACIS"), ACIS Capital Management GP, LLC ("ACIS GP"), James

Dondero, as Trustee of the Dugaboy Investment Trust ("Trust"), and Mark K. Okada ("Okada"),

all Respondents were submitted to binding arbitration before JAMS. The Arbitration Panel

members are the Hon. Glen M. Ashworth (Ret.), the Hon. Mark Whittington (Ret.) and the Hon.

Harlan Martin (Former), serving as Chairman of the Panel.

The arbitration hearing was conducted in Dallas, Texas on the dates of September 2, 3, 6,

7, 8, 11, 12, 13, 14 and 15, 2017, with additional briefing submitted thereafter. The briefing was

closed and the hearing was complete on September 28, 2017.


## PROCEDURAL BACKGROUND

In Cause No. DC-16-11396, styled Highland Capital Management, LP vs. Joshua N.

Terry, the 162nd Judicial District Court stayed the litigation and Ordered the parties to arbitration.

The Panel has previously dismissed all claims stated by Terry against Jams Dondero,

individually. James Dondero is not an appropriate party to this proceeding and did not obligate

himself to the Parties' arbitration agreement.

The Panel has previously dismissed Terry's claims for Declaratory Judgment relief.

The Panel has previously dismissed Terry's claims for Exemplary Damages, as same are

an excluded remedy by the terms of the Parties' arbitration agreement.

The Panel has previously denied Respondents' Motion to Disqualify Clouse Dunn and

ruled that the firm is not disqualified to represent Terry.

The Panel has declined to entertain any request for injunctive relief.

## REMAINING CLAIMS STATED BY PARTIES

Terry states claims against Highland for Sabine Pilot wrongful termination and seeks damages for deferred compensation, unpaid wages, future wages and reimbursement of benefits not paid. Terry states claims against ACIS, ACIS GP and Highland for reputational damages, resulting from statements published in the pending District Court litigation and a press release to Law 360.

Terry states claims against ACIS, ACIS GP, Trust and Okada for breach of contract and seeks damages for amounts due under the terms of the ACIS LPA and damages resulting from overcharging expenses and withholding of retirement assets.

Terry states claims against ACIS and ACIS GP for fraud.

Terry states claims against ACIS GP for breach of fiduciary duty.

Terry states claims against ACIS, ACIS GP and Highland for conversion of assets, fraudulent transfer of ACIS assets, recovery of his attorney's fees and costs, together with pre and post award interest.

Highland states claims against Terry, "subject to, and without waiver of its contention that Highland is not a party to a valid arbitration agreement with Terry and its claims against him are not arbitrable or within the scope of any applicable arbitration agreement, which contentions remain fully reserved." With this reservation, Highland states claims against Terry for breach of employment agreement, theft/theft of trade secrets, breach of fiduciary duty/self-dealing and recovery of its attorneys' fees and costs together with pre and post award interest.

## BACKGROUND FACTS

Terry began his employment with Highland in 2005. During the ensuing years he achieved remarkable success and ultimately became Highland's most productive portfolio manager and had direct responsibility for more than ten billion dollars of assets under his management.

In 2011, Terry, James Dondero and Okada formed ACIS as a registered investment advisor to raise money from third-party investors to invest in collateralized loan obligations, (CLOs). ACIS earns a fee for managing the loans.

As the general partner of ACIS, ACIS GP owned .1%. As limited partners of ACIS, Trust owned 59.9%; Okada owned 15% and Terry owned 25%.

James Dondero owned 100% of Trust and was an officer of ACIS GP, and in fact made or approved the financial strategies and decisions of ACIS. While Okada was less active, Terry was responsible for the day-to-day management of ACIS. Terry managed well, attracted significant investors and grew ACIS assets under his management from nothing to three billion seven hundred million dollars in less than six years.

Prior to 2016, Terry enjoyed a good relationship with Dondero. Terry had never been criticized, written up or disciplined during his eleven years of employment with Highland. Terry had been paid millions of dollars in Highland salary, bonuses and ACIS profit distributions, as he had produced many more millions for Highland and his ACIS partners.

Thereafter, tensions arose between Terry and Dondero which were centered in Dondero's plans to have Trussway Holdings, Inc. acquire Targa, a Brazilian latex manufacturer, out of bankruptcy. Trussway is a Highland affiliated company controlled by Dondero. The plan was to have Highland managed CLOs loan Trussway approximately seventeen million dollars so

Trussway could loan a Highland affiliated Brazilian entity the money to acquire Targa and have Trussway use its cash to acquire its own equity to effectively increase Highland's ownership in Trussway.

At this time, Trussway's only lenders were the Highland CLOs and it owed the Highland CLOs approximately fifty six million dollars in Trussway notes coming due on May 31, 2016. Trussway did not have the money to pay the notes. Trussway did have more than twenty three million dollars still available on its revolver note (credit line), with the Highland CLOs. Dondero's plan was to extend the notes then due within days and finance Trussway's acquisition of Targa by drawing down the revolver funds. Dondero's plan was to not pay any of the CLOSs' notes until such time as Trussway could be refinanced or sold.

All of the Highland CLOs lending to Trussway were "pre-crisis" 2009, CLOs. One of the CLOs, Pamco-Cayman, had matured years before and its notes were in technical default. Another, Vahalla was maturing within four months.

Terry was opposed to Dondero's plan and saw a need to vigorously oppose the plan. Terry was the portfolio manager of these Highland CLOs and was convinced it would be a breach of his fiduciary duty to allow the Pamco-Cayman and Vahalla notes to be extended, as they were past or near maturity. Terry's opposition escalated at the May 2016 Conflicts Committee meeting and having been told that outside counsel had approved the transaction, Terry was sure they could not know all of the facts. Terry then informed outside counsel of "the facts" and his opposition to Dondero's plan. Outside counsel was in agreement with Terry and thereafter, on June 9, 2016, the Conflicts Committee approved the Trussway/Targa Transaction, but with the Pamco-Cayman and Vahalla notes being paid off and not extended. Thus, less cash was available to Dondero to fund his plan.

On June 9, 2016, following the Conflicts Committee meeting, Dondero told Terry that "he had lost all trust in him"; that "he could not go through another conflicts process with him"; and "it was best that Terry work with Surgent, Highland's Chief Compliance Officer (CCO), on an exit or transition out of Highland." The next day, Dondero emailed Terry and told him to focus on a "clean break scenario" and not come back to the office. On June 13, 2106, Terry received an email from Highland's Human Resources (H/R) director advising that he had been terminated for cause, but that Highland was "willing to consider the separation package previously offered", presumably referring to CCO Surgent's email of June 10, 2106, wherein he acknowledges that, "We are in agreement that we would like the termination of this relationship to be amicable." On June 13, 2016, Terry communicates with Dondero protesting his termination and demanding he be paid by Highland and ACIS. Thereafter, Highland's outside counsel sent a letter to Terry's counsel, demanding the return of all Highland related documents in the possession of Terry. Terry's counsel responds and reminds Highland's counsel of Terry's prior offer to return appropriate documents to Highland, and suggests a protocol for managing the electronically stored documents and electronic devices in possession of ESI, a third party forensics vendor, and demands redemption of Terry's and his wife's retirement account investments in ACIS CLO Value Fund II (CLOVF). Terry first requested redemption of these retirement account investments on June 20, 2016.

Thereafter, on June 27, 2016, Terry returns documents to Highland and continues to await an agreement on ESI return protocols. However, on July 27, 2016, Highland's counsel rejects the proposed ESI return protocols and does not suggest alternate protocols. In the same e-mail string, Highland's counsel responds to Terry's request for redemption of the retirement investments in CLOVF, advising that; "we do not contest that Mr. Terry has submitted a request

for redemption in full of all of his accounts. However, please note that those accounts do not have any value." On September 1, 2016, the CCO, for the first time, memos Terry's "compliance file" with allegations of Terry's breach of fiduciary duty, self-dealing and material compliance violations regarding the CLOVF. This memo alleges an investor loss in the CLOVF attributed solely to Terry's actions and that Highland in part offset such loss against "Mr. Terry's" remaining interest in the CLOVF, "in accordance with Section 3.5(c) of the Agreement of Limited Partnership." Thus, Terry's and his wife's retirement investment in the CLOVF was swept by Highland or others and "those accounts have no value," as stated in Highland's counsel's email of July 27, 2016.

On September 7, 2016, the Parties mediated their dispute, but did not settle. The next day Highland filed suit against Terry alleging the same facts which the CCO alleged in his September 1, 2016 memo, and alleging Terry had a sexual relationship with a number of his subordinates, and alleging that Terry made disparaging/disrespectful remarks about Dondero. Highland's suit stated claims for breach of employment agreement, breach of fiduciary duty/self-dealing, violation of the Texas Uniform Trade Secrets Act and sought declaratory relief that Terry was terminated for cause.

On September 12, 2106, Highland files its Application for Temporary Restraining Order and Motion to Disqualify Terry's attorneys, and Terry files his Motion to Compel Arbitration. On September 28, 2106, the Court issued its Order compelling the Parties to arbitration and Ordered the litigation (Cause No. DC-16-11396, 162nd Judicial District Court) stayed pending a Final Award in Arbitration.

## ANALYSIS OF FACTS AND CLAIMS

The Panel first addresses Terry's claims for breach of contract stated against ACIS and ACIS GP and breach of fiduciary duty stated against ACIS GP.

The evidence establishes that Highland terminated Terry's employment on June 9, 2016. The ACIS Limited Partnership Agreement (LPA), Section 4.04 requires that, "upon the resignation, death, disability or termination of employment with the Partnership or any Affiliate Employer (for any reason whatsoever) (as such event, a 'Removal Event') of any Limited Partner, the Partnership Interest of such Limited Partner shall automatically be forfeited to the Partnership and such Limited Partner shall be entitled to receive in consideration of such interest an amount equal to (i) 100% of such Limited Partners Percentage Interest of all Net Available Cash through the first year end following the Removal Event, (ii) 66 2/3% of such Limited Partner's Percentage Interest of all Net Available Cash through the second year end following such Removal Event, (iii) 33 1/3% of such limited Partner's Percentage Interest of Net Available Cash through the third year end following such Removal Event...; provided, that if the basis of such Removal Event was termination of employment with the Partnership or any Affiliate Employer for cause...such partner shall automatically forfeit its right to any further compensation or consideration for its Partnership Interest."

Because Highland stated that Terry was terminated for cause, ACIS and ACIS GP invoked the provided clause and deemed all of Terry's limited partnership interest and entitlement to payout as forfeit. Thus, ACIS and ACIS GP claim to owe Terry nothing for his 25% limited partnership interest in ACIS, as Terry claims he is contractually owed twelve million nine hundred and eight two thousand dollars for his 25% limited partnership interest in ACIS.

The evidence establishes that ACIS and ACIS GP did not just simply rely on Highland's statement of terminating Terry for cause. ACIS and ACIS GP became part of Highland's and

Dondero's efforts to construct a pretext of "for cause" termination so Terry could be denied the value of his limited partnership interest in ACIS. ACIS and ACIS GP knowingly and willingly pretextually characterized Terry's termination from Highland as a "for cause" termination to deny Terry the value of his limited partnership interest, all in contractual breach of the ACIS LPA and in breach of fiduciary duty to Terry as its limited partner. ACIS and ACIS GP have no employees. All who act for ACIS and ACIS GP are officers or employees of Highland and perform multiple roles.

The evidence establishes that Highland's termination of Terry was, in fact, pre-textual, without basis of cause and only because Dondero wanted him gone. Terry's opposition to Dondero's Trussway/Targa plan was not self-dealing and not a breach of fiduciary duty. Terry's opposition to Dondero's plan to not pay investors and extend past due and near due notes was appropriate and was ultimately accepted by all to be the correct approach to complete the Trussway/Targa acquisition. Dondero was simply angry and realized Terry was not a "yes man" willing to let Dondero have his wrongheaded way, so Dondero fired Terry on the spot and later sought to characterize Terry's termination of employment as "for cause."

Respondents' offer to prove that Terry's termination was "for cause" is not persuasive. The contrasts between the true facts and their temporal relationship to Terry's termination, as those "facts" are characterized by Respondents as a predicate for his "for cause" termination, are not credible. The CCO's memo to Terry's file of September 1, 2016 was the first documentation of his alleged breach of fiduciary duty or self-dealing as a justification for his "for cause" termination.

There is no credible evidence that anyone ever discussed any prior sexual relationship between Terry and a co-worker, other than Terry in a "father/son" talk with Dondero in January 2015. That admitted relationship had ended months earlier, was not significant to Dondero and he told Terry there was no need to report the relationship to Human Resources. Respondents alleged

other sexual relationships between Terry and co-workers which are denied by Terry. One is alleged to have occurred in 2011, but there is no credible evidence that it even occurred. It is simply not credible that a rumored relationship four years prior was any motivation for or could be any justification for Terry's "for cause" termination. Respondents' allegation that Terry had a sexual relationship with a Highland junior attorney is most offensive, as the relationship did not occur and was denied by both Terry and the junior attorney. This allegation was based solely on someone's fantasy related to costumes they wore at an office Halloween party and their common attendance at a business conference. It is not credible that a sophisticated CCO and H/R director would reasonably rely on such as a basis for Terry's "for cause" termination and resulting forfeiture of the value of his limited partnership interest in ACIS. The evidence establishes that Terry did not have a sexual relationship with the junior attorney, and the Respondents or others, in good faith, could not have reasonably believed he did.

The Panel is persuaded that the Respondents, feeling need to find motive for the junior attorney's assistance of Terry and her involvement in the CLOVF restructure, sponsored these allegations to support their claims that Terry was seeking the restructure of the CLOVF out of self-interest and in breach of his fiduciary duties, and establish the motives of the junior attorney in "knowingly" facilitating Terry's alleged breach of duty. This is a pretextual construct of the CCO and is simply not credible.

The proposed restructure of the CLOVF began in early 2015 and was always known by Dondero, Highland's legal department and CCO. The CLOVF was small, only had a few investors, was subject to investor redemption requests, had been co-opted to be supported by Highland employee's investment of their retirement accounts and not structured in a way to attract a target

group of investors. The proposal was to restructure the CLOVF to make it more "hedge fund like", and grow the CLOVF with new investors.

The CLOVF routinely paid profit distributions to its investors. This is not "hedge fund like" because profits were distributed rather than retained to be reinvested for growth. The two primary investors, referred to as Rampart and Kyser did not require routine distributions and sought growth. Highland employees had access to investing in the CLOVF by investing in its ITA retirement accounts, which were basically IRAs. Employee investors who wished to invest more in their ITA retirement accounts were required to invest in the CLOVF's interest bearing notes at a ratio of 80% notes to support 20% investment in their ITA retirement accounts. If the CLOVF was to no longer distribute profits to accomplish "hedge fund like" reinvestment for growth, no distributions would be available to pay interest on the employee investment notes and the notes would need to be paid off. If there was no longer a vehicle to support aggressive employee investment in the CLOVF (the four to one ratio), the ITA did not need to continue to exist. The employee's retirement accounts could simply be redeemed or transferred to other IRAs.

Terry was the portfolio manager of the CLOVF and its third largest investor. Like other investors, Terry had rights to redeem his investment, but he did not seek to redeem and continued to invest in CLOVF notes and he and his wife continued to invest their retirement funds in the ITA. Nonetheless, Respondents allege that a dichotomy of interest led Terry to lie and scheme to have his investment in the CLOVF paid while others were encouraged to invest. This is the substance of Respondents' allegations of Terry's self-dealing and breach of fiduciary duty, supporting both their allegations of "for cause" termination and Highland's claims for damages and offset in the District Court suit. As noted, these claims were never documented or disclosed to Terry prior to the CCO's memo of September 1, 2016, and Highland's District Court suit.

As noted, the proposed restructure of CLOVF began in early 2015 and continued for a year thereafter. The business purpose of the restructure was well known to Dondero and the CCO. As early as the fall of 2015, Dondero and Terry were discussing the appropriateness of continuing the CLOVF without new investors. Dondero did not want to close the CLOVF and suggested that the DAF would become a major investor. The DAF (Donor Advised Fund), CLO Hold Co is the Parties' reference to a group of charitable foundations which were invested in Highland managed CLOs. The DAF's trustee is a Highland employee and Dondero's former college roommate. Apparently, Dondero knew he could direct the DAF's investment in the CLOVF and support its continuation. Dondero and the Highland CCO were aware of the planned restructure and its consequential effect on the ITA and the employee investor notes supporting the employee's retirement investments in the ITA. By December 2015, Dondero approves the restructure plan, payment of employee investor notes and the windup of the ITA. The Highland CCO expresses concern that Rampart's and Kyser's written approval is necessary for the CLOVF to stop paying profit distributions. Later the necessary approval is documented, apparently to the CCO's satisfaction, and the restructure plan proceeds. The DAF contributes sixteen million six hundred thousand dollars of Highland managed assets to the CLOVF, employee investor notes are paid and the ITA is wound up by the end of April 2016.

Following Terry's termination and later notice of "for cause" termination, Terry requested redemption of his and his wife's remaining investments in the CLOVF. Five weeks later, on July 27, 2016, he is advised that his investment has no value. Apparently, when the ITA was wound up in late April, Terry's and his wife's retirement investments were somehow re-characterized as Terry's capital account in the ACIS CLO Value Master Fund II, L.P. or his capital account in the CLOVF.

On or about July 19, 2106, Highland rescinded the DAF contributions to the CLOVF and returned the contributed assets to the DAF. Respondents state this rescission was necessary because they had "recently discovered (a) conflict of interest regarding an ex-employee." However, the Rescission Agreement itself recites that, "the Parties have each determined that it is in their respective best interests of each of the Parties to rescind and cancel the Contribution."

Incident to the rescission, the CLOVF returned all of the contributed assets to the DAF and paid in cash or transfer of additional assets the total value of seven hundred and eight thousand dollars, "to make the DAF whole", and economically in the same position as before its contribution to the CLOVF.

The "recently discovered conflict of interest" is the CCO's recent epiphany that Terry must have lied when he advised that the CLOVF investors Rampart and Kyser "requested" that distributions be terminated to accommodate reinvestment growth. The CCO's testimony that he called these investors and confirmed this lie is not persuasive and begs credibility. The only documented evidence are the investors written approvals which the CCO required.

The July 27, 2016 advice that Terry's and his wife's retirement accounts had no value is only accurate because the value was taken and used to pay the DAF following the rescission. In the District Court suit, Highland states a claim for damages and offset for the additional value paid to the DAF. Respondents' witness testified that the retirement fund's value was in Terry's capital account and it was swept pursuant to Section 3.5(c) of the ACIS CLO Value Master Fund II, L.P.'s limited partnership agreement.

Terry is a limited partner in the CLOVF and the CLOVF is a limited partner in the ACIS CLO Value Master Fund II (CLOVMF) but the evidence does not show Terry to be a partner in the CLOVMF. Assuming that Terry is a partner, as referenced in Section 3.5(c), Respondents' claimed

authority to sweep the accounts in satisfaction of or offset of damage or loss is directly dependent upon a nexus in causation between the alleged damage or loss and the conduct of Terry.

The evidence establishes that the CCO's claims of "recently discovered conflict of interest" is yet another construct and pretext to support Respondents' denial of limited partnership value based on a "for cause" termination and was not in fact the reason for the DAF rescission. It would make little difference to Highland which of its CLOs managed the DAF investments. Dondero simply reconsidered his decision to support the continuation of the CLOVF with Highland managed funds and realized, that in fact, as Terry had advised, the fund would be too small to manage without significant investors. The CLOVF was ultimately closed out because Dondero did not see benefit to its continuation. The evidence establishes that no conduct of Terry was a cause of damage or loss to the CLOVMF or the CLOVF.

Section 3.10(a) of the ACIS LPA limits compensation and reimbursement of expenses payable to the General Partner and any Affiliate of the General Partner to an amount not to exceed 20% of Revenues without the consent of all members of the Founding Partner Group. There is no dispute that Terry is a member of the Founding Partner Group. There is no evidence that Terry offered written consent to any expenses paid by ACIS in excess of 20% of Revenues. It is undisputed that ACIS habitually paid more than 20% of Revenues to Highland for providing ACIS with overhead and administration. Respondents' evidence and arguments that Terry waived or consented to ACIS's payment of excess expenses is not persuasive. At most, Terry accepted his ACIS distributions without regard to the expenses paid to Highland. This is not consent contemplated by the ACIS LPA. Highland is owned 75% by Dondero and 25% by Okada and Terry is not a partner in Highland. Terry had no reason to consent to excess expenses being paid to Highland. Additionally, the ACIS LPA has an express waiver clause at Section 6.09 which states,

"Waiver. No failure by any party to insist upon strict performance of any covenant, duty, agreement, or condition of this Agreement or exercise of any right or remedy consequent upon breach thereof shall constitute waiver of any such breach or any other covenant, duty, agreement, or condition."

The evidence establishes that Terry did not consent to ACIS payments of expenses in excess of 20% of Revenue and Terry has not waived his right to claim damages directly resulting from ACIS' and ACIS GP's breach of contract and breach of fiduciary duty. Clearly ACIS and ACIS GP ignored Terry's contractual rights and ACIS GP as a general partner has a fiduciary duty not to benefit itself or another at the expense of its limited partner, as they ignore and breach the terms of the partnership agreement and diminish Terry's distributions.

The Panel next addresses Terry's claim for conversion of the ITA retirement accounts stated against Highland, ACIS and ACIS GP.

Without again reciting the convoluted structure and history of the ITA retirement accounts in issue, it is established that there is no remaining value to the accounts because its value was swept and used by Highland or CLOVF to pay the DAF incident to the DAF rescission. It is noted that Respondents argue and offer to prove that Terry has no standing to state a claim for conversion of three of the five accounts because his wife is the trustee and owner of those three accounts. She is the trustee and owner of those accounts. Yet those accounts too were swept to pay the DAF and construct a pretextual damage and offset claim for having paid the DAF. While this establishes conversion of the accounts to the damage of Terry and his wife, the converters (CLOVF, CLOVMF, ACIS CLO VF GP), are not parties to this arbitration. The claims for breach of contract and conversion and damages should be stated against those parties or others, elsewhere.

The Panel next addresses Terry's claims for reputational damages and fraudulent transfer stated against Highland, ACIS and ACIS GP.

The evidence establishes that Highland and not ACIS or ACIS GP was the publisher of any false or defamatory statements. Whether those statements in pleadings or press release to Law360 are actionable against Highland is a matter deferred for the District Court suit. Terry's claims for reputational damages stated against ACIS or ACIS GP are not proved.

Terry states a claim against Highland, ACIS and ACIS GP for the fraudulent transfer or conveyance of assets under the Texas Fraudulent Transfer Act. In October 2016, ACIS sold to Highland a participation interest in ACIS's Service Fees (management fees) which ACIS would receive between November 2016 and through August 2019. This sale of a participation interest represents near one-half of ACIS revenues during the covered period. Highland is to pay, in cash and promissory note with interest at 3%, ACIS a total of thirteen million three hundred and thirty three thousand dollars, plus interest for the participation interest. Highland's payment is scheduled as follows:

- October 7, 2016 - $666,655.00 – cash at closing

- May 31, 2017 - $3,370,694.00 – principal and interest

- May 31, 2018 - $5,286,243.00 – principal and interest

- May 31, 2019 - $4,677,690.00 – principal and interest

The transactional documents recite business purpose and reasonable consideration for the sale. Terry offers no evidence that ACIS did not receive reasonable equivalent value in the transaction or that ACIS made the transfer with "actual intent to hinder, delay or defraud." Terry has not proved a claim for fraudulent transfer or conveyance.

The Panel next addresses Terry's claims for wrongful termination and resulting damages stated against Highland.

Terry's employment with Highland was "At Will" and he could have been terminated for any reason other than an unlawful reason. Terry did not prove that the sole reason for his termination was his refusal to commit an illegal act, as is required under Sabine Pilot. The evidence establishes that Dondero terminated Terry because he was angry with Terry's opposition to his Trussway/Targa acquisition plan and he wanted Terry gone. "At Will" employment contemplates that if the boss wishes, one's employment is terminated and the termination is not actionably wrongful. Even as an "At Will" employee, Terry may have claims for damages against Highland for his unpaid severance, unused vacation, deferred compensation and unreimbursed expenses, but these claims are a matter deferred for the District Court suit. Terry's claims stated against Highland for Sabine Pilot wrongful termination are not proved.

Although Trust and Okada are limited partners in ACIS and are named as Respondents in this arbitration, Terry has failed to offer any evidence of actionable claims against Trust or Okada. All claims stated by Terry in this arbitration against Trust or Okada are not proved.

The Panel next addresses Highland's claims for breach of employment agreement, theft/theft of trade secrets and breach of fiduciary duty stated against Terry.

Although Highland is a party to the District Court suit Ordered to arbitration, Highland is not a party to an arbitration agreement and has stated claims against Terry with the above noted reservation, "subject to and without waiver." To the extent these claims are stated in this Arbitration in affirmative avoidance of Terry's claims stated against ACIS and ACIS GP they are addressed in this Award.

The evidence does not establish that Terry breached his employment agreement or any fiduciary duty to Highland, ACIS or ACIS GP or that Terry self-dealt in anyway. On the contrary, Terry's actions in opposing Dondero's Trussway/Targa acquisition plan and his efforts to restructure

the CLOVF were reasonable and appropriate and as his portfolio manager duties required. These claims are not proved and are not an affirmative defense or avoidance available to ACIS or ACIS GP.

The evidence does not establish that Terry is guilty of theft or theft of trade secrets. Respondents offered no evidence of a trade secret or a protectable trade secret interest in the documents in issue. Although Highland's claim for turnover is overreaching, it was heard in this Arbitration at Respondents' insistence and the record and all evidence admitted in that preliminary hearing was offered and admitted in the final hearing. This claim is not proved and is not an affirmative defense or avoidance available to ACIS or ACIS GP. Otherwise, the Panel issues its turnover decision in this Award.

The evidence does not establish that any disparaging remarks of Terry were ever communicated to Dondero prior to Terry's termination or that the alleged remarks could have been a reason for Terry's "for cause" termination. All of Respondents' alleged bases of "for cause" termination of Terry's employment are not proved and none are an affirmative defense or avoidance available to ACIS or ACIS GP.

## ANALYSIS OF TERRY'S DAMAGES

The Panel only addresses proved claims stated against appropriate Parties to this Arbitration.

Terry has proved his claims stated against ACIS and ACIS GP for breach of contract and claims stated against ACIS GP for breach of fiduciary duty incident to their payment of excess expenses to Highland and their wrongful forfeiture of Terry's contractual right to be paid for his ACIS limited partnership interest.

The evidence establishes that ACIS and ACIS GP paid excess expenses to Highland during the years of 2013, 2014, 2015 and January through May 2016. These expenses paid exceeded the 20% of Revenues cap stated in Section 3.10(a) of the ACIS LPA. The payment of these excess expenses reduced Terry's ACIS partnership distributions during this period. Had excess expenses not been paid and only the contractually capped expenses had been paid, Terry would have received additional ACIS profits distributions of $1,755,481.00 for his 25% partnership interest in ACIS.

The best evidence of the value of the Section 4.04 limited partnership payout is Terry's June 13, 2016 calculations, which he communicated to Dondero within days of his termination. Terry was the portfolio manager of ACIS and as such was most aware of ACIS's financial performance and expected performance within the payout period. The calculations do not include an assumed growth rate of ACIS revenues and are not burdened by Highland's after termination manipulations of ACIS managed assets or ACIS revenues.

The evidence establishes that Terry's ACIS limited partnership payout upon termination had a total value of $5,688,351.00.

Because ACIS and ACIS GP breached the ACIS LPA and ACIS GP breached its fiduciary duty in June 2016 when they repudiated their obligations to their limited partner, Terry's contractual entitlement to payout under the ACIS LPA is liquidated, accelerated and is now fully due.

Additionally, Terry is entitled to pre-award interest at the rate of five percent (5%) per annum from the date of commencement of this Arbitration, September 20, 2016, until entry of Final Award in the amount of $372,192.00.00.

## FINDINGS AND CONCLUSIONS

Based upon the Parties' offers of proof, evidence submitted and argument of counsel, the following facts and conclusions are found by these Arbitrators to be established by the evidence to be true and necessary to this Award. To the extent these findings and conclusions differ from any Parties' position that is the result of these Arbitrators determinations as to credibility, relevance, burden of proof considerations, and the weighing of the evidence, both oral and written.

The Arbitration Panel finds and concludes as follows:

1. This dispute is arbitrable pursuant to the Parties' agreement to arbitrate and prior Court Order in Cause No. DC-16-11396, 162nd Judicial District Court, Dallas County, Texas.

2. The Arbitration panel has jurisdiction to resolve all disputes presented and not deferred to the 162nd District Court.

3. JAMS Comprehensive Arbitration Rules and Procedures govern the resolution of this dispute with the law of the States of Texas and Delaware.

4. Prior to his termination on June 9, 2016, Terry was an at will employee of Highland and a 25% limited partner in ACIS.

5. Highland's termination of Terry's employment was not, in fact, "for cause." Highland's stated "for cause" termination of Terry's employment was, in fact, pretextual and for purpose of denying Terry benefits of employment payable at his termination and as a basis for the forfeiture of the value of Terry's limited partnership interest in ACIS.

6. ACIS and ACIS GP knowingly and willingly invoked Highland's false pretext of "for cause" termination to deny Terry the value of his 25% limited partnership in ACIS.

7. ACIS and ACIS GP paid Highland expenses in excess of the contractual limit imposed by Section 3.10(a) of the ACIS LPA.

8. ACIS and ACIS GP wrongfully denied Terry his contractual rights to payment for his limited partnership interest in ACIS and are liable for and owe Terry for same.

9. In breach of contract and fiduciary duties, ACIS and ACIS GP are liable to and owe Terry his ACIS profits distributions which were payable but for the wrongful payment of excess expenses to Highland.

10. ACIS GP's actions were willful and wanton breaches of their fiduciary duties to Terry as their limited partner.

11. All claims stated by Highland, "subject to and without waiver" against Terry are not proved and as such none are an affirmative defense or avoidance of Terry's claims stated against ACIS and ACIS GP.

12. All claims stated by Terry against Trust and Okada are not proved and are denied.

13. All claims stated by Terry against ACIS and ACIS GP for fraudulent transfer or conveyance are not proved and are denied.

14. Terry's fraud claims stated against ACIS and ACIS GP are not proved and are denied.

15. All claims, not denied or awarded, are deferred to the 162nd District Court, Dallas County, Texas or other appropriate venue.

16. ACIS's and ACIS GP's breaches of contract and ACIS GP's breach of fiduciary duties have injured Terry and resulted in damages, together with pre-award interest in the total amount of Seven Million Eight Hundred Sixteen Thousand Twenty-Four Dollars and No/100 ($7,816,024.00).

17. The Parties' agreement to arbitrate does not allow the award of prevailing party attorneys' fees. All claims for attorneys' fees are denied.

18. The Parties' agreement to arbitrate allows the Panel discretion to award the prevailing party costs of arbitration. Terry is entitled to recover his JAMS arbitration cots.

19. Terry is awarded One Hundred Thirty Three Thousand, Seven Hundred Twenty Five and 15/100 Dollars ($133,725.15) for his JAMS arbitration costs.

20. Terry is entitled to recover post-award interest on all amounts awarded herein.

## AWARD

### TURNOVER:

Claimant, Joshua N. Terry may retain: all recordings of conversations to which he is a party; all agreements to which he is a signatory; all "track record" documents regarding his performance; all documents in the public domain; all documents relating to his investment in or ownership of any Highland affiliated entity; all personal notes or memoranda derived from conversations to which he is a party; all notes or memoranda prepared for and offered to his attorneys.

Except for attorney work product, claimant's attorneys Clouse Dunn LLP may retain copies of all documents which were admitted into evidence in this Arbitration until five business days following the latter of, issuance of this Final Award or final confirmation of this Final Award, no longer subject to appeal. At such time, Clouse Dunn LLP shall turnover these documents to Respondents' attorneys and verify the destruction of electronically formatted documents turned over.

Otherwise, Claimant, Terry, shall turnover all documents, not subject to his awarded right of retention, related to Highland affiliated entities within five business days of entry of this Final Award.

## MONETARY AWARD:

Claimant, Joshua N. Terry is Awarded and shall have and recover jointly and severally against Respondents, ACIS Capital Management, LP and ACIS Capital Management GP, LLC, the total sum of Seven Million, Nine Hundred Forty Nine Thousand, Seven Hundred Forty Nine and 15/100 Dollars ($7,949,749.15).

All sums payable by the terms of this Final Award shall accrue post-award interest at the legal rate until fully paid.

All claims for relief, not awarded herein or deferred to the Court, are denied.


_____          Dated:  October 20, 2017

Hon. Harlan Martin
Panel Chair


_____          Dated:  October 20, 2017

Hon. Glen M. Ashworth (Ret.)
Arbitrator


_____          Dated:  October 20, 2017

Hon. Mark Whittington (Ret.)
Arbitrator

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Terry, Joshua N. vs. Highland Capital Management, LP., et al.
Reference No. 1310022713

    I, Judy Stephenson, not a party to the within action, hereby declare that on October 20, 2017, I served the attached Cover Letter, Final Award and Proof of Service on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at Dallas, TEXAS, addressed as follows:

Brian P. Shaw Esq.
Rogge Dunn Esq.
Clouse Dunn LLP
1201 Elm St.
Suite 5200
Dallas, TX  75270
Phone: 214-220-3888
shaw@clousedunn.com
Rogge@clousedunn.com
    Parties Represented:
    Joshua N. Terry

Marc Daniel Katz Esq.
Robert M. Hoffman Esq.
Andrews Kurth LLP
1717 Main St.
Suite 3700
Dallas, TX  75201
Phone: 214-659-4400
marckatz@andrewskurth.com
robhoffman@andrewskurth.com
    Parties Represented:
    ACIS Capital Management GP, LLC
    ACIS Capital Management, LP
    Highland Capital Management, LP
    James D. Dondero as trustee/The Dugaboy Inve
    Mark K. Okada

Jamie R. Welton Esq.
Paul B. Lackey Esq.
Bruce E. Bagelman Esq.
Lackey Hershman LLP
3102 Oak Lawn Ave.
Suite 777
Dallas, TX  75219
Phone: 214-560-2201
jrw@lhlaw.net
pbl@lhlaw.net
beb@lhlaw.net
    Parties Represented:
    ACIS Capital Management GP, LLC
    ACIS Capital Management, LP
    Highland Capital Management, LP
    James D. Dondero as trustee/The Dugaboy Inve
    Mark K. Okada

       I declare under penalty of perjury the foregoing to be true and correct. Executed at Dallas, TEXAS on  October 20, 2017.

_Judy Stephenson_
Judy Stephenson
jstephenson@jamsadr.com